1  MARKS, GOLIA & PINTO, LLP
   DAVIDE GOLIA (118464)
2  SARA E. MILLER (323281)
   2240 Fifth Avenue
3  San Diego, California 92101
   Telephone: (619) 202-0175
4  Facsimile: (619) 795-2730
   E-mail: dave@marksgolia.com
5  E-mail: sara@marksgolia.com
6
7  Attorneys for Defendant, Counterclaimant and
       Cross-Claimant T.B. Penick & Sons, Inc.
8

**FILED**

Jan 11 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11  SUNBELT RENTALS, INC. a/k/a SUNBELT
    RENTALS – REGION 8
12
                                              CASE NO.: 4:20-cv-04039-YGR
13            Plaintiff,
                                              JUDGE:    Hon. Yvonne Gonzalez Rogers
14       v.
                                              **T.B. PENICK & SONS, INC.'S FIRST**
15  T.B. PENICK AND SONS, INC.,               **AMENDED CROSS-CLAIMS AGAINST**
    WP WEST BUILDERS CALIFORNIA L.P.,         **WP WEST BUILDERS CALIFORNIA L.P.,**
16  and RLI INSURANCE COMPANY,                **PR III/WOOD POTRERO HILL, LLC, RLI**
                                              **INSURANCE COMPANY, AND WOOD**
17            Defendants.                     **REAL ESTATE INVESTORS, LLC, dba**
                                              **WOOD PARTNERS**
18
19  T.B. PENICK AND SONS, INC., a California   Complaint Filed:        June 17, 2020
    corporation,                              Amended Complaint Filed:  July 21, 2020
20
21            Counterclaimant,                **[DEMAND FOR JURY TRIAL]**
         v.
22
23  SUNBELT RENTALS, INC., a/k/a SUNBELT
    RENTALS – REGION 8, a North Carolina
24  corporation,
25            Counter-Defendant.
26
27
28
                                    1
   FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
   CASE NO.: 4:20-cv-04039-YGR

T.B. PENICK AND SONS, INC., a California corporation,

                Cross-Claimant,

       v.

WP WEST BUILDERS CALIFORNIA L.P., a Georgia limited partnership;
PR III/WOOD POTRERO HILL, LLC, a Delaware limited liability company; and
WOOD REAL ESTATE INVESTORS, LLC, dba WOOD PARTNERS, Delaware limited liability company,

                Cross-Defendants.

Defendant and Cross-Claimant T.B. Penick & Sons, Inc. ("Penick") files these cross-claims against WP West Builders California L.P., PR III/Wood Potrero Hill, LLC, and Wood Real Estate Investors, LLC, dba Wood Partners (collectively "Cross-Defendants"), as follows:

**PARTIES**

1.  Penick is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of California, and licensed by the State of California to perform the work described below.

2.  Penick is informed and believes defendant and cross-defendant WP West Builders California L.P. ("West") is, and at all relevant times was, a Georgia limited partnership doing business in California, with its principal place of business in Georgia.  Penick is informed and believes none of West's partners are resident citizens of California.

3.  Penick is informed and believes cross-defendant PR III/Wood Potrero Hill, LLC ("Wood Potrero") is, and at all relevant times was, a Delaware limited liability company, doing business in California, with its principal place of business in New Jersey.

/ / / /

/ / / /

/ / / /

2

4.    Penick is informed and believes cross-defendant RLI Insurance Company ("RLI") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Illinois, doing business in California, with its principal place of business in Illinois.

5.    Penick is informed and believes cross-defendant Wood Real Estate Investors, LLC, doing business as Wood Partners ("Wood Partners") is, and at all relevant times was, a Delaware limited liability company, doing business in California, with its principal place of business in Georgia.  Penick is informed and believes none of Wood Partners' members are resident citizens of California.

6.    Penick is informed and believes plaintiff Sunbelt Rentals, Inc. a/k/a Sunbelt Rentals – Region 8 ("Sunbelt") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of North Carolina, doing business in California, with its principal place of business in South Carolina.

## JURISDICTION AND VENUE

7.    Jurisdiction is proper under 28 U.S.C. § 1367 as to Penick's cross-claims as they arise out of the same case or controversy as alleged in the Amended Complaint filed by Sunbelt.

8.    Permissive joinder of Wood Potrero and Wood Partners (collectively "Wood") as cross-defendants in this action is proper under Fed. R. Civ. P. 20(a) as these cross-claims arise out of the same transaction or occurrence as alleged in the Amended Complaint filed by Sunbelt, and a question of law or fact common to all defendants and cross-defendants will arise in the action.

9.    Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to these cross-claims occurred, the Project at issue is situated, and the contracts at issue were executed and/or performed, in this judicial district.

## FACTUAL BACKGROUND

10.    This action arises out of a private work of improvement known as Alta Potrero Hill ("Project"), located at 1301 16th Street, San Francisco, California, and associated with Assessor's Parcel Number 3954-016 ("Property").

/ / / /

3

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

11.    The owner and/or reputed owner of the Property is Wood.

12.    Wood, as Project owner, and Penick, as contractor, entered into a contract on or about December 5, 2017, in connection with the Project ("Construction Contract"), a true and correct copy of which is attached as Exhibit 1 to this pleading and incorporated herein by reference.

13.    On or about December 11, 2017, Penick began construction on the Project pursuant to the Construction Contract.

14.    On or about October 7, 2019, Wood requested that Penick assign the Construction Contract to West, so that West could complete construction of the Project.

15.    On or about February 29, 2020, Penick, West, and Wood entered into an agreement, structured as Owner Change Order Number 25 under the Construction Contract and including Exhibit A titled Assignment and Assumption of Project Documents ("Assignment"), a partially executed copy of which is attached as Exhibit 2 to this pleading and incorporated herein by reference.  Penick is informed and believes that the Assignment attached as Exhibit 2 is a true and correct copy of the Assignment fully executed by all parties.

16.    On or about July 21, 2020, Sunbelt filed the Amended Complaint in this action, asserting that Penick is liable for, among other things, damages allegedly resulting from Cross-Defendants' failure to perform their obligations under the Assignment ("Sunbelt's Claims").

## **FIRST CROSS-CLAIM FOR RELIEF**

### (Equitable Indemnity – Against West)

17.    Penick realleges and incorporates by reference paragraphs 1 through 16, above, as though set forth in full at this point.

18.    Sunbelt's Claims are ones for which West may be responsible.

19.    To the extent Penick is liable to Sunbelt for Sunbelt's Claims (which liability is denied), West is liable to Penick for those claims, due to West's failure to perform its obligations under the Assignment.

20.    By reason of the foregoing, and in equity and good conscience, Penick is entitled to recover from West all damages or losses that may be incurred by Penick with respect to Sunbelt's Claims.

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

1
2

### SECOND CROSS-CLAIM FOR RELIEF

(Breach of Contract [Count 1] – Against West)

3       21.     Penick realleges and incorporates by reference paragraphs 1 through 20, above, as

4   though set forth in full at this point.

5       22.     Penick performed all conditions, covenants and promises required on its part to be

6   performed in accordance with the terms and conditions of the Assignment, or was excused from

7   performance.

8       23.     Within the last four years, West breached the Assignment by, among other things,

9   failing to properly perform its Assignment obligations, including its failure to pay Sunbelt amounts

10  allegedly owed.

11      24.     As a direct and proximate result of West's breaches of the Assignment, Penick has

12  been damaged in a sum not yet fully ascertained and according to proof at trial, but at least

13  $75,000.00, together with interest at the maximum legal rate from dates according to proof.

14      25.     Pursuant to the Assignment, Penick is entitled to an award of its reasonable attorneys'

15  fees, costs, and expenses.

16

### THIRD CROSS-CLAIM FOR RELIEF

17

(Breach of Contract [Count 2] – Against Wood Potrero and Wood Partners)

18      26.     Penick realleges and incorporates by reference paragraphs 1 through 16, above, as

19  though set forth in full at this point.

20      27.     Penick performed all conditions, covenants and promises required on its part to be

21  performed in accordance with the terms and conditions of the Assignment, or was excused from

22  performance.

23      28.     Within the last four years, Wood breached the Assignment by, among other things,

24  failing to properly perform its Assignment obligations including failure to pay Penick its retention.

25      29.     As a direct and proximate result of Wood's breach of the Assignment, Penick has

26  been damaged in a sum not yet fully ascertained and subject to proof but approximately

27  $1,053,174.90, together with interest at the maximum legal rate from dates according to proof.

28

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

30.     Pursuant to the Assignment, Penick is entitled to an award of its reasonable attorneys' fees, costs, and expenses.

31.     Pursuant to California Civil Code section 8818, Penick is entitled to recover prompt payment penalties of two percent per month and attorneys' fees due to Wood's failure to timely make retention payments to Penick.

## FOURTH CROSS-CLAIM FOR RELIEF

(Breach of Contract [Count 3] – Against Wood Potrero and Wood Partners)

32.     Penick realleges and incorporates by reference paragraphs 1 through 16 and 26 through 31, above, as though set forth in full at this point.

33.     Penick performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Construction Contract, or was excused from performance.

34.     Within the last four years, Wood breached the Construction Contract by, among other things, failing to fully pay Penick for the work it performed.

35.     As a direct and proximate result of Wood's breach of the Construction Contract, Penick has been damaged in a sum not yet fully ascertained and subject to proof but approximately $1,053,174.90, together with interest at the maximum legal rate from dates according to proof.

36.     Pursuant to the Construction Contract and California Civil Code section 1717, Penick is entitled to an award of its reasonable attorneys' fees and costs to be determined by the court.

37.     Pursuant to California Civil Code sections 8800 and 8818, Penick is entitled to recover prompt payment penalties of two percent per month and attorneys' fees due to Wood's failure to timely make payments to Penick.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

6

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

**FIFTH CROSS-CLAIM FOR RELIEF**

(Reasonable Value – Against Wood Potrero and Wood Partners)

38.    Penick realleges and incorporates by reference paragraphs 1 through 16, above, as though set forth in full at this point.

39.    Within the last two years, Penick furnished labor, materials, equipment, and supplies to the Project at Wood's insistence and request, who promised to pay Penick the reasonable value of such labor, equipment, materials and supplies.  Wood accepted and used the labor, equipment, materials and supplies furnished by Penick in connection with the Project.

40.    The total and reasonable value of the labor, equipment, materials, and supplies Penick furnished to Wood for the Project, but for which Wood has not paid Penick, is subject to proof but approximately $1,053,174.90.  Despite Penick's demand, the principal amount due and owing to Penick is approximately $1,053,174.90, together with interest at the maximum legal rates from dates according to proof.

**SIXTH CROSS-CLAIM FOR RELIEF**

(Recovery on Mechanics Lien Release Bond – Against West and RLI)

41.    Penick realleges and incorporates by reference paragraphs 1 through 16 and 26 through 40, above, as though set forth in full at this point.

42.    Penick furnished labor, services, equipment and/or materials that were actually used in the Project, a work of improvement on the Property, for which it has not been compensated.

43.    On September 29, 2020, Penick duly and timely recorded as Document No. 2020023610 in the Office of the County Recorder of San Francisco, a mechanics lien duly verified, containing all the statements required by law, setting forth the amount of $1,053,174.90 due to Penick for the labor, services, equipment and/or materials it provided on the work of improvement on the Property ("Mechanics Lien"), no part of which has been repaid.  A true and correct copy of the Mechanics Lien is attached as Exhibit 3 to this pleading.

/ / / /

/ / / /

/ / / /

7

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

44.    On or about October 27, 2020,  West, as principal, and RLI, as surety, executed a bond numbered CMS0339810, in the penal sum of $1,316,468.63, in order to release the Mechanics Lien ("Mechanics Lien Release Bond").  A true and correct copy of the Mechanics Lien Release Bond is attached as Exhibit 4 to this pleading, and is incorporated by reference as though set forth in full at this point.

45.    Penick performed and satisfied all conditions required to be performed as a prerequisite to record and/or foreclose the Mechanics Lien, and/or to recover on the Mechanics Lien Release Bond, including all statutory requirements, except to the extent excused.  To the extent required, this included timely service of a preliminary notice, as applicable.

46.    Penick timely brings this action.

47.    Based on the above, Penick is entitled to benefit from the Mechanics Lien Release Bond and is entitled to damages from West and RLI, jointly and severally, in a sum not yet fully ascertained and according to proof at trial, but approximately $1,053,174.90, together with prejudgment interest at the maximum legal rate(s) from date(s) according to proof.

## **PRAYER FOR RELIEF**

Accordingly, Cross-Claimant T.B. Penick & Sons, Inc. requests entry of judgment as follows:

ON THE FIRST CROSS-CLAIM:

1.    For indemnity and reimbursement from West of all damages, costs, expenses, attorneys' fees, or losses incurred by Penick because of West's breach of the Assignment.

ON THE SECOND CROSS-CLAIM:

1.    For indemnity and reimbursement from West of all damages, costs, expenses, attorneys' fees, or losses incurred by Penick because of West's breach of the Assignment; and

2.    For reasonable attorneys' fees, costs, and expenses, pursuant to the Assignment.

/ / / /

/ / / /

/ / / /

/ / / /

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

ON THE THIRD CROSS-CLAIM:

    1.    For damages in an amount subject to proof, but approximately $1,053,174.90;

    2.    For reasonable attorneys' fees, costs, and expenses, pursuant to the Assignment; and

    3.    For attorneys' fees and prompt payment penalties of 2 percent per month on all retention amounts not paid when due in amounts according to proof, pursuant to Civil Code section 8818.

ON THE FOURTH CROSS-CLAIM:

    1.    For damages in an amount subject to proof, but approximately $1,053,174.90;

    2.    For reasonable attorneys' fees, costs, and expenses, pursuant to the Construction Contract and California Civil Code section 1717; and

    3.    For attorneys' fees and prompt payment penalties of 2 percent per month on all amounts not paid when due in amounts according to proof, pursuant to Civil Code sections 8800 and 8818.

ON THE FIFTH CROSS-CLAIM:

    1.    For damages in an amount subject to proof, but approximately $1,053,174.90.

ON THE SIXTH CROSS-CLAIM:

    1.    For damages in an amount subject to proof, but approximately $1,053,174.90.

ON ALL CROSS-CLAIMS:

    1.    For prejudgment interest on all sums at the maximum rates and from dates according to proof;

    2.    For costs of suit; and

    3.    For such other relief the Court deems just.

DATED:   January 7, 2021         **MARKS, GOLIA & PINTO, LLP**

                                 By:    /s/  Sara Miller _____
                                      DAVIDE GOLIA
                                    SARA E. MILLER
                                    Attorneys for Defendant, Counterclaimant and
                                    Cross-Claimant, T.B. PENICK & SONS, INC.

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. – CASE NO.:  4:20-cv-04039-YGR

**DEMAND FOR JURY TRIAL**

Defendant, Counterclaimant and Cross-Claimant T.B. Penick & Sons, Inc. hereby demands a trial by jury.

DATED:   January 7, 2021          **MARKS, GOLIA & PINTO, LLP**


                                  By:    /s/___Sara Miller _____
                                         DAVIDE GOLIA
                                         SARA E. MILLER
                                         Attorney for Defendant, Counterclaimant and
                                         Cross-Claimant, T.B. PENICK & SONS, INC.

FIRST AMENDED CROSS-CLAIMS OF T.B. PENICK & SONS, INC. –
CASE NO.:  4:20-cv-04039-YGR

# EXHIBIT 1

# A102-2007

# AIA

# ® Document A102™ – 2007

*Standard Form of Agreement Between Owner and Contractor* where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price

**AGREEMENT** made as of the 5th day of December in the year 2017
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

PRIII/ Wood Potrero Hill, LLC20 Sunnyside Ave. Suite B.
Mill Valley, CA 9441

and the Contractor:
*(Name, legal status, address and other information)*

TB Penick & Sons, Inc.  »« »
«15435 Innovation Drive  »
«Suite 100  »
«San Diego, CA  92128

for the following Project:
*(Name, location and detailed description)*

Alta Potrero Hill
1301 16th Street
San Francisco, CA«»

The Architect:
*(Name, legal status, address and other information)*

BDE Architecture Inc.  »« »
950 Howard St,
San Francisco, CA 94103  »
« »

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                            (1463177827)

**TABLE OF ARTICLES**

1          THE CONTRACT DOCUMENTS

2          THE WORK OF THIS CONTRACT

3          RELATIONSHIP OF THE PARTIES

4          DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5          CONTRACT SUM

6          CHANGES IN THE WORK

7          COSTS TO BE REIMBURSED

8          COSTS NOT TO BE REIMBURSED

9          DISCOUNTS, REBATES AND REFUNDS

10         SUBCONTRACTS AND OTHER AGREEMENTS

11         ACCOUNTING RECORDS

12         PAYMENTS

13         DISPUTE RESOLUTION

14         TERMINATION OR SUSPENSION

15         MISCELLANEOUS PROVISIONS

16         ENUMERATION OF CONTRACT DOCUMENTS

17         INSURANCE AND BONDS

## ARTICLE 1 T H E  CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed   in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and  are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the  entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or   agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is   inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in   the Contract Documents to be the responsibility of others.

## ARTICLE 3  RELATIONSHIP OF THE PARTIES

**§ 3.1** The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with     the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests   of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply  of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the  Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the   Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                  (1463177827)

**§ 3.2** Contractor acknowledges that the Owner has arranged for project financing through an independent Lender(s). Contractor and its subcontractors shall fully comply with all of the Lender(s) reasonable requirements, including, without limitation, execution of consents of the assignment of the Agreement to the Lender and certificates that are reasonably acceptable to Contractor, concerning compliance of the design of the project with all applicable laws and ordinances.

## ARTICLE 4 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
**§ 4.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated   below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date  will be fixed in a notice to proceed.)*

The date of commencement of the Work shall be the date established in a written notice to proceed with construction to be sent by Owner to Contractor (the "**Notice to Proceed**").

If, prior to commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

« »

**§ 4.2** The Contract Time shall be measured from the date of commencement.

**§ 4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than Five Hundred Eighty-Five ( 585« » ) calendar days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

**§ 4.3.1** Contractor will perform the Work in accordance with the construction schedule attached hereto as Exhibit E and incorporated herein, as such schedule may be updated from time to time as provided below ("Construction Schedule"). The Construction Schedule sets forth the commencement date, the date of Substantial Completion ("Substantial Completion Date"), the Final Completion date and the starting dates and the completion dates of various stages of the Work and shall provide for expeditious and practicable execution of the Work.  Normal holidays and weather conditions have been accounted for within the Construction Schedule. The Construction Schedule shall be subject to adjustment as provided in Section 3.10 of the General Conditions Document. Contractor shall use Contractor's standard scheduling system, which employs a clearly defined critical path for the Project as more particularly described in Exhibit E. Contractor will periodically submit updated Construction Schedules to the Owner for review and approval in accordance with Section 3.10 of the General Conditions. Notwithstanding anything to the contrary contained in any of the Contract Documents, in no event shall the Substantial Completion Date or any critical path date or milestone deadline be extended unless such extension is specifically set forth in a Change Order Request (COR), Construction Change Directive or Change Order signed by Owner.

The Contractor is at risk for the schedule duration, whereas no additional general conditions will be granted to the Contractor should the actual completion extend beyond the Agreement Project Schedule, unless agreed by Owner for reasons outside of the Contractor's management, at the Owner's discretion.

*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time, or for bonus payments for early completion of the Work.)*

**§ 4.3.2** The Contractor acknowledges that should it fail to achieve Substantial Completion by the Date of Substantial Completion for that building as set forth in the Project Schedule (Exhibit "E"), as the same may be modified in accordance with the Contract Documents, the Owner will incur substantial damages and the extent of such damages shall be incapable of or very difficult of accurate measurement.  The parties therefore stipulate to liquidated damages, not as a penalty but as a fair negotiated remedy, in the amount of  $ 5,000_____ per calendar day (pursuant to the dates set forth in Exhibit E), which represents a good faith estimate on the part of the parties as to the actual potential damages that would occur as a result of late completion. The parties agree that liquidated damages shall not exceed one hundred percent (100%) of the Contractor's total Fee amount.

## ARTICLE 5   CONTRACT SUM
**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                         (1463177827)

**§ 5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee.)*

«3.5%  »

**§ 5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

«3.5%  »

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the

Subcontractor overhead and fee on such contracts may not exceed 15% cumulative.  In respect to such contracts, overhead, profit and any ancillary costs, will include but are not limited to, the following: all labor burdens, all insurances including; Workers Compensation, unemployment and general liability etc., small tools, consumable, equipment and/or truck time, job office administration on or off site, supervision; foreman, general foreman and safety staff, general conditions; parking, training, support staff, job trailer etc., delivery, cartage, receiving, site logistics, unpackaging, inspection, moving materials, sorting and inefficiencies based on job site or job type.  Unless otherwise approved in writing by Owner, for any Subcontractor work that is subcontracted (Sub-subcontractor or vendor), in respect to such contracts, Subcontractor's overhead and fee on the Sub-subcontractor portion of work may not exceed 8% cumulative as stated above.  Sub-subcontractor's overhead and fee may not exceed 15% cumulative, as defined above.

**§ 5.1.4 GENERAL CONDITIONS**
The costs for General Conditions and Requirements shall be a fixed price not to exceed amount of Four Million, Eight Hundred Fifty-Six Thousand, and Ninety-Four dollars ($4,856,094).  This shall include all allowable costs for supervision, facilities and related expenses as defined per Exhibit H.  No cost for line items which are specifically defined as General Conditions or Requirements will be charged to the cost of the Work outside of General Conditions or Requirements. Should carpenter support/foreman and labor union requirements exceed values established in the General Conditions Schedule of Values then contractor may utilize buyout savings for the exceeded amount of those elements or if buyout savings have been fully used Contractor may utilize Contractor Contingency for the exceeded amount of those elements per the conditions of this Agreement.  Backup for general conditions will be provided to verify billings are in accordance with allowable billable items identified in Exhibit J (Distribution of Costs, Schedules 1-4). General conditions will also remain auditable in accordance with audit procedures identified in this Agreement.

**§ 5.2 GUARANTEED MAXIMUM PRICE**
**§ 5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed «Sixty-Five Million, Three Hundred Seven Thousand, Three Hundred and Eighty-Five dollars  » ($ $65,307,385), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*
The Guaranteed Maximum Price is detailed on the "**Schedule of Values**" attached hereto as <u>Exhibit F</u>.

«  »

**§ 5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

«  »

**§ 5.2.3** Allowances included in the Guaranteed Maximum Price, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

Allowances included in the Guaranteed Maximum Price, if any are more particularly set forth in Exhibit I
**§ 5.2.4** Assumptions, if any, on which the Guaranteed Maximum Price is based:

**AIA Document A102™ – 2007 (formerly A111™ - 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                            (1463177827)

Assumptions, if any, on which the Guaranteed Maximum Price are more particularly set forth in Exhibit G.

**§ 5.2.5** To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

**§ 5.2.5** The Contractor may be eligible to participate in shared contingency cost savings to be calculated based on a shared contingency savings cost pool up to a maximum amount of $500,000. The Contractor shall be allocated a percentage of the contingency cost savings as provided within this section ("Baseline Allocation Percentage"). Any contingency savings beyond the $500,000 shared savings cost pool will be allocated solely to the Owner. The Contractor's allocation is subject to the following conditions:

For the Contractor to achieve its full Baseline Allocation Percentage the Project must meet the Substantial Completion date reflected in the approved Project Schedule, AND Contractor Change Orders must be less than or equal to one-half of one percent (0.5%) of the GMP cost. The Baseline Allocation Percentages will be applied 50% Owner/50% Contractor. The Contractor's maximum Baseline Percentage Allocation under this section would be $250,000 so long as the conditions herein are satisfied.

A Reduced Allocation Percentage may be earned if the Substantial Completion date is met within 14 calendar days of the date reflected in the approved Project Schedule, AND if Contractor Change Orders are more than one half of one percent (0.5%) but less than or equal to one percent (1%) of the GMP cost. The Reduced Baseline Allocation Percentage would be allocated to be split 70% Owner/30% Contractor. The Contractor's maximum Baseline Allocation Percentage under this section would be $150,000 so long as the conditions herein are satisfied.

If the Substantial Completion date are achieved more than 14 calendar days after the dates reflected in the approved Project Schedule, OR if Contractor Change Orders exceed 1% of the GMP cost, the Contractor will not share in any contingency cost                                                                                                                     savings.

All requested Contractor Change Orders must be submitted and in process prior to Substantial Completion and prior to calculation of the contingency cost pool savings. No additional Contractor-initiated Change Orders will be permitted following   Substantial   Completion   and   after   determination   of   the   Baseline   Percentage   Allocation

Any   and   all   contractor   earned   contingency   cost   savings   will   occur   with   the   final   payment   application.

Owner Changes are defined as change orders caused by: 1) voluntary changes in the Work directed by the Owner; 2) unknown conditions that could not reasonably be anticipated by the Contractor; or 3) changes due to City Plan Check correction, code compliance issues or any other changes dictated by governmental agencies that could not reasonably be anticipated by the Contractor. Such voluntary changes and/or unknown/unanticipated conditions exclude any condition considered to be part of the Work as referenced in Section 7 in AIA A-102 of the Contract Documents. All other change orders shall be considered Contractor Change Orders. All requested Contractor Change Orders must be submitted and in process prior to Substantial Completion and prior to calculation of the buyout cost pool savings. No additional Contractor-initiated Change Orders will be permitted following Substantial Completion.

## ARTICLE 6   CHANGES IN THE WORK
**§ 6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201–2007, General Conditions of the Contract for Construction.

**§ 6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201–2007 and the term "costs" as used in Section 7.3.7 of AIA Document A201–2007 shall have the meanings assigned to them in AIA Document A201–2007 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**§ 6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201–2007 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                                        (1463177827)

**§ 6.4** If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7 COSTS TO BE REIMBURSED
### § 7.1 COST OF THE WORK

**§ 7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance   of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with  prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.

**§ 7.1.2** Where any cost is subject to the Owner's prior approval, the Contractor shall obtain this approval prior to  incurring the cost. The parties shall endeavor to identify any such costs prior to executing this Agreement.

### § 7.2 LABOR COSTS
**§ 7.2.1** Wages of construction workers directly employed by the Contractor, as include (included in Owner approved labor burdened employee rates as depicted in Exhibit M Contractor Staffing Rates) to perform the construction of the Work  at the site or, with the Owner's prior approval, at off-site workshops.

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel (included in Owner approved labor burdened employee rates as depicted in Exhibit M Contractor Staffing Rates) when stationed at the site with  the Owner's prior approval.
*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other  offices shall be included in the Cost of the Work, identify in Article 15, the personnel to be included, whether for all  or only part of their time, and the rates at which their time will be charged to the Work.)*

**§ 7.2.3** Wages and salaries of the Contractor's supervisory or administrative personnel (included in Owner approved labor burdened employee rates as depicted in Exhibit M Contractor Staffing Rates) engaged at factories,   workshops or on the road, in expediting the production or transportation of materials or equipment required for the  Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required   by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits  such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on  wages and salaries (included in Owner approved labor burdened employee rates as depicted in Exhibit M Contractor Staffing Rates) included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**§ 7.2.5** Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired   by the Contractor or paid to any Subcontractor or vendor, with the Owner's prior approval.

### § 7.3 SUBCONTRACT COSTS
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### § 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in   the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for  reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the   completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such  sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
**§ 7.5.1** Costs of transportation, storage, installation, maintenance, dismantling and removal of materials, supplies,   temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are    provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials,  supplies, temporary facilities,

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                           (1463177827)

DocuSign Envelope ID: 7B996EE7-57AD-4506-9315-9085679B0A44

Case 4:20-cv-04039-YGR    Document 70    Filed 01/11/21    Page 19 of 212

machinery, equipment and tools that are not fully consumed shall be based on the cost   or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at   the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by   construction workers that are provided by the Contractor at the site and costs of transportation, installation, minor   repairs, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase   price of any comparable item. Rates of Contractor-owned equipment and quantities of equipment shall be subject to   the Owner's prior approval.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and   parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the   Owner's prior approval.

## § 7.6 MISCELLANEOUS COSTS

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly   attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract   Documents, with the Owner's prior approval.   In lieu of subcontractor bonds, Contractor may carry a subcontractor default insurance policy covering all Subcontractors, which shall include a Financial Interest   Endorsement in favor of the Owner.  The premium for subcontractor default insurance coverage be included in the GMP and will be included in the first Pay Request at < 0.X>% of the estimated cost of work for all of the subcontracted work   covered by the policy with subsequent incremental charges for increase or  decrease in subcontractor volume.

**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the   Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA Document A201– 2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 7.6.6** Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in   the Contract Documents.

**§ 7.6.8** Section Intentionally Deleted

**§ 7.6.9** Subject to the Owner's prior approval, expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work.

**§ 7.6.10** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred   while traveling in discharge of duties connected with the Work.

## § 7.7 OTHER COSTS AND EMERGENCIES

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                     (1463177827)

7

**§ 7.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

**§ 7.8 RELATED PARTY TRANSACTIONS**
**§ 7.8.1** For purposes of Section 7.8, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Contractor; any entity in which any stockholder in, or management employee of, the Contractor owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Contractor. The term "related party" includes any member of the immediate family of any person identified above.

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods or service from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction, the Contractor shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Article 10.

**ARTICLE 8 COSTS NOT TO BE REIMBURSED**
**§ 8.1** The Cost of the Work shall not include the items listed below:

- .1 Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2. or as may be provided in Article 15;
- .2 Expenses of the Contractor's principal office and offices other than the site office;
- .3 Overhead and general expenses, except as may be expressly included in Article 7;
- .4 The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;
- .5 Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence or failure of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;
- .6 Any cost not specifically and expressly described in Article 7;
- .7 Self-insurance for either full or partial amounts of the coverage required by the Contract Documents;
- .8 Costs, other than costs included in Change Orders approved in writing by the Owner, that would cause the Guaranteed Maximum Price to be exceeded;
- .9 Any other costs compensated by payment of the General Conditions and Administrative Fee;
- .10 Losses or costs chargeable to any Subcontractor pursuant to its Subcontract;
- .11 Fines, penalties, sanctions or impositions assessed or imposed by any governmental body instrumentality or tribunal unless such fines, penalties, sanctions or impositions are assessed or imposed due to the action or inaction of Owner, or anyone for whom Owner is legally responsible;
- .12 Costs of accelerating the Work to the extent caused by the negligence or fault of Contractor, subcontractor or anyone for whom Contractor is legally responsible;
- .13 Costs resulting from the failure of Contractor or any Subcontractor to procure and maintain insurance as required by the Contract Documents;
- .14 Overtime required to the extent caused by the negligence or fault of Contractor, and Subcontractor or anyone else for whom the Contractor is legally responsible;
- .15 Travel costs, legal fees and other expenses incurred in connection with the preparation, negotiation and interpretation of this Agreement;
- .16 Cost of bonding or securing liens or defending claims filed by Contractor, Subcontractors, or Subcontractors;
- .17 Any fines levied against Contractor or Owner due to Contractor's (or any Sub Contractor's sub contractor's) violations of any OSHA regulations or other federal, state or local laws, regulations or ordinances shall be paid by Contractor. Contractor hereby agrees to indemnify, defend and agree to hold

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                          (1463177827)

harmless Owner from and against any loss, cost, expense or damage arising out of any such violation or fine.

.18 Losses or expenses for which Contractor is compensated by insurance;

.19 Any costs outside of the Contractors Bonds and/or Subcontractor Default Insurance that Contractor shall extend or incur to replace or supplement the forces of a subcontractor, or bidder, to provide the Work and such circumstances shall include but not be limited to, any partial or full termination of the contract of a subcontractor for convenience or otherwise, unless the Owner specifically directs the Contractor in writing to terminate the contract of a subcontractor for convenience;

.20 Any cost which is otherwise permissible pursuant to Article 7 but for which Contractor has back-charged or otherwise recovered same from a Subcontractor or supplier (notwithstanding the aforementioned, any such back-charge, offset or other recovery which occurs after Owner has remitted payment to Contractor shall result in a credit adjustment for the benefit of Owner);

.21 Losses, costs, and expenses (including attorneys' fees, court costs and disbursements) incurred by Contractor in connection with, or as a result of, the occurrence of any event expressly provided for under the terms of this Contract wherein Contractor agrees to indemnify and hold harmless Owner against such losses, costs and expenses.

.22 Notwithstanding the foregoing, Contractor may utilize proven buyout savings or Contractor Contingency to either (i) pay for costs required to replace or supplement any subcontractor who had committed a material default or (ii) upon the prior approval of Owner (which approval will not be unreasonably withheld), to pay for costs for acceleration, supplementation or overtime for recovery to maintain the Project schedule.

## ARTICLE 9 DISCOUNTS, REBATES AND REFUNDS

**§ 9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making   the payment, the Contractor included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts   shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus  materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be   obtained.

**§ 9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the  Owner as a deduction from the Cost of the Work.

## ARTICLE 10 SUBCONTRACTS AND OTHER AGREEMENTS

**§ 10.1** Any portions of the Work that the Contractor performs with the Contractor's own   personnel shall be subject to approval by the Owner.  All other Work shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor  shall obtain bids from not less than three (3) Subcontractors and from not less than three (3) suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Owner and Architect.  Contractor shall review and analyze the bid and prepare such bid tabs or leveling sheets as may be appropriate to assist Contractor and Owner in comparing and evaluating bids and bidders, and Contractor shall include its recommendation for award and the grounds therefor.  The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.  Submission by Contractor to Owner of a Subcontractor or supplier bid shall be a representation by Contractor that Contractor has performed due diligence on such Subcontractor and/or supplier and that, to the best of Contractor's knowledge, information and belief, each of the bids is bona fide, fair and reasonable, and that the Subcontractor is qualified to perform the services.

**§ 10.2** When a specific bidder (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that  portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents  without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may   require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other   agreement actually signed with the person or entity designated by the Owner.

**§ 10.3** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and   shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is   awarded on a cost-plus a fee basis, the Contractor shall provide in the Subcontract for the Owner to receive the same   audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11, below.

**§ 10.4** Contractor may be required to engage certain specialty subcontractors on a design-build basis.  Contractor shall work

**AIA Document A102™ – 2007** (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                    (1463177827)

with these Subcontractors and the design consultants to expedite fully coordinated construction documents and procure all related permits in a timely manner.  Contractor shall be responsible for the design performed by its design- build subcontractors and shall (1) require each Subcontractor performing design-build work to obtain Professional Liability Insurance in an amount of at least $5M per claim and in the annual aggregate applicable to its Work;  (Refer to Exhibit K) and to renew such coverage for the period of required by the California Statue of Repose, whichever is longer, and (2)  be responsible to the Owner for the coordination of that design including any additional work required of other subcontractors.

## ARTICLE 11  ACCOUNTING RECORDS
The Contractor shall keep full and detailed records and accounts related to the cost and performance of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of five years after final payment, or for such longer period as may be required by law.

## ARTICLE 12 PAYMENTS
### § 12.1 PROGRESS PAYMENTS
**§ 12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

« »

**§ 12.1.3** Provided that an approved Application for Payment is received by the Architect and Owner that the Architect can certify not later than the «25» day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the «20th » day of the «following » month. If an approved Application for Payment is received by the Architect and Owner that the Architect can certify after the application date fixed above, payment shall be made by the Owner not later than «twenty-five» («25» ) days after the Architect certifies the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 12.1.4** With each Application for Payment, the Contractor shall submit labor cost reports, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) labor cost reports for the period covered by the present Application for Payment.

**§ 12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end  of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the  percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by  dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for  which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b)   the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**§ 12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be  computed as follows:

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                    (1463177827)

.1   Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201–2007;

.2   Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3   Add the Contractor's Fee, less retainage of «ten» percent («10» %). The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4   Subtract retainage of «ten» percent («10» %) from that portion of the Work that the Contractor self- performs;

.5   Subtract the aggregate of previous payments made by the Owner;

.6   Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

**§ 12.1.8** The Owner and the Contractor shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

**§ 12.1.9** In taking action on the Contractor's Applications for Payment, the Owner and Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Owner and Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Owner and Architect has made exhaustive or continuous on- site inspections; or that the Owner and Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 12.1.10** Should Owner, in its sole discretion, elect not to release retainage for a subcontractor, and the subcontractor records a lien for such payment, Contractor shall be responsible for transferring the lien to a bond.

## § 12.2 FINAL PAYMENT
**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2   the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment;

.3   a final Certificate for Payment has been issued by the Architect;

.4   the Contractor has delivered to Owner full and final lien waivers from the Contractor and all Subcontractors on account of the Work, which lien waivers may be conditioned upon receipt of the payment applied for;

.5   The Contractor has delivered to the Owner true, correct and complete copies of (i) all warranties and guaranties issued in connection with the construction of the Project or the personal property, together with evidence that such warranties and guaranties comply with the requirements of this Agreement, and (ii) consents required for assignment of the foregoing agreements, obligations, liabilities, warranties and guaranties, if necessary;

.6   The Contractor has delivered all required jurisdictional approvals, sign-offs, inspections and other evidence of permit close-outs for the Work, but only to the extent both applicable to the Work and not caused by the Owner or the Architect or anyone for whom tha are legally responsible;

.7   The Contractor has otherwise delivered all required certifications and other reasonably required deliverables as are required by the Project Lenders as a condition to final payment, the parties hereby agreeing to work together to reasonably satisfy any other requirements imposed by any Project Lenders;

.8   The Contractor has provided evidence reasonably satisfactory to Owner that all utilities necessary or appropriate for the operation of the Project have been installed and are fully operational and are actually operating to the satisfaction of the governmental authorities or utility companies responsible for the operation thereof and that all costs in connection with such installation and operation, that

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                      (1463177827)

Contractor is responsible per the terms of this Agreement , have been paid in full; and

.9    the other conditions set forth in Section 12.2.2 below or otherwise in this agreement, including the Supplemental Conditions to Agreement and the General Conditions are satisfied, including Owner's audit rights.

**§ 12.2.2** The Owner's auditors will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Owner by the Contractor. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Contractor's final accounting to  be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of A201–2007. A request for mediation shall be made by  the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the  Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.4** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the  Architect's final Certificate for Payment, or as follows:

« »

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## § 12.3 OTHER

**§ 12.3.1** Payments made pursuant to this Contractor shall not be conclusive evidence of the performance of this Contract either in whole or in part, nor shall such payments be construed to be evidence of acceptance of non-conforming work, defective work or improper materials.

**§ 12.3.2** Notwithstanding the fact that a good faith and reasonable dispute, controversy or question shall have arisen in connection with the interpretation of any provision of this Contract, the performance of any Work, the delivery of any material and/or the payment of any monies to the Contractor, or otherwise, the Contractor agrees that it will not directly or indirectly stop, slow down or delay any Work or part of its Work on its part required to be performed or stop, slow down or delay the delivery of any materials on its part required to be furnished hereunder, and it shall continue to perform its Work pending the determination of such dispute or controversy, subject to the Owner's continued and timely payment of all undisputed amounts due.  Any such suspension by the Contractor on account of the Owner's failure to remit payments otherwise properly due shall be subject to the Contractor's prior written notice to the Owner and the Owner's failure to cure within ten (10) business days of receipt of such notice.

**§ 12.3.3** Any and all funds payable to the Contractor hereunder are hereby declared to constitute trust funds in the hands of the Contractor, to be applied first to the payment of claims of Subcontractors, laborers and materialmen arising out of the Work, to claims for utilities furnished and taxes imposed, and to the payment of premiums on surety bonds and other bonds filed and premiums on insurance accruing during the construction of the Work, before application to any other purpose. Whenever required by the Owner, it shall be the duty of the Contractor to file with the Owner a verified statement, in form satisfactory to the Owner, certifying the amounts then due and owing from the Contractor for labor and materials furnished under the terms of this Contract, setting forth herein the names of the persons whose charges or claims for labor, materials or supplies are unpaid, and the amount due each respectively.  The Owner reserves the right to make payments to such parties directly or jointly payable to the Contractor where in the Owner's reasonable determination such direct or joint payments are necessary for protection of the Owner's interests based on a failure by the Contractor to remit payments for Work

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                            (1463177827)

12

performed to subcontractors, laborers, suppliers, and/or materialmen as required. In the event that Owner shall make any payment to any Subcontractor on behalf of the Contractor, notwithstanding that the Owner shall have no obligation to do so, the Owner shall be deemed to be a subrogee of such Subcontractor with respect to such claims for payment, including without limitation claims arising under applicable trust laws.

## ARTICLE 13   DISPUTE RESOLUTION
### § 13.1 INITIAL DECISION MAKER
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201−2007, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

« »
« »
« »
« »

### § 13.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201−2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[ « » ]    Arbitration pursuant to Section 15.4 of AIA Document A201−2007

[ X ]    Litigation in a court of competent jurisdiction

[ « » ]    Other *(Specify)*

Neither Owner nor Contractor shall have any obligation to arbitrate any matter related to the project.  In the event of any legal action or mediation being brought by Owner or Contractor, then the exclusive venue of such action shall be in the State Circuit Court in the County where the Project is located, and the parties hereby waive any further rights they may have in the selection of venue.  Both parties also knowingly, voluntarily and intentionally waive any and all rights to a jury trial, regardless of whether the action is in contract, tort, statutory claim or any combination thereof.

## ARTICLE 14   TERMINATION OR SUSPENSION
§ **14.1** Subject to the provisions of Section 14.2 below, the Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201−2007.

§ **14.2** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201−2007, the amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201−2007 shall not cause the  Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:
   .1    Take the Cost of the Work incurred by the Contractor to the date of termination;
   .2    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate  stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount  that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination  bears to a reasonable estimate of the probable Cost of the Work upon its completion; and
   .3    Subtract the aggregate of previous payments made by the Owner.

§ **14.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the  Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included  in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of  subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the  payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal  assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the  purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or  purchase orders.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                                  (1463177827)

**§ 14.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.1 and Section 6.4 of this Agreement.

**ARTICLE 15 MISCELLANEOUS PROVISIONS**

**§ 15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 15.2 Where Owner has failed to remit amounts due to Contractor as required pursuant to this Agreement and Contractor has delivered written notice of such default to Owner with not less than fourteen (14) days right to cure same, then Owner's failure to cure in accordance with such notice, such payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

«0.5 » % « »

**§ 15.3** The Owner's representative:
*(Name, address and other information)*

Robert Mueller
7700 Irvine Center Drive, Suite 600
Irvine, California 92618« »
« »
« »
« »
« »

**§ 15.4** The Contractor's representative:
*(Name, address and other information)*

« »Marc Penick
«»15435 INNOVATION DRIVE, SUITE 100
SAN DIEGO, CA 92128
« »
« »
« »
« »

**§ 15.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

**§ 15.6** Other provisions:

**§ 15.6.1** Neither party hereto shall at any time assign the Contract, or any claims arising under it, as a whole or in part without the written consent of the other party and any assignment made by Owner contrary to this section shall be void, provided that the Contractor acknowledges that the Owner may be financing the Work with one or more Project lenders ("Project Lenders"). Accordingly, this prohibition against assignment does not apply to any collateral assignment of the Contract Documents to the Project Lenders and does not apply to the Contractor's right to subcontract portions of the Work to Subcontractors and suppliers. In addition, Contractor acknowledges that Owner may assign this Contract to any affiliate of the Owner without prior written consent of the Contractor provided, prior to any such assignment: (i) Owner or such affiliate provides Contractor with documentation evidencing such affiliate's financial capacity to perform Owner's obligations under the Contract; and (ii) such affiliate assumes all of Owner's obligations under the Contract. The Contractor shall, in furtherance of any such assignment by Owner to Project Lenders, execute all required certificates, consents, stand-still or other acknowledgements as customarily required of the Project Lenders in respect of this assignment.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                            (1463177827)

« »

## ARTICLE 16  ENUMERATION OF CONTRACT DOCUMENTS

§ 16.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ 16.1.1 The Agreement is this executed AIA Document A102–2007, Standard Form of Agreement Between Owner   and Contractor.

§ 16.1.2 The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction (Exhibit A).

§ 16.1.3 The Supplementary and other Conditions of the Contract (Exhibit B): Not Applicable

| Document | Title | Date | Pages |
|---|---|---|---|
|  |  |  |  |

§ 16.1.4 The Specifications (Exhibit C):
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

« »

| Section | Title | Date | Pages |
|---|---|---|---|
|  |  |  |  |

§ 16.1.5 The Drawings (Exhibit D):
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

« »

| Number | Title | Date |
|---|---|---|
|  |  |  |

§ 16.1.6 The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
|  |  |  |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 16.

§ 16.1.7 Additional documents, if any, forming part of the Contract Documents:

.1  AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

« »

.2  Other documents, if any, listed below:

(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)

Exhibit E – The Project Construction Schedule
Exhibit F – Schedule of Values
Exhibit G – Contractor Assumptions
Exhibit H – General Conditions Schedule of Values
Exhibit I – Allowance Log
Exhibit J – Distribution of Costs, Schedules 1-4

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                (1463177827)

15

DocuSign Envelope ID: 7B996EE7-57AD-4509-8315-9085679B0A41

Exhibit K – Insurance Manual
Exhibit L – Lien release and waiver forms
Exhibit M – Contractor Employee Burden Rates

**ARTICLE 17   INSURANCE AND BONDS**
The Contractor shall purchase and maintain insurance and provide subcontractor bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

| Type of insurance or bond | Limit of liability or bond amount ($0.00) | |
|---|---|---|
| | | |

This Agreement entered into as of the day and year first written above.

DocuSigned by:

*Robert Mueller*

ADBB18C4ED7E4FA...

**OWNER** *(Signature)*

DocuSigned by:

*Marc Penick*

9287C417EAC4D6...

**CONTRACTOR** *(Signature)*

Robert Mueller  »« Vice President | Construction »

*(printed name and title)*

«Marc Penick  »« Chief Executive Officer »

*(printed name and title)*

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:09:42 on 10/28/2014 under Order No.2879925501_1 which expires on 07/14/2015, and is not for resale.
**User Notes:**                                                                                                    (1463177827)

# EXHIBIT A
# 201-2007

# AIA® Document A201™ – 2007

## *General Conditions of the Contract for Construction*

**for the following PROJECT:**
*(Name and location or address)*
«Clean Copies»
« »

**THE OWNER:**
*(Name, legal status and address)*
« »« »
« »

**THE ARCHITECT:**
*(Name, legal status and address)*
« »« »
« »

**TABLE OF ARTICLES**

1    GENERAL PROVISIONS

2    OWNER

3    CONTRACTOR

4    ARCHITECT

5    SUBCONTRACTORS

6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TIME

9    PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

14   TERMINATION OR SUSPENSION OF THE CONTRACT

15   CLAIMS AND DISPUTES

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                    (2054177607)

1

# INDEX
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7, 9.10,
11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10,
4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.4.1, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and
Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2,
4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4,
9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2

Architect's Additional Services and Expenses
2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4.1, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18,
4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5,
15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for**
**Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1.1, 15.2.5, 15.2.6.1, 15.3.1,
15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                (2054177607)
2

Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.46.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1, 15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND 9**

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7
Compliance with Laws
1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CNTRACTORS**
1.1.4, **6**
**Construction Change Dire**
**7.3.1**
**Construction Change Dire**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                             (2054177607)

3

**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1, 6.1.2**
**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2,
6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6,
10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**

Costs
2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6,
11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on
07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                (2054177607)

**4**

Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13.1, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4.1, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4.1
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2

**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, **11**
**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent
to Partial Occupancy
9.9.1
Intent of the Contract
Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes 8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13.1, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1.1, 13.4, 13.5.1, 13.5.2,
13.6.1, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3.1, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7,
4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3,
11.1.2, 11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5,
11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance  11.3.3**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                                (2054177607)

5

DocuSign Envelope ID: 7B996EE7-57AD-4509-8315-9085679B0A41

Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12,
3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2,
9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1,
14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**,
15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
MISCELLANEOUS PROVISIONS
13
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3.1, 2.4.1, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3,
9.10.4, 12.2.1
Notice
2.2.1, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1,
9.7, 9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1,
13.5.2, 14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7,
9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14,
15.2.8, 15.4.1
**Notice of Claims**
3.7.4, 10.2.8, **15.1.2**, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1,
13.5.2, 14.3.1
**OWNER**
**2**
**Owner**, Definition of
**2.1.1**

**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3.1, 2.4.1, 3.4.2, 3.8.1, 3.12.10, 3.14.2,
4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3,
7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4,
9.9.1, 9.10.2, 10.3.2, 11.3.3, 11.3.10, 12.2.2,
12.3.1, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
 **6.3**
**Owner's Right to Perform Construction
and to Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications
and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11.1, 3.17,
4.2.12, 5.3.1
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1,
14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3.1,
13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on
07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                  (2054177607)

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12

**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 1
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on
07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                                              (2054177607)

7

Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3,
9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3.7**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3,
12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE
CONTRACT**
**14**

**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5,
13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on
07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**
(2054177607)

8

Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1

Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                              (2054177607)

**9**

**ARTICLE 1 G E N E R A L  PROVISIONS**
**§ 1.1 BASIC DEFINITIONS**
**§ 1.1.1 THE CONTRACT DOCUMENTS**
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

**§ 1.1.2 THE CONTRACT**
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

**§ 1.1.3 THE WORK**
The term "Work" means all reasonably necessary and inferable the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations, including completion of the Work in accordance with the Drawings and Specifications. The Work may constitute the whole or a part of the Project.

**§ 1.1.4 THE PROJECT**
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

**§ 1.1.5 THE DRAWINGS**
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

**§ 1.1.6 THE SPECIFICATIONS**
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

**§ 1.1.7 INSTRUMENTS OF SERVICE**
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

**§ 1.1.8 INITIAL DECISION MAKER**
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

**§ 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS**
**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                              (2054177607)

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

## § 1.3 CAPITALIZATION
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

## § 1.4 INTERPRETATION
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## § 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service.
The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

## § 1.6 TRANSMISSION OF DATA IN DIGITAL FORM
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

## ARTICLE 2   OWNER
### § 2.1 GENERAL
**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization.
Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

## § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
**§ 2.2.1** Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                          (2054177607)

**§ 2.2.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.4** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after
Contractor's written request for such information or services.

**§ 2.2.5** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

**§ 2.3 OWNER'S RIGHT TO STOP THE WORK**
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

**§ 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK**
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

**ARTICLE 3   CONTRACTOR**
**§ 3.1 GENERAL**
**§ 3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**§ 3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents. Contractor shall comply fully with all applicable federal and state regulations, state and local building codes, governing or pertaining to the performance of its work.

**§ 3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

**§ 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR**
**§ 3.2.1** As a material inducement to Owner to enter into the Agreement, Contractor represents that it has visited the jobsite, familiarized itself with local conditions under which the Work is being performed, correlated its observations with the requirements of the Contract Documents and consulted with the Architect. Contractor has no knowledge of any conditions likely to cause a delay or impediment to the Work or result in any adjustment to the Guaranteed Maximum Price. Contractor acknowledges that the Owner has furnished Contractor with all information which Contractor deems necessary to fully perform the Work for a Contract Sum equal to or less than the Guaranteed Maximum Price. Contractor specifically

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                         (2054177607)

DocuSign Envelope ID: 7B996EE7-55AD-4509-9315-9085679B0A44

acknowledges that, to the best of its knowledge, the Contract Documents are sufficient to enable Contractor to accurately determine the cost and scope of the Work. Contractor represents that Contractor's proposal has made a good faith effort to take into consideration all aspects of the jobsite and its surroundings, including situations and conditions that are discoverable by reasonable inspection of visible conditions and that Contractor will perform or cause to be performed all Work in accordance with the Contract Documents. Contractor shall cause the same representations to be made by all subcontractors to Owner.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Owner and Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect and Owner may require prior to proceeding with the Work. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents. Contractor represents that it has reviewed the Contract Documents and participated in preconstruction meetings with Owner and Architect and reasonably believes that it can perform the Work without Owner warranting the adequacy or completeness of the design or compliance with applicable laws, codes or regulations. Contractor further represents that its Work will provide a complete, operable, habitable Project in accordance with the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

## § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**§ 3.3.4** The Contractor shall attend job meetings (and such other meetings as may be requested by Owner or required to meet

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                      (2054177607)

13

the objectives of the Contract Documents from time to time) with the Architect and such other persons as the Owner or the Architect may wish to have present. The Contractor shall be represented by a principal, project manager, general superintendent or other authorized main office representative as well as by its own superintendent. An authorized representative of any subcontractor or sub subcontractor shall attend such meetings if the presence of such representative is requested by the Owner, Construction Manager or the Architect. Such representatives shall be empowered to make binding commitments on all matters to be discussed at such meetings, including costs, payments, change orders, time schedules, and manpower. Contractor shall prepare complete minutes of all such meetings and submit to Owner, Construction Manager and Architect within five (5) days of any such meeting. Any notices required under the Contract may be served on such representatives.

**§3.3.5** Contractor shall at all times maintain an ongoing lien release log showing information required by the Owner, including without limitation the following as to each subcontractor: subcontractor name, manner of work, notice date, date of partial lien release receipt (to be obtained on a month to month basis), date of the most recent performance of service or delivery of materials, and the date of receipt of the final lien release.

**§3.3.6** Contractor shall also maintain at all times daily reports which record for each day information requested by Owner, which shall include without limitation: the weather, subcontractors on the job, number of workers for each subcontractor, number of hours worked, work accomplished, problems encountered, equipment used on the job, equipment in use, potential delays, and equipment broken down. Owner shall be able to view daily reports from Contractor's job specific management website and software.

## § 3.4 LABOR AND MATERIALS
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.4.4** Contractor shall check all materials, equipment and labor provided for the Work and shall keep accurate and comprehensive books of account showing the actual costs to Contractor of all items of labor, materials, supplies, services and other expenditures of whatever nature for which payment reimbursement is authorized under terms of this Agreement.

## § 3.5 WARRANTY
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.5.1** In addition to all other warranties provided herein or by operation of law, Contractor fully, and completely warrants and guarantees: (i) the Work against all defects for a period of one (1) year from the date of Substantial Completion of each Phase (each set as the "Guarantee Period"); and (ii) that the Work, as installed, is in accordance with, and fulfills the requirements of, the Contract Documents. If any of the Work proves to be nonconforming or defective during the Guarantee Period, Contractor shall repair or replace it together with any other adjacent Work which may be displaced or adversely impacted by so doing, without any expense whatsoever to Owner. If any such defect is observed within the Guarantee Period, Owner shall give Contractor written notice thereof, and Contractor shall, within ten (10) days of receipt of the notice by Owner, commence such Work and diligently make or cause to be made all necessary repairs and replacements; provided that if such Work is of an emergency nature and Contractor cannot respond on an urgent basis, Owner shall have the right to

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                      (2054177607)

DocuSign Envelope ID: 7B996EE7-55AD-4509-9815-9085679B0A44

perform such Work and obtain reimbursement therefore from Contractor within thirty (30) days of Owner's invoice therefore. If Contractor fails so to do, Owner may cause the same to be made by a third party and charge the cost of such repair and replacement to Contractor, including interest thereon at the rate of Prime plus 2% from the date of each expenditure. Notwithstanding any such assignment, Contractor shall remain directly liable to Owner under the terms of the Contract Documents. The warranty provided by Contractor under this Section applies to all Work on the Project. The obligation of the Contractor to repair or replace defective Work discovered or arising during the one year period specified in this paragraph does not limit the obligations of Subcontractors or suppliers under any warranty they have provided to Owner including, but not limited to, extended warranties identified in the Project Specifications, nor Contractor's obligation to pay for costs arising from latent defects in its Work. That obligation extends to the full limit of applicable statutes of limitation or repose. The warranty provided hereunder shall not be deemed to limit or waive any parties rights under any applicable statutes of limitation or statutes of repose to make any claim for patent or latent defects which occur or are determined to exist outside of the Guarantee Period or any other applicable warranty time period.

**§ 3.5.2** In addition to the foregoing, the Contractor shall warrant for a period of twelve (12) months from the date of Substantial Completion of each building or phase of building that the areas of the building covered by the scope of the Work shall be watertight and leak-proof at every point in every area, except where the leaks can be attributed to (i) damage to any of the buildings caused by extraordinary external forces beyond the Contractor's control, and/or (ii) defects in the Contract Documents prepared by or on behalf of an architect other than architects employed by the Contractor, unless the Contractor recognized such defects and failed to report them to the Architect and the Owner, and/or (iii) damage to any of the buildings caused by improper maintenance or alterations made by the Owner or those in its employ or under separate contract, and/or (iv) damage to any of the buildings caused by the work of others. The Contractor shall, immediately upon notification by the Owner of water penetration, determine the source of water penetration and, if items (i), (ii), (iii) or (iv) do not apply, complete any work necessary to make the building watertight. The Contractor shall also, at its own expense, repair or replace, as necessary to restore to original condition, any other building materials, finishes and furnishings that are damaged as a result of this water infiltration.

**§ 3.5.3** All obligations under Article 3.5 and all other warranty obligations within the contract agreement shall survive termination of this agreement. In addition, all warranties are to be assigned to Owner.

### § 3.6 TAXES
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

### § 3.7 PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS
**§ 3.7.1** Owner shall be responsible for building permit fees in accordance with Exhibit J Distribution of Costs. Unless otherwise provided in the Contract Documents, the Contractor shall secure inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 7 calendar days after first observance of the conditions. The Owner/Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                      (2054177607)

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

## § 3.8 ALLOWANCES

**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

   .1  Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

   .2  Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

   .3  Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

## § 3.9 SUPERINTENDENT

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's written consent, which shall not unreasonably be withheld or delayed.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor shall within 14 calendar days of execution of this Agreement, shall prepare and submit for the Owner's and Architect's approval Contractor's construction schedule for the Work. The schedule shall show the critical path for each phase and for the total project but shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall within 14 calendar days of the execution of this Agreement prepare a submittal schedule, and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Owner and Architect's approval. The Owner's and Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals but no less than 10 working days. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

**§ 3.10.4** Contractor shall provide Owner at least once each month an updated schedule and notify Owner as to whether the Work is on schedule and, if it is not, the nature of the deviation and the reason(s) for such and Contractor's plan to bring the Work back into compliance with the schedule, as adjusted by Change Order extensions of time.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                                    (2054177607)

**§ 3.10.5** Contractor shall submit as part of the monthly schedule update a status list of project milestones.  There will be two different types of project milestones: (1) Critical Milestones and (2) Non-Critical Milestones. Each of the Critical and Non-Critical milestones will be identified in Exhibit E. The milestones shall be assessed on a monthly basis and adjusted to the extent required by any Change Order extensions of time. In addition, and within ten (10) calendar days after missing a milestone as adjusted per an approved Change Order, not due to a cause for which Contactor is otherwise entitled to an extension of time, Contractor shall submit a recovery schedule which accounts for any lost time or gained time with the schedule, and returns the Work back to the originally approved Critical Path for the Project.  Contractor shall be required to thereafter comply with the recovery schedule with all costs related to meeting this recovery schedule to be borne by the Contractor.  In the event Contractor fails to timely provide a recovery schedule, Contractor will not be entitled to an extension for the loss time that was caused by Contractor, its Subcontractor, or anyone for whom it may be responsible.

**§ 3.11 DOCUMENTS AND SAMPLES AT THE SITE**
The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change  Orders and other Modifications, in good order and marked currently to indicate field changes and selections made  during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required  submittals. These records shall be available to for review and copying by the Owner, Architect and Owner's Lender and shall be delivered to the  Owner upon completion of the Work as a record of the Work as constructed.

**§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES**
**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the  Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of   the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and  other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards   by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is   to demonstrate the way by which the Contractor proposes to conform to the information given and the design  concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents  require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals   upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents.   Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the   Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in  accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal  schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of  the Owner or of separate contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to  the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified   materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and   coordinated the information contained within such submittals with the requirements of the Work and of the Contract   Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal  and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been   approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop  Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect  in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific  deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued   authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop  Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data,   Samples or

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                (2054177607)

17

similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. In addition, if these professional design services or certifications are required by the Contractor, then Contractor shall also require Professional Liability Insurance as referenced in Exhibit K, for each professional providing such services. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

## § 3.13 USE AND PROTECTION OF SITE
**§ 3.13.1** The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§ 3.13.2** Contractor specifically acknowledges and agrees that during its operations on the Project, Contractor shall be responsible for maintaining any silt fence and tree protection fence and any other sedimentation control measures or tree control measures required by applicable environmental and/or other sedimentation control laws and regulations including the Stormwater Pollution Prevention Plan (SWPPP). Contractor shall hold Owner harmless from and against any and all costs, losses, liabilities or expenses which Owner may incur as a result of (i) the failure of Contractor to comply with all sedimentation or erosion control requirements, laws and regulations in effect as of the date of this Agreement and during the performance of the Work; (ii) the escape of sediment and silt from the Property onto downstream owners or into the detention ponds, if any during periods in which Contractor has control of the Project; or (iii) the failure of the control requirements. Contractor shall be responsible for turning over the Project to Owner upon final completion with all storm drainage control structures and vaults being in good condition, requiring no mucking out, and acceptable in all respects within the standards provided in the Construction Documents and any other applicable Contract Documents and those provided under applicable laws and regulations. The Contractor understands the SWPPP is to be managed, and does not detail means and methods but rather requires the Contractor to actively manage the plan.

## § 3.14 CUTTING AND PATCHING
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 3.15 CLEANING UP
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                          (2054177607)

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner  shall be entitled to reimbursement from the Contractor.

## § 3.16 ACCESS TO WORK

The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever  located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS

The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement  of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but  shall not be responsible for such defense or loss when a particular design, process or product of a particular  manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are  contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the  Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a  patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the  Architect.

## § 3.18 INDEMNIFICATION

**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner,  Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages,  losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the  Work In addition and subject to the limitation of liability for delays to liquidated damages, Contractor also agrees to indemnify, defend and hold harmless the Owner from costs, suits or losses, to the extent caused by (i) the breach of this Agreement or the terms of the Contract Documents; (ii) any violation of the standard of care applicable to Contractor's Work;  or (iii) the negligent acts or omissions or willful misconduct of the Contractor, a Subcontractor, supplier anyone directly or indirectly employed by them or anyone for whose acts they may be liable.  Except as stated in the provisions dealing with liquidated damages, no performance bond or insurance protection required by the Contract Documents, or otherwise provided by the Contractor, shall in any way limit the responsibility to indemnify, defend, protect, and hold harmless the Indemnitees as herein provided.

## ARTICLE 4 ARCHITECT
## § 4.1 GENERAL
**§ 4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents  shall not be restricted, modified or extended without written consent of the Owner, and Architect.  Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect.

## § 4.2 ADMINISTRATION OF THE CONTRACT
**§ 4.2.1** The Owner will designate a representative that will provide administration of the Contract as described in the Contract Documents and will be  an Owner's representative during construction until the date the Architect issues the final Certificate for Payment.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed,  and to determine in general if the Work observed is being performed in a manner indicating that the Work, when  fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to  make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will  not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or  procedures, or for the safety precautions and programs in connection with the Work, since these are solely the  Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and  quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract  Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and  deficiencies observed in the Work.

**AIA Document A201™ – 2007**. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                          (2054177607)

The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION

Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Owner's representative about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Owner and Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** The Architect and Owner have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect or Owner considers it necessary or advisable, the Architect or Owner will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect or Owner nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect or Owner to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Contractor will submit Change Orders to the Owner. The Architect or Owner may prepare Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in the Contract Documents.

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                                (2054177607)

**§ 4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5 SUBCONTRACTORS
### § 5.1 DEFINITIONS
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

### § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, but in no case longer than 120 days after the execution of this contract, shall furnish in writing to the Owner the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner or Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14-day period shall constitute notice of no reasonable objection. The Contractor, at or before Substantial Completion, shall provide the Construction Manager with a complete, written list of all actual Subcontractors and suppliers of equipment and materials for the Work with the address and telephone number of each and a description of the portion of the Work performed by each.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

### § 5.3 SUBCONTRACTUAL RELATIONS
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

### § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                    (2054177607)

.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to  Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the   Subcontractor and Contractor in writing; and

.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the  Contract.

§ 5.4.2 Upon such assignment: (i) Owner shall only be liable under the assigned subcontracts for obligations that accrue after the date of assignment; and (ii)   if the Work has been suspended for more than 60 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

§ 5.4.3 Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor   contractor or other entity.

## ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
§ 6.1.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's  own forces, and to award separate contracts in connection with other portions of the Project or other construction or   operations on the site under Conditions of the Contract identical or substantially similar to these including those   portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is  involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

§ 6.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations   on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes   each separate Owner-Contractor Agreement.

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate  contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with   other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any   revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction   schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until   subsequently revised.

§ 6.1.4 Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations  related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations  and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without   excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY
§ 6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and   storage of their materials and equipment and performance of their activities, and shall connect and coordinate the   Contractor's construction and operations with theirs as required by the Contract Documents.

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by  the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly   report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable   for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the  Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor  because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be  responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly   timed activities, damage to the Work or defective construction.

§ 6.2.4 The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially  completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are  described for the Contractor in Section 3.14.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                            (2054117607)

## § 6.3 OWNER'S RIGHT TO CLEAN UP
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Owner's representative will allocate the cost among those responsible.

## ARTICLE 7   CHANGES IN THE WORK
### § 7.1 GENERAL
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents and no course of conduct or dealings between the parties, nor express or implied acceptance of alterations or additions to the Work shall be the basis of any claim to an increase in amounts due under the Contract Documents or an adjustment in the Contract Time.

**§ 7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction  Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the  Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the  Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive  or order for a minor change in the Work.

**§ 7.1.4** If a change in the Work is requested for any reason, and is not the direct result of a scope change requested by Owner, Contractor has the duty to propose to Owner a resolution that meets the intent of the Contract Documents without resulting in an increase in the Contract Sum or Contract Time.

## § 7.2 CHANGE ORDERS
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and   Architect stating their agreement upon all of the following:
    .1       The change in the Work;
    .2       The amount of the adjustment, if any, in the Contract Sum; and
    .3       The extent of the adjustment, if any, in the Contract Time.

**§ 7.2.2** No changes to, additions to, or deviations from the Contract Documents, including without limitation, changes in the Contract Sum or changes in the Contract Time, shall be made in the Work without the prior written approval of Owner, said approval to be only in the form of a written Change Order, Construction Change Directive or Order for Minor Change in Work.  Contractor agrees that each Change Order shall include all manner of adjustments in the total costs and time related to the change, including without limitation cost adjustments related to delays and disruptions caused by the change. For each Change Order, the Contractor shall be deemed to have waived as to each change, unless expressly stated in the Change Order (i) any related cost or time adjustment which it might otherwise be entitled under the Contract Documents; and (ii) any right to an equitable adjustment as to time, cost or any other matter.  In the event Architect initiates a Construction Change Directive, Contractor shall provide together with the request for said Construction Change Directive Contractor's good faith estimate of the impact of the change upon the Contract Sum and Contract Time.  Owner may, in its sole discretion, (i) elect to proceed with said Construction Change Directive with the increase to the Contract Sum and Guaranteed Maximum Price and the Contract Time remaining open until agreed to by Contractor and Owner, (ii) require a Change Order for the proposed change, or (iii) decline the Construction Change Directive, acknowledging that the request of a Change Order may include the request for an extension of the Contract Time.  In the event a Construction Change Directive is authorized in writing by Owner, Owner shall be responsible for costs incurred by Contractor in performing such Construction Change Directive and the change shall be adopted in a Change Order within fourteen (14) days after the authorization of the Construction Change Directive, which Change Order will adjust Contract Time and Contract Sum, if applicable. For Change Orders in which the Contractor is due an increase in the Contract Time, the Owner shall not delay the Change Order seeking to have the Contractor drop its claim for additional Contract Time under the Change Order. In the event a Change Order increases the Contract Sum, Contractor shall include the Work covered by such Change Orders in Applications for Payment as if such Work were originally part of the Contract Documents.

## § 7.3 CONSTRUCTION CHANGE DIRECTIVES
**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and   Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract  Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes   in the Work within the

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                         (2054177607)

general scope of the Contract consisting of additions, deletions or other revisions, the   Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change   Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be  based on one of the following methods:

.1   Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to   permit evaluation;

.2   Unit prices stated in the Contract Documents or subsequently agreed upon;

.3   Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or   percentage fee; or

.4   As provided in Section 7.3.7.

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that   application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or   Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in   the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any,    provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or  Contract Time.

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith,   including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall   be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum,   the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of  those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an  amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a   reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form   as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise   provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1   Costs of labor, included in Owner approved labor burdened employee rates as depicted in Exhibit X (Contractor Staffing Rates) ;

.2   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or   consumed;

.3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the  Contractor or others;

.4   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to  the Work; and

.5   Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a  net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and   credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall   be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor   may request payment for Work completed under the Construction Change Directive in Applications for Payment.
The Architect will make an interim determination for purposes of monthly certification for payment for those costs  and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be   reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis  as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the   adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such   agreement shall be effective immediately and a Change Order will be prepared. Change Orders may be   issued for all or any part of a Construction Change Directive.
§ 7.3.11 Any changes undertaken without the Owner's authorization will not be recognized as the basis for a Claim for extra cost at

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                         (2054177607)

a later date.  If the Contractor claims that any instructions or orders, whether oral, written, by drawings, or otherwise, involve extra cost or time, and such instructions or orders are not accompanied by a written acknowledgement by the Owner that extra payment will be made or time extended, it shall promptly so notify the Owner in writing and should not proceed with the Work until it has received a further written order to proceed, except in cases of emergency affecting life or property.  No Claim for extra cost or time on account of such instructions shall be valid unless the Contractor has so notified the Owner, before proceeding, that it claims extra cost and time and has received the further written order to proceed.

## § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or  extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be  effected by written order signed by the Architect and shall be binding on the Owner and Contractor.


## ARTICLE 8 TIME
### § 8.1 DEFINITIONS
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in   the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically  defined.

### § 8.2 PROGRESS AND COMPLETION
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement   the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be  furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the   effective date of such insurance.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion   within the Contract Time.

### § 8.3 DELAYS AND EXTENSIONS OF TIME
**§ 8.3.1** Contractor shall not be entitled to an extension of Contract Time, except under one or more of the following circumstances:

(1) Owner approves a Change Order in writing containing an express extension of the Contract Time.
(2) an act or omission by Owner or its designated representative, including the Architect, the Architect's consultants or Owner's consultants, that delays the critical path of the Work, or an act or omission by any separate contractor of Owner that delays the critical path of the Work.
(3) soil and subsurface conditions in accord with Contractor's Article 3 obligations, or any anticipated hazardous, toxic or harmful materials encountered materially differing from those reasonably verifiable and delay the critical path of the Work, as set forth in Section 3.7.4 and 3.7.5.
(4) adverse and abnormal weather conditions which delay the critical path of the Work.
 (5) a court or governmental agency having jurisdiction over the Work causes the progress of the Work to be delayed by a court order, change in existing law or interpretation thereof, or new law, provided that such action is not based on Contractor's or Subcontractors' violation of any law or any governmental regulation or upon other default by Contractor or its Subcontractors.
 (6) an act of God, or a fire, or other causes beyond the Contractor's control, provided that (i) Contractor has reasonably attempted to avoid such delay, and (ii) Contractor could not have reasonably planned for such delay.

Contractor will keep Owner apprised of potential delays as they occur during Project coordination meetings.

**§ 8.3.2** The Construction Schedule shall be established with reference to and knowledge of and shall take into account

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                              (2054177607)

weather conditions usual to the area and shall include adverse weather days. The Contractor believes that the number of adverse weather days is sufficient based upon the Contractor's experience on similar projects in the same locale but the Contractor does not warrant that the number of adverse weather days is sufficient. If a critical path activity(s) is impacted by more than the weather days as included in the Contractors schedule as a result of an adverse weather condition (leading to an "Unanticipated Adverse Weather Day "as hereinafter defined), the Contract Time shall be extended by agreement of the parties to the extent the unanticipated adverse weather condition delays the critical path of the Work, provided written notice of a request is made within ten (10) days of such event. An "Unanticipated Adverse Weather Day" is defined as a weather condition on any given schedule work day that creates severe or unsafe working conditions on the site that have a material, adverse effect on scheduled critical-path Work and results in the cessation of critical path activities for more than four (4) hours or prevents the proper performance of the critical path activity on that day.

**§ 8.3.3** Extensions of Contract Time (including any milestone) shall not be granted unless a delay caused by one or more of the circumstances described in Section 8.3.1 does in fact, extend the critical path of Work or extends a milestone. An extension of the Contract Time shall not be granted with respect to any period of time that the critical path of the Work or a milestone is delayed by any act, neglect or default of Contractor or Subcontractors. The term "critical path" as used herein refers to the overall contractual baseline critical path identified in Exhibit "I", which shall not change without approval of a Change Order signed by Owner. If there are concurrent delays not caused by Contractor, Contractor shall not be entitled to cumulative time, but instead, shall only be entitled to an extension of time, if any, correlations to the least amount of time allowed under either delay event.

**§ 8.3.4** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.5** As it relates to delays, Contractor shall be entitled to an increase in the Contract Sum only in the event that there is a critical path delay caused by one of the circumstances set forth in Section 8.3.1 above, but in no event shall there be any increase in the Contract Sum during a concurrent delay. A concurrent delay is defined to mean a separate delay to the critical path caused by Contractor. In such event, Contractor shall only be entitled to an extension of the Contract Time. Contractor shall have no right, claim or entitlement to any additions to Contract Sum if Contractor fails to give the same written notice required by Section 8.3 and Article 15. In addition, Contractor shall not have any claims for damage, loss or expense resulting from interruptions to, or suspension of, its' Work arising out of a failure by the General Contractor to coordinate with the other contractors performing work in connection with the project. Should such addition to Contract Sum for a delay as noted above be granted, said addition of Contract Sum shall be calculated as actual costs only at time of delay plus fee as specified in Article 5.1.2 in AIA A102.

**§ 8.3.6** Notwithstanding anything stated herein to the contrary, should the Owner be responsible for paying for an increase in the Contract Sum caused by such delay as noted in this Section 8.3.3 above, the Contract Sum shall not be increased until the cumulative number of days of all delay occurrence exceeds a total of fifteen (15) work days. Upon the 15th work day expiring should there be costs moving forward the Contractor may submit a request to change the Contract Sum in as specified in Article 7 in AIA A201. If the progress, performance or completion of the Work or any portion or portions of it is or may be delayed because of a dispute or disputes as to the interpretations, meaning or application of this Agreement or any Subcontract hereunder, Contractor agrees at the direction of Owner to proceed and to order any Subcontractor involved to proceed with the Work pending a resolution of the dispute, and without prejudice to the rights or remedies of any party thereto.

**§ 8.3.7** In the event the performance of the Work, as set forth on the Construction Schedule, has not progressed or reached the level of completion required by the Contract Documents, due to any cause, other than a delay as defined in Section 8.3.1 above, for which an extension of time is not permitted hereunder, and the Contractor, pursuant to a Recovery Schedule submitted to the Owner, is unable to mitigate the failure to achieve the performance of the Work required as of such milestone date without taking additional measures, the Owner shall have the right to direct the Contractor to take corrective measures necessary to expedite the progress of construction at no extra charge to the Owner and/or no entitlement to a change in the Contract Sum, including, without limitation, (i) working additional shifts or overtime, (ii) supplying additional manpower, equipment, and facilities, and (iii) other similar measures (hereinafter referred to collectively as "Extraordinary Measures"). Such Extraordinary Measures shall continue until the progress of the Work complies with the state of completion required by the Contract Documents, as adjusted for time extensions. The Owner's right to require Extraordinary Measures is solely for the purpose of ensuring the Contractor's compliance with the Construction Schedule. The contractor shall not be entitled to an adjustment in the Contract Sum in connection with the Extraordinary Measures required by the Owner under or pursuant to this Section. The Owner may exercise the rights furnished the Owner under or pursuant to this Section as frequently as the Owner deems necessary to ensure that the Contractor's performance of the Work will comply with any Milestone Date or completion date set forth in the Construction Schedule, as adjusted for time extensions.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                    (2054177607)

**§ 8.3.8** To the fullest extent permitted by law, Owner shall not be responsible for any loss or damage sustained by Contractor, or additional costs sustained by Contractor, through delay caused by Owner or any separate contractor or subcontractor or by any other cause, and Contractor agrees that the sole right and remedy therefore shall be an extension of Contract Time and increase in the Contract Sum, if applicable, in accordance with the requirements and limitations of Section 8.3.

**§ 8.3.9** Liquidated Damages amounts shall not be deemed a penalty, but are a reasonable estimate of the Owner's damages due to Contractors' delay. Liquidated Damages as provided herein are the Owner's sole remedy for delay and are intended to substitute for any actual, direct or consequential damages the Owner may suffer or experience as a result of the Contractor's delay. Each of these Liquidated Damages shall run concurrently.

**§ 8.3.10** Owner's exercise of any of its rights under Article 7 (Changes), regardless of the extent or number of such changes, or Owner's exercise of any of its remedies of suspension of the Work, or requirement of correction or re-execution of any defective work, shall not under any circumstances be construed as intentional interference with Contractor's performance of the Work.

**§ 8.3.11** Permitting the Contractor to continue and finish the Work or any part of the Work after the dates fixed for completion, or after the dates to which the time for completion may have been extended, shall in no way operate as a waiver on the part of the Owner of any of his rights under the Contract.

## ARTICLE 9 PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Owner and Owner's Lender, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
**§ 9.3.1** On the 25th day of each month, the Contractor shall submit to the Owner and Owner's lender an itemized Application for Payment prepared in accordance with the schedule of values for completed portions of the Work. Such application shall be notarized, and supported by such data substantiating the Contractor's right to payment as the Owner, Architect or Owner's Lender may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents. The Application for Payment shall be accompanied by a waiver of liens and all claims in the form set forth at Exhibit "L" (except those reserved) to the extent of payment received by the Contractor through the date of the application for payment. Such waiver shall indemnify the Owner against any claims for unpaid amounts due or claimed to be due by Subcontractors, Suppliers, or Vendors.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Orders or Directives.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                     (2054177607)

which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

**§ 9.3.4** In the event a lien is filed or claimed against the Work by any Subcontractor, sub subcontractor, laborer or supplier of materials, the Contractor agrees, or upon the direction of the Owner, at its sole cost and expense, and irrespective of the basis for such lien, immediately to bond such lien in accordance with the provisions of the state in which the Work is located and to record such bond within three (3) business days with the municipality in which the Project is located or to cause such lien to be discharged. If the Contractor shall fail to do so, the Owner may, at its option and at the expense of the Contractor, bond such lien or cause it to be discharged and charge all costs and expenses of doing so to Contractor, including all reasonable attorney's fees, and deduct such costs from subsequent payments due Contractor.

## § 9.4 CERTIFICATES FOR PAYMENT
**§ 9.4.1** The Architect will, within seven (7) days after receipt of the Contractor's Application for Payment, review the Application, certify the amount the Owner's representative determines is due the Contractor, and forward the Contractor's Application and Certificate for Payment to the Owner for payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on- site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum. Notwithstanding anything contained herein to the contrary, the Owner reserves the right to revise the certificate of payment to reflect the actual progress of the work.

## § 9.5 DECISIONS TO WITHHOLD CERTIFICATION
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, and in addition, the Owner may independently withhold payment from the Contractor because of
.1 defective or nonconforming Work not remedied;
.2 liens or third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
.3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
.5 damage to the Owner or a separate contractor;
.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
.7 failure to carry out the Work in accordance with the Contract Documents.
.8 accrued liquidated damages (provided not more than limit of total fee) owed pursuant to this agreement or;
.9 any material breach of this Agreement.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                    (2054177607)

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts  previously withheld.

**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven calendar days after receipt of payment from the Owner the amount to    which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the    Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted   Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact   Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an   obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided   in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the  Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum,  payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by   the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under   contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require   money to be placed in a separate account and not commingled with money of the Contractor, shall create any   fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity   to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## § 9.7 FAILURE OF PAYMENT

If the Owner does not pay the Contractor within seven (7) days   after the date established in the Contract Documents the amount certified by the Architect or awarded by binding   dispute resolution, then the Contractor may, upon fourteen (14) additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended   appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-   down, delay and start-up, plus interest as provided for in the Contract Documents. Contractor shall have no right to stop the Work if amounts are withheld pursuant to the terms of this Agreement, and in such case Contractor shall proceed with the performance of its obligations hereunder with reservations of rights and remedies it may have with respect to the disputed work.

## § 9.8 SUBSTANTIAL COMPLETION

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof   is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the  Work for its intended use.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                (2054177607)

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Owner and Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Owner, Architect and possibly the lender will conduct an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Owner or Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Owner or Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted to deduct 150 percent of the estimated cost of Work that is incomplete or not in accordance with the requirements of the Contract Documents.

### § 9.9 PARTIAL OCCUPANCY OR USE

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Owner and Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

### § 9.10 FINAL COMPLETION AND FINAL PAYMENT

**§ 9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Owner and Architect will promptly make such inspection and, when the Owner and Architect find the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                                (2054177607)

been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), other data establishing payment or satisfaction of obligations, such as receipts, releases, waivers of liens in the form attached as Exhibit "L", claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner, and (6) all as-built documentation and certification required by Section 9.10.3, including Close Out Documents, operations and maintenance manuals and warranties. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ 9.10.3 Owner, in its sole discretion, may choose to conduct an audit of the Final Payment Application and total project cost, and will be accorded access to all accounting records as set forth in Article 11, A102. In the event that Owner has been overbilled, i.e., the Cost of the Work is exceeded by the Contractor's billings, such overpayment shall be deducted from the final payment, or such monies shall be reimbursed thereafter, including Owner's reasonable audit costs in an amount not to exceed $10,000.00.

§ 9.10.4 Contractor shall transfer to Owner one copy of the last set of drawing transparencies or electronic files issued by the Architect with all additions, deletions, corrections, revisions and all other changes made in the course of construction and shall sign such and deliver such to Owner in connection with the final application for payment. Contractor shall have each subcontractor, as specifically defined in the Project Specifications, prepare as built drawings of their work, which will be incorporated into the final as built plans and specifications delivered to Owner. Each subcontractor shall certify to the accuracy and completeness of the Work depicted on said Subcontractor prepared as-built drawings. Upon completion of the Work, Contractor shall deliver all such records to Owner. Contractor shall also assemble for Owner's approval and transmit to Owner a complete copy in pdf format and in loose leaf binders of all operating and maintenance data for all manufacturers whose equipment is installed in the Work and "as-built" drawings for the Work as specifically defined in the Project Specifications.

§ 9.10.5 If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ 9.10.6 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY
### § 10.1 SAFETY PRECAUTIONS AND PROGRAMS
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 SAFETY OF PERSONS AND PROPERTY
§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

    **.1**    employees on the Work and other persons who may be affected thereby;

    **.2**    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub- subcontractors; and

    **.3**    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                 (2054177607)

§ **10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ **10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ **10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ **10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ **10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ **10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ **10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY**
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding ten (10) days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ **10.3 HAZARDOUS MATERIALS**
§ **10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing. Notwithstanding anything to the contrary in this section or in the Contract Documents, in all cases the Contractor will have a duty to store, handle, transport and remove all hazardous materials in accordance with applicable law.

§ **10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be remediated. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been appropriately remediated, Work in the affected area shall resume upon written agreement of the Owner and Contractor. In accordance with Section 8.3, if the critical path of the schedule has been impacted, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by Change Order in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

§ **10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors,

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                               (2054177607)

Architect, Architect's consultants and agents and employees of any of them from and against   claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from   performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or   death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or  expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property   (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence   of the party seeking indemnity.

§ **10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings   to the site unless such materials or substances are required by the Contract Documents. The Owner shall be  responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's   fault or negligence in the use and handling of such materials or substances.

 § **10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a   material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

 § **10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of   remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**§ 10.4 EMERGENCIES**
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to   prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

**ARTICLE 11 INSURANCE AND BONDS**
**§ 11.1 CONTRACTOR'S LIABILITY INSURANCE** Refer to Exhibit K for Contractor insurance requirements.


 **§ 11.2 OWNER'S LIABILITY INSURANCE**
The Owner shall purchase and maintain general liability insurance as described in the General Liability  Wrap-up Manual attached hereto as Exhibit J (the "Insurance Manual). The Owner shall be liable to pay all deductibles or Self Insured Retentions unless Claims are due to the negligent acts or omissions or nonconformance with the Contract Documents by Contractor, or those for whom the Contractor is responsible.

**§ 11.3 PROPERTY INSURANCE**

**§ 11.3.1** The Owner shall purchase and maintain, in a company or companies lawfully   authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's  risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract   Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the   site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who  are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person   or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered,  whichever is later.

**§ 11.3.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without   duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework,  testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any   applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services   and expenses required as a result of such insured loss. Property insurance carried by the Owner shall not cover any tools,   apparatus, machinery, equipment, staging, and shoring, owned or rented by the Contractor that are utilized in the   performance of the Work but not incorporated into the permanent improvements. The Contractor shall, at the
Contractor's own expense, provide insurance coverage for all such items, which shall not be subject to the provisions   of Section 11.3.7.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by the American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                    (2054177607)

**§ 11.3.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of   the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to  commencement of the Work. The Contractor may then effect insurance that will protect the interests of the   Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof  shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or  maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all  reasonable costs properly attributable thereto.

**§ 11.3.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such  deductibles.

**§ 11.3.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work  in transit.

**§ 11.3.1.5** Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company   or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or  companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that  would cause cancellation, lapse or reduction of insurance.

**§ 11.3.2 BOILER AND MACHINERY INSURANCE**
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by  law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner;  this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work,   and the Owner and Contractor shall be named insureds.

**§ 11.3.3 LOSS OF USE INSURANCE**
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss  of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action    against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other  hazards however caused.

 **§ 11.3.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of  loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be  charged to the Contractor by appropriate Change Order.

**§ 11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise


**§ 11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that  includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable  conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days'  prior written notice has been given to the Contractor.

**§ 11.3.7 WAIVERS OF SUBROGATION**
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-  subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate   contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees,   for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to   this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of   such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the   Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-   subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for   validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of   subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even   though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay   the insurance premium directly or indirectly, and whether or not the person or entity had an insurable

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                          (2054177607)

interest in the  property damaged.

**§ 11.3.8** A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made  payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any  applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of   insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for    validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**§ 11.3.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss,  give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against   proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in  accordance with the method of binding dispute resolution selected in the  Agreement between the Owner and  Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for  convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change  in the Work in accordance with Article 7.

**§ 11.3.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in  interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such  objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method   of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method    of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute  over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

**§ 11.4 PERFORMANCE BOND AND PAYMENT BOND**
**This section intentionally deleted**
ARTICLE 12 UNCOVERING AND CORRECTION OF WORK
**§ 12.1 UNCOVERING OF WORK**
**§ 12.1.1** If a portion of the Work is covered contrary to the Owner or Architect's request or to requirements  specifically expressed in the Contract Documents, it must, if requested in writing by the Owner or Architect, be uncovered for the Owner or  Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Owner or Architect has not specifically requested to examine prior to  its being covered, the Owner or Architect may request to see such Work and it shall be uncovered by the Contractor. If such  Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such  costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or  a separate contractor in which event the Owner shall be responsible for payment of such costs.

**§ 12.2 CORRECTION OF WORK**
**§ 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION**
The Contractor shall promptly correct Work rejected by the Owner or Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated,  installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost  of uncovering and replacement, and compensation for the Architect's services and expenses made necessary  thereby, shall be at the Contractor's expense.

**§ 12.2.2 AFTER SUBSTANTIAL COMPLETION**
**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of  Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties  established under Section 9.9.1, or after any one year follow up inspections performed by any Authority Having Jurisdiction by terms of an applicable special warranty required by the Contract Documents,  any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor  shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously  given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after  discovery of the condition. If the Contractor fails to correct  nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or  Architect, the Owner may correct it in accordance with Section 2.4 and charge all costs incurred against Contractor.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                           (2054177607)

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** Intentionally deleted.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

**§ 12.3 ACCEPTANCE OF NONCONFORMING WORK**
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

**ARTICLE 13 MISCELLANEOUS PROVISIONS**
**§ 13.1 GOVERNING LAW**
The Contract shall be governed by the law of the place where the Project is.

**§ 13.2 SUCCESSORS AND ASSIGNS**
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, or an affiliated entity, successor owner entity or transferee. In such event such assignee shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

**§ 13.3 WRITTEN NOTICE**
All written communications from Contractor to Owner shall be sent promptly to Owner, attention to the parties identified in Paragraph 15.3 of A102 of the Agreement and/or other individuals designated by Owner, to avoid delays in the progress of the Work. All written communications from Owner to Contractor shall be sent promptly to Contractor, attention the parties identified in Paragraph 15.4 of A102 of the Agreement or other individual designated by Contractor. Except as otherwise set forth herein, all of Contractor's communications regarding a material element of the Work shall be provided to Owner within fourteen (14) calendar days of the discovery of such material element. Such reports shall also be sent to the other individual(s) involved in the communication. Any notice or demand hereunder shall be in writing and shall be delivered personally or sent by United States certified or registered mail, return receipt requested, postage prepaid, via facsimile (with telephone confirmation and a copy via first class mail), telecopied, electronic mail or sent by public or private overnight courier service (such as Federal Express), addressed to the recipient at the address set forth on the face page of the Agreement or to such other single address as Owner or Contractor may from time to time designate in writing to the other. Any notice or demand that is mailed shall be sent by registered or certified mail and shall be deemed sufficiently given for all purposes hereunder upon the earlier of receipt or three (3) calendar days after mailing. In all instances where consent or approval is required in the Contract Documents, said consent or approval shall be required to be in writing. Emails shall be deemed to satisfy any requirement of writing and scanned or faxed signatures shall be deemed originals for all purposes.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:** (2054177607)

## § 13.4 RIGHTS AND REMEDIES

**§ 13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

**§ 13.4.3** Notwithstanding any provision in this Contract to the contrary, in the event requirements of Owner's lender, if any, regarding the conditions, calculation or timing of payments, content or timing of draw packages or requirements relating to project closeout differ from those set forth in this Contract, Contractor shall comply and assist Owner in complying with such requirements.

## § 13.5 TESTS AND INSPECTIONS

**§ 13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Owner and Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections and geotechnical services

**§ 13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

**§ 13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**§ 13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**§ 13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**§ 13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

## § 13.6 INTEREST

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

## § 13.7 TIME LIMITS ON CLAIMS

The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law

## ARTICLE 14 TERMINATION OR SUSPENSION OF THE CONTRACT
## § 14.1 TERMINATION BY THE CONTRACTOR

**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 60 consecutive days through no act

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                    (2054177607)

or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any  other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for  any of the following reasons:

.1    Issuance of an order of a court or other public authority having jurisdiction that requires all Work to  be stopped;

.2    An act of government, such as a declaration of national emergency that requires all Work to be  stopped;

.3    Because the Owner has not  made payment on for Work properly performed in accordance with the terms of the Contract Documents following issuance of a Certificate for Payment within the time stated in the Contract Documents; or

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor,  Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work  under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work    by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of  days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon ten (10) days' additional written notice to the Owner and Architect, provided Owner or Architect does not cure the alleged basis for termination during that 10-day period, terminate the Contract and recover from the Owner payment for Work properly performed prior to termination and accepted by Owner in accordance with the terms of the Contract Documents, , including reasonable overhead and profit, on such Work, a Contractor's sole remedy.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or  their agents or employees or any other persons performing portions of the Work under contract with the Contractor or subcontractor because the  Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to  the progress of the Work, the Contractor may, upon seventeen (10) days additional  written notice to the Owner and the Architect, provided Owner or Architect does not cure the alleged basis for termination during that 10-day period, terminate  the Contract and recover from the Owner as provided in Section 14.1.3.

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE

**§ 14.2.1** The Owner may terminate the Contract if the Contractor

.1     refuses or fails to supply enough properly skilled workers or proper materials;

.2    fails to make payment to Subcontractors for materials or labor in accordance with the respective  agreements between the Contractor and the Subcontractors;

.3     disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful  orders of a public authority; or

.4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

.5    a petition is filed by the Contractor, or against the Contractor with his consent, under any federal or state law concerning bankruptcy, reorganization, insolvency or relief from creditors, or if such petition is filed against the Contractor without his consent and is not dismissed within thirty (30) days, or if the Contractor is generally not paying his debts as they become due, or if the Contractor becomes insolvent, or if the Contractor consents to the appointment of a receiver, trustee, liquidator, custodian or the like of the Contractor or of all or any substantial portion of its assets, or if a receiver, trustee, liquidator, custodian or the like is appointed with respect to the Contractor or takes possession of all or any substantial portion of its assets or if the Contractor makes an assignment for the benefit of creditors.

.6

**§ 14.2.2** When any of the above reasons exist, the Owner,  may without prejudice to any other rights or remedies of the Owner and  after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of  the Contractor and may, subject to any prior rights of the surety:

.1    Exclude the Contractor from the site and take possession of all materials, equipment, tools, and  construction equipment and machinery thereon owned by the Contractor;

.2    Accept assignment of subcontracts pursuant to Section 5.4; and

.3    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written  request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs  incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall  not be entitled to receive further payment until the Work is finished.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                         (2054177607)

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid by the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

### § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for reasonable increases in the cost and time for demobilization and remobilization caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent
  .1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
  .2   that an equitable adjustment is made or denied under another provision of the Contract.

### § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall
  .1   cease operations as directed by the Owner in the notice;
  .2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and
  .3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing *subcontracts and purchase orders and enter into no further subcontracts and purchase orders.*

**§ 14.4.3** In case of such termination for the Owner's convenience, Owner shall pay to Contractor for Work performed prior to the effective date of such termination an amount equal to that percentage of the Contract Sum that the Work completed prior to the effective date of termination bears to the total Work, plus reasonable costs incurred for demobilization; plus costs of contracted materials and equipment ordered or purchased by contractor and subcontractors to the extent such costs are not reimbursable and Contractor exercises reasonable efforts to obtain reimbursement, provided, that the performance for which payment is to be made is strictly in accordance with the Contract Documents and to Owner's satisfaction. There shall be deducted from the amount determined above, all payments previously made by Owner and all amounts which Owner is entitled to charge Contractor under the Contract Documents. In no event shall the amount to be paid plus all amounts previously paid, plus all amounts which Owner is entitled to charge Contractor, exceed the Contract Sum, as adjusted. The payments set forth herein shall be Contractor's sole remedy upon termination for convenience. All requests for compensation under this Article shall be submitted to Owner in accordance with the provisions of this Agreement. In no event shall Contractor be entitled to any prospective profits or any damages of any type. The provisions of this Article 14.3 shall survive termination of the Agreement and shall remain in full force and effect after such termination.

### ARTICLE 15 CLAIMS AND DISPUTES
### § 15.1 CLAIMS
### § 15.1.1 DEFINITION
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 15.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 calendar days after occurrence of the event giving rise to such Claim or within ten (10) calendar days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Contractor waives any claims not made in accordance with the requirements of Article 15. The notice requirements of this Section 15.1.2 shall not apply to Claims arising out of construction defects discovered after Substantial Completion.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                            (2054177607)

### § 15.1.3 CONTINUING CONTRACT PERFORMANCE

Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article  14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make   payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue  Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 15.1.4 CLAIMS FOR ADDITIONAL COST

If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall  be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency  endangering life or property arising under Section 10.4. The Contractor's Claim and written notice shall provide: a) the cause of and basis for the increase in the Contract Sum; b) a description of the portions of the affected Work and any additional Work; c) documentations evidencing all additional costs incurred, for which reimbursement is requested, including any additional subcontracts, purchase orders, receipts and evidence of payment such as cancelled checks.  Contractor shall have no right, claim or entitlement to any increase in the Contract Sum if Contractor fails to provide the  written notice required by this Section.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME

§ **15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim and written notice shall provide: a) the cause for and estimated duration of the delay, (b) a description of the portions of the Work affected thereby, as reasonably determinable at the time, (c) a schedule identifying exactly how the Critical Path or milestone was affected, and (d) all other pertinent details. Contractor shall have no right, claim or entitlement to any extension of Contract Time if Contractor fails to provide the written notice required by this Section.

§ **15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be  documented by data substantiating that weather conditions were abnormal for the period of time, could not have  been reasonably anticipated and had an adverse effect on the scheduled construction.

### § 15.2 INITIAL DECISION

§ **15.2.1** Claims, excluding those arising under Sections 10.3, 10.4, shall be referred to the Initial  Decision Maker for initial decision. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be  required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30  days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been  rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide   disputes between the Contractor and persons or entities other than the Owner.

§ **15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or   more of the following actions: (1) request additional supporting data from the claimant or a response with supporting  data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise,   or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker  lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the   Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the  Claim.

§ **15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek   information from either party or from persons with special knowledge or expertise who may assist the Initial  Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of  such persons at the Owner's expense.

§ **15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional   supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a  response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting  data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon  receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim  in whole or in part.

§ **15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that  the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the  reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision  Maker, of any change in the

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
User Notes:                                                                                         (2054177607)

Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

§ 15.2.9 Owner shall not be under any obligation to submit any Claim to the Initial Decision Maker that arises out of construction defects discovered after Substantial Completion.

## § 15.3 MEDIATION
**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those previously waived as provided for in the Contract shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## § 15.4 ARBITRATION
**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**§ 15.4.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**§ 15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                                    (2054177607)

jurisdiction thereof.

### § 15.4.4 CONSOLIDATION OR JOINDER

**§ 15.4.4.1** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any   other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration   permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact,    and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 15.4.4.2** Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a   common question of law or fact whose presence is required if complete relief is to be accorded in arbitration,  provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question  not described in the written consent.

**§ 15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this  Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and   Contractor under this Agreement.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:07:10 on 07/05/2012 under Order No.3789606197_1 which expires on 07/18/2013, and is not for resale.
**User Notes:**                                                                                                                     (2054177607)

# EXHIBIT B

# NA

# EXHIBIT C
# Specifications

# 1301 16th Street (Potrero)
# Exhibit C
# Contract Specifications

## A.  SPECIFICATIONS
- **DIVISION 1 – General Requirements**

| | | | | |
|---|---|---|---|---|
| o | 01 11 00 | Summary of Work | BDE | 08/04/17 |
| o | 01 23 00 | Alternates | BDE | 08/04/17 |
| o | 01 25 00 | Substitution Procedures | BDE | 08/04/17 |
| o | 01 26 00 | Contract Modification Procedures | BDE | 08/04/17 |
| o | 01 26 15 | Requests for Interpretation (RFI) | BDE | 08/04/17 |
| o | 01 29 00 | Payment Procedures | BDE | 08/04/17 |
| o | 01 29 73 | Schedule of Values | BDE | 08/04/17 |
| o | 01 31 13 | Project Coordination | BDE | 08/04/17 |
| o | 01 31 19 | Project Meetings | BDE | 08/04/17 |
| o | 01 33 00 | Submittal Procedures | BDE | 08/04/17 |
| o | 01 35 15 | CAL Green Requirements | BDE | 08/04/17 |
| o | 01 35 17 | Greenpoint Requirements | BDE | 08/04/17 |
| o | 01 43 39 | Mock-Ups | BDE | 08/04/17 |
| o | 01 45 00 | Quality Control | BDE | 08/04/17 |
| o | 01 50 00 | Temporary Facilities and Controls | BDE | 08/04/17 |
| o | 01 61 00 | Common Product Requirements | BDE | 08/04/17 |
| ~~o~~ | ~~01 64 00~~ | ~~Owner-Furnished Products~~ | ~~BDE~~ | ~~08/04/17~~ |
| o | 01 71 23 | Field Engineering | BDE | 08/04/17 |
| o | 01 74 00 | Cleaning | BDE | 08/04/17 |
| o | 01 74 19 | Construction Waste Management | BDE | 08/04/17 |
| o | 01 77 00 | Closeout Procedures | BDE | 08/04/17 |
| o | 01 78 36 | Warranties | BDE | 08/04/17 |
| o | 01 78 37 | Form of Warranty | BDE | 08/04/17 |
| o | 01 78 46 | Extra Attic Stock Materials | BDE | 08/04/17 |

- **DIVISION 02 – EXISTING CONDITION – NOT USED**

- **DIVISION 03 – Concrete**

| | | | | |
|---|---|---|---|---|
| o | 03 05 00 | Concrete Floor Sealer | BDE | 08/04/14 |
| ~~o~~ | ~~03 05 11~~ | ~~Hydrophobic Concrete~~ | ~~BDE~~ | ~~08/04/17~~ |
| o | 03 15 13 | Water stops | BDE | 08/04/17 |
| o | 03 30 00 | Cast-In-Place Concrete | DCI | 08/04/17 |
| o | 03 33 00 | Architectural Concrete | BDE | 08/04/17 |

| | | | |
|---|---|---|---|
| o | 03 35 43 | Diamond Polishing Concrete Floors | BDE | 08/04/17 |
| o | 03 37 13 | Shotcrete | DCI | 08/04/17 |
| o | 03 38 16 | Unbonded Post-Tensioned Concrete | DCI | 08/04/17 |
| o | 03 48 00 | Precast Concrete Specialties | MSLA | 08/04/17 |
| o | 03 54 13 | Gypsum Cement Underlayment | BDE | 08/04/17 |

- **DIVISION 04 -MASONRY**

| | | | |
|---|---|---|---|
| o | ~~04 22 00~~ | ~~Concrete Unit Masonry~~ | ~~BDE~~ | ~~08/04/17~~ |

- **DIVISION 05 – METALS**

| | | | |
|---|---|---|---|
| o | 05 12 00 | Structural Steel Framing | DCI | 08/04/17 |
| o | 05 50 00 | Metal Fabrications | BDE | 09/26/17 |
| o | 05 51 13 | Design/Build Prefabricated Steel Stair | BDE | 08/04/17 |
| o | 05 51 33 | Metal Ladders | BDE | 08/04/17 |
| o | 05 58 00 | Formed Metal Fabrication | BDE | 08/04/17 |

- **DIVISION 06 – WOOD, PLASTICS, AND COMPOSITES**

| | | | |
|---|---|---|---|
| o | 06 10 00 | Rough Carpentry | DCI | 08/04/17 |
| o | 06 16 43 | Gypsum Sheathing | BDE | 08/04/17 |
| o | 06 20 13 | Site Carpentry | MSLA | 08/04/17 |
| o | 06 40 23 | Interior Architectural Woodwork | BDE | 08/04/17 |
| o | 06 41 00 | Architectural Wood Casework | BDE | 08/04/17 |
| o | 06 64 00 | Plastic Paneling (FRP) | BDE | 08/04/17 |

- **DIVISION 07 – THERMAL AND MOISTURE PROTECTION**

| | | | |
|---|---|---|---|
| o | 07 14 00 | Fluid-Applied Waterproofing | BDE | 08/04/17 |
| o | 07 14 13 | Hot Fluid-Applied Rubberized Asphalt Waterproofing | BDE | 08/04/17 |
| o | 07 14 16 | Elastomeric Liquid Waterproofing | BDE | 08/04/17 |
| o | 07 17 00 | Bentonite Waterproofing | BDE | 08/04/17 |
| o | 07 18 13 | Pedestrian Traffic Coatings | BDE | 08/04/17 |
| o | 07 18 15 | PMMA Pedestrian Traffic Coatings | BDE | 08/04/17 |
| o | 07 19 00 | Water Repellents | BDE | 08/04/17 |
| o | 07 21 00 | Thermal Insulation | BDE | 08/04/17 |
| o | 07 21 19 | Sprayed Insulation | BDE | 08/04/17 |
| o | 07 22 16 | Roof Board Insulation | BDE | 08/04/17 |
| o | 07 26 19 | Below-Grade-Under-Slab Vapor Retarders | BDE | 08/04/17 |
| o | 07 27 00 | Weather Resistive Air and Moisture Barrier Membrane | BDE | 08/04/17 |
| o | ~~07 46 46~~ | ~~Fiber Cement Lap Siding~~ | ~~BDE~~ | ~~07/07/17~~ |
| o | 07 46 47 | Fiber Cement Panel Siding | BDE | 08/04/17 |
| o | ~~07 54 19~~ | ~~Thermoplastic-Polyolefin Roofing~~ | ~~BDE~~ | ~~06/09/17~~ |
| o | 07 54 19 | Poly-Vinyl Chloride Roofing | BDE | 08/04/17 |

| | | | | |
|---|---|---|---|---|
| o | 07 62 00 | Sheet Metal Flashing and Trim | BDE | 08/04/17 |
| o | 07 65 26 | Self-Adhering Sheet Flashing (SAF) | BDE | 08/04/17 |
| o | 07 76 16 | Roof Decking Pavers | BDE | 08/04/17 |
| o | 07 81 23 | Intumescent Mastic Fireproofing | BDE | 08/04/17 |
| o | 07 84 00 | Firestopping | BDE | 08/04/17 |
| o | 07 92 00 | Joint Sealants | BDE | 08/04/17 |
| o | 07 92 19 | Acoustical Joint Sealants | BDE | 08/04/17 |
| o | 07 95 00 | Expansion Control | BDE | 08/04/17 |

- **DIVISION 08 – OPENINGS**

| | | | | |
|---|---|---|---|---|
| o | 08 11 13 | Hollow Metal Doors and Frames | BDE | 08/04/17 |
| o | 08 11 16.69 | Aluminum Terrace Doors and Frames | BDE | 08/04/17 |
| o | 08 12 13.63 | Prefinished Hollow Metal Frames | BDE | 08/04/17 |
| o | 08 14 16 | Flush Wood Doors | BDE | 08/04/17 |
| o | 08 14 33 | Stile and Rail Wood Doors | BDE | 08/04/17 |
| o | 08 16 13 | Fiberglass Framed Glass Doors | BDE | 08/04/17 |
| o | 08 17 00 | Integrated Door Opening Assemblies | BDE | 08/04/17 |
| o | 08 31 13 | Access Doors and Frames | BDE | 08/04/17 |
| o | 08 33 23 | Overhead Coiling Doors | BDE | 08/04/17 |
| o | 08 33 26 | Overhead Coiling Grilles | BDE | 08/04/17 |
| o | 08 34 83 | Elevator Door Smoke Containment Barriers | BDE | 08/04/17 |
| o | 08 41 13 | Aluminum-Framed Entrances and Storefronts | BDE | 08/04/17 |
| o | 08 43 29 | Exterior Multi-Panel Sliding Glass Doors | BDE | 08/04/17 |
| o | 08 51 13 | Aluminum Windows | BDE | 08/04/17 |
| o | 08 53 13 | Vinyl Windows | BDE | 08/04/17 |
| o | 08 71 00 | Door Hardware | Allegion | 08/04/17 |
| o | 08 80 00 | Glazing | BDE | 08/04/17 |
| o | 08 91 00 | Louvers | BDE | 08/04/17 |

- **DIVISION 09 – FINISHES**

| | | | | |
|---|---|---|---|---|
| o | 09 21 16.23 | Gypsum Board Shaft Wall Assemblies | BDE | 08/04/17 |
| o | 09 22 16 | Non-Structural Metal Framing | BDE | 08/04/17 |
| o | 09 22 26.23 | Metal Suspension Systems | BDE | 08/04/17 |
| o | 09 22 36.23 | Metal Lath and Accessories | BDE | 08/04/17 |
| o | 09 24 00 | Portland Cement Plaster | BDE | 08/04/17 |
| o | 09 28 16 | Glass-Mat Faced Gypsum Backing Boards | BDE | 08/04/17 |
| o | 09 29 00 | Gypsum Board | BDE | 08/04/17 |
| o | 09 30 00 | Tile | BDE | 08/04/17 |
| o | 09 61 43 | Water Vapor Emission and Humidity Testing and Control Systems | BDE | 08/04/17 |
| o | 09 62 19.13 | Engineered Wood Flooring | BDE | 08/04/17 |
| o | 09 65 13 | Resilient Base and Accessories | BDE | 08/04/17 |
| o | 09 65 16 | Resilient Sheet Flooring | BDE | 08/04/17 |
| o | 09 65 19 | Resilient Tile Flooring | BDE | 08/04/17 |
| o | 09 67 13 | Elastomeric Liquid Flooring | BDE | 08/04/17 |
| o | 09 68 13 | Tile Carpeting | BDE | 08/04/17 |
| o | 09 68 16 | Sheet Carpeting | BDE | 08/04/17 |
| o | 09 81 00 | Acoustic Insulation | BDE | 08/04/17 |
| o | 09 91 00 | Interior Painting | BDE | 08/04/17 |
| o | 09 91 13 | Exterior Painting | BDE | 08/04/17 |
| o | 09 92 23 | Graffiti-Resistant Coatings | BDE | 08/04/17 |
| o | 09 96 53 | Elastomeric Coatings | BDE | 08/04/17 |

|  | 09 97 13 | Steel Coatings | BDE | 08/04/17 |
|---|---|---|---|---|

**• DIVISION 10 – SPECIALTIES**

|  | 10 14 00 | Signage | BDE | 08/04/17 |
|---|---|---|---|---|
|  | 10 26 00 | Wall Protection | BDE | 08/04/17 |
|  | 10 28 13 | Toilet Accessories | BDE | 08/04/17 |
|  | 10 28 16 | Bath Accessories | BDE | 08/04/17 |
|  | 10 28 19 | Shower Doors and Enclosures | BDE | 08/04/17 |
|  | 10 41 16 | Emergency Key Cabinets | BDE | 08/04/17 |
|  | 10 44 13 | Fire Extinguishers and Cabinets | BDE | 08/04/17 |
|  | 10 55 00 | Postal Specialties | BDE | 08/04/17 |
|  | 10 57 00 | Wardrobe and Closet Specialties | BDE | 08/04/17 |
|  | 10 99 99 | Miscellaneous Specialties | BDE | 08/04/17 |

**• DIVISION 11 - EQUIPMENT**

|  | 11 12 00 | Parking Control Equipment | BDE | 08/04/17 |
|---|---|---|---|---|
|  | 11 31 00 | Residential Appliances | BDE | 08/04/17 |
|  | 11 82 26 | Waste and Recycling Compactors | ATM | 08/04/17 |

**• DIVISION 12 – FURNISHING**

|  | 12 21 13 | Horizontal Louver Blinds | BDE | 08/04/17 |
|---|---|---|---|---|
|  | 12 21 16 | Vertical Louver Blinds | BDE | 08/04/17 |
|  | 12 35 30 | Residential C a s e w o r k | BDE | 08/04/17 |
|  | 12 36 61.19 | Quartz Surfacing Countertops | BDE | 08/04/17 |
|  | ~~12 48 13~~ | ~~Entrance Floor Mats and Frames~~ | ~~BDE~~ | ~~08/04/17~~ |

**• DIVISION 13 – SPECIAL CONSTRUCTION – NOT USED**

**• DIVISION 14 – CONVEYING EQUIPMENT**

|  | 14 21 00 | Electric Traction Elevators | BDE | 08/04/17 |
|---|---|---|---|---|
|  | 14 45 00 | Vehicle Storage Lifts | BDE | 08/04/17 |
|  | 14 93 00 | Waste/Recycling/Compost Tri-Sort Chute System | ATM | 08/04/17 |

**• DIVISION 21 – FIRE SUPRESSION SYSTEMS**

|  | 21 05 00 | Common Work Results for Fire Suppression | ECE | 08/04/17 |
|---|---|---|---|---|
|  | 21 10 00 | Fires Suppression Systems | ECE | 08/04/17 |

**• DIVISION 22 –PLUMBING**

|  | 22 05 00 | Common Work Results for Plumbing | ECE | 08/04/17 |
|---|---|---|---|---|
|  | 22 05 13 | Common Motor Requirements for Plumbing Equipment | ECE | 08/04/17 |
|  | 22 05 19 | Meters and Gauges for Plumbing Piping | ECE | 08/04/17 |

| | | | | |
|---|---|---|---|---|
| o | 22 05 23 | General Duty Valves for Plumbing Piping | ECE | 08/04/17 |
| o | 22 05 29 | Hangers and Supports for Plumbing Piping and Equipment | ECE | 08/04/17 |
| o | 22 05 48 | Vibration and Seismic Control for Plumbing Piping and Equipment | ECE | 08/04/17 |
| o | 22 05 53 | Identification for Plumbing Piping and Equipment | ECE | 08/04/17 |
| o | 22 07 00 | Plumbing Insulation | ECE | 08/04/17 |
| o | 22 11 16 | Domestic Water Piping | ECE | 08/04/17 |
| o | 22 11 17 | PEX Piping | ECE | 08/04/17 |
| o | 22 11 24 | Domestic Water Pumps | ECE | 08/04/17 |
| o | 22 13 16 | Sanitary Waste and Vent Piping | ECE | 08/04/17 |
| o | 22 30 00 | Plumbing Equipment | ECE | 08/04/17 |
| o | 22 34 00 | Fuel-Fired Domestic Water Heaters | ECE | 08/04/17 |
| o | 22 40 00 | Plumbing Fixtures | ECE | 08/04/17 |

- **DIVISION 23 – HEATING, VENTILATING AND AIR CONDITIONING**

| | | | | |
|---|---|---|---|---|
| o | 23 05 00 | Common Work Results for HVAC | ECE | 08/04/17 |
| o | 23 05 13 | Common Motor Requirements for HVAC Equipment | ECE | 08/04/17 |
| o | 23 05 29 | Hangers and Supports for HVAC Piping and Equipment | ECE | 08/04/17 |
| o | 23 05 48 | Vibration and Seismic Control for HVAC Piping and | ECE | 08/04/17 |
| o | 23 05 53 | Identification for HVAC Ducts and Equipment | ECE | 08/04/17 |
| o | 23 05 93 | Testing Adjusting and Balancing for HVAC | ECE | 08/04/17 |
| o | 23 07 00 | HVAC Insulation | ECE | 08/04/17 |
| o | 23 09 93 | Sequence of Operations for HVAC Controls | ECE | 08/04/17 |
| o | 23 11 23 | Facility Natural Gas Piping | ECE | 08/04/17 |
| o | 23 23 00 | Refrigerant Piping | ECE | 08/04/17 |
| o | 23 31 13 | Metal Ducts | ECE | 08/04/17 |
| o | 23 33 00 | Air Duct Accessories | ECE | 08/04/17 |
| o | 23 34 23 | HVAC Power Ventilators | ECE | 08/04/17 |
| o | 23 37 00 | Air Outlets and Inlets | ECE | 08/04/17 |
| o | 23 41 00 | Particulate Air Filtration | ECE | 08/04/17 |
| o | 23 63 13 | Air-Cooled Condensers | ECE | 08/04/17 |
| o | 23 81 19 | Fan Coil Units | ECE | 08/04/17 |

- **DIVISION 26 – ELECTRICAL**

| | | | | |
|---|---|---|---|---|
| o | 26 05 00 | Common Work Results for Electrical | ECE | 08/04/17 |
| o | 26 05 19 | Low-Voltage Electrical Power Conductors and Cables | ECE | 08/04/17 |
| o | 26 05 26 | Grounding and Bonding for Electrical Systems | ECE | 08/04/17 |
| o | 26 05 33 | Raceways and Boxes for Electrical Systems | ECE | 08/04/17 |
| o | 26 05 48 | Vibration and Seismic Controls for Electrical Systems | ECE | 08/04/17 |
| o | 26 05 53 | Identification for Electrical Systems | ECE | 08/04/17 |
| o | 26 24 00 | Switchboards and Panelboards | ECE | 08/04/17 |
| o | 26 27 26 | Wiring Devices | ECE | 08/04/17 |
| o | 26 28 16 | Enclosed Switches and Circuit Breakers | ECE | 08/04/17 |
| o | 26 29 13 | Enclosed Controllers | ECE | 08/04/17 |
| o | 26 51 00 | Interior Lighting | ECE | 08/04/17 |
| o | 26 56 00 | Exterior Lighting | ECE | 08/04/17 |
| o | 26 60 00 | Lighting Accessories | ECE | 08/04/17 |

- **DIVISION 27 – COMMUNICATIONS & DATA**

| | | | | |
|---|---|---|---|---|
| o | 27 05 00 | Common Work Results for Communications | ECE | 08/04/17 |
| o | 27 10 00 | Structured Cabling | ECE | 08/04/17 |

| | | | | |
|---|---|---|---|---|
| o | 27 20 00 | Communication and Data-Processing Equipment | ECE | 08/04/17 |
| o | 27 41 16 | New Building Television Equipment | ECE | 08/04/17 |

- **DIVISION 28 – ELECTRONIC SAFETY AND SECURITY**

| | | | | |
|---|---|---|---|---|
| o | 28 13 00 | Access Control Equipment | ECE | 08/04/17 |
| o | 28 23 00 | Electronic Surveillance | ECE | 08/04/17 |
| o | 28 31 00 | Fire Alarm and Detection System | ECE | 08/04/17 |

- **DIVISION 31 – EARTHWORK**

| | | | | |
|---|---|---|---|---|
| o | 31 11 00 | Clearing and Grubbing | BKF | 08/04/17 |
| o | 31 23 00 | Excavation and Fill | BKF | 08/04/17 |
| o | 31 23 33 | Trenching and Backfilling | BKF | 08/04/17 |
| o | 31 31 19 | Vegetation Control | BKF | 08/04/17 |

- **DIVISION 32 – EXTERIOR IMPROVEMENT**

| | | | | |
|---|---|---|---|---|
| o | 32 01 00 | Landscape Maintenance Period | MSLA | 08/04/17 |
| o | 32 05 23 | Concrete for Exterior Improvements | BKF | 08/04/17 |
| o | 32 11 00 | Base Courses | BKF | 08/04/17 |
| o | 32 13 00 | Rigid Paving | BKF | 08/04/17 |
| o | 32 13 16 | Site Concrete | MSLA | 08/04/17 |
| o | 32 13 73 | Site Sealants | MSLA | 08/04/17 |
| o | 32 14 13 | Unit Set Paving | MSLA | 08/04/17 |
| o | 32 17 13 | Parking Bumpers | BDE | 08/04/17 |
| o | 32 17 23 | Pavement Markings | BDE | 08/04/17 |
| o | 32 17 26 | Tactile Warning Surfacing | BDE | 08/04/17 |
| o | 32 30 00 | Site Furnishings | MSLA | 08/04/17 |
| o | 32 84 00 | Irrigation | MSLA | 08/04/17 |
| o | 32 91 13 | Soil Prep and Mixes | MSLA | 08/04/17 |
| o | 32 91 19 | Planting Area Finish Grading | MSLA | 08/04/17 |
| o | 32 93 00 | Plant Material | MSLA | 08/04/17 |
| o | 32 94 13 | Site Metalwork | MSLA | 08/04/17 |

- **DIVISION 33 – UTILITIES**

| | | | | |
|---|---|---|---|---|
| o | 33 05 16 | Utility Structures | BKF | 08/04/17 |
| o | 33 40 00 | Storm Drainage Utilities | BKF | 08/04/17 |
| o | 33 47 27 | Bioretention Soil | BKF | 08/04/17 |

- **DIVISION 41 – MATERIAL PROCESSING AND HANDLING EQUIPMENT**

| | | | | |
|---|---|---|---|---|
| o | 41 63 23 | Electric Pallet Jack | ATM | 08/04/17 |

- **DIVISION 44 – POLLUTION AND ODOR CONTROL EQUIPMENT**

| | | | | |
|---|---|---|---|---|
| o | 44 31 00 | Odor Control | ATM | 08/04/17 |

**Appendices**:

- Appendix 1                          Geotechnical Report                                12/09/13
-
- Appendix 2                          Places of Entertainment Analysis                   04/20/17
-
- Appendix 3                          Environmental Noise Study                          04/20/17
-
- Appendix 4                          Interior Acoustics Narrative                       04/20/17
-
- Appendix 5                          MEP Basis Of Design                                04/20/17
-
- Appendix 6                          Lighting Fixture Package                           08/04/17

# EXHIBIT D

# Document List

# 1301 16th Street (Potrero)
# Exhibit D
# Contract Drawings / BRFI'S/Reports

## Architectural                                          Date

| | | |
|---|---|---|
| A0.00 | Project Information | 08.04.2017 |
| A0.01 | Sheet Index | 08.04.2017 |
| A0.02 | General Information | 08.04.2017 |
| A0.03 | Open Space Area Diagram | 08.04.2017 |
| A0.04 | Planning Motions | 08.04.2017 |
| A0.05 | Planning Motion | 08.04.2017 |
| A0.06 | Planning Motions/ Fire Flow Data | 08.04.2017 |
| A0.07 | Special Restrictions | 08.04.2017 |
| A0.08 | Special Restrictions | 08.04.2017 |
| A0.10 | Acoustical Narrative | 08.04.2017 |
| A0.11 | Acoustical Narrative | 08.04.2017 |
| A0.12 | Acoustical Narrative | 08.04.2017 |
| A0.13 | Environmental Noise Study | 08.04.2017 |
| A0.14 | Greenpoint Rated C4 | 08.04.2017 |
| A0.20 | Accessibility Compliance Details 11A | 08.04.2017 |
| A0.21 | Accessibility Compliance Details 11A | 08.04.2017 |
| A0.22 | Accessibility Compliance Details 11B | 08.04.2017 |
| A0.23 | Accessibility Compliance Details 11B | 08.04.2017 |
| A0.24 | Signage Details | 08.04.2017 |
| A0.41 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.41a | Accessibility Plan | 07.11.2017 |
| A0.42 | Egress & Occupancy Analysis | 07.11.2017 |

| | | |
|---|---|---|
| A0.43 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.44 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.45 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.46 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.47 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.48 | Egress & Occupancy Analysis | 07.11.2017 |
| A0.50 | Title 24 Calculations | 08.04.2017 |
| A0.51 | Title 24 Calculations | 08.04.2017 |
| A0.52 | Title 24 Calculation | 08.04.2017 |
| A0.53 | Title 24 Calculation | 08.04.2017 |
| A0.54 | Title 24 Calculation | 08.04.2017 |
| A0.55 | Title 24 Calculation | 08.04.2017 |
| A0.56 | Title 24 Calculation | 08.04.2017 |
| A0.57 | Title 24 Calculation | 08.04.2017 |
| A0.58 | Title 24 Calculation | 08.04.2017 |
| A0.60 | 2016 CALGreen Non-Res Checklist | 08.04.2017 |
| A0.61 | 2016 CALGreen Non-Res Checklist | 08.04.2017 |
| A0.62 | 2016 CALGreen Non-Res Checklist | 08.04.2017 |
| A0.63 | 2016 CALGreen Residential Checklist | 08.04.2017 |
| A0.64 | 2016 CALGreen Residential Checklist | 08.04.2017 |

## Civil

| | | |
|---|---|---|
| C1.1 | Notes, Abbreviation, & Legend | 08.04.2017 |
| C2.1 | Existing Conditions | 08.04.2017 |
| C2.2 | Demolition Plan | 08.04.2017 |
| C3.1 | Horizontal Control Plan | 08.04.2017 |
| C4.1 | Grading Plan | 08.04.2017 |
| C4.2 | Detailed Grading Plan | 08.04.2017 |
| C5.1 | Utility Plan | 08.04.2017 |

| | | |
|---|---|---|
| C6.1 | Erosion Control Plan | 08.04.2017 |
| C6.2 | Erosion Control Details | 08.04.2017 |
| C8.1 | Civil Details | 08.04.2017 |
| C8.2 | Civil Details | 08.04.2017 |

## Joint Trench

| | | |
|---|---|---|
| JT1 | Joint Trench Intent | 08.04.2017 |

## Landscape

| | | |
|---|---|---|
| L0.00 | Notes and Legend | 08.04.2017 |
| L0.01 | Landscape Index, Legend and Notes | 08.04.2017 |
| L1.01 | Streetscape Materials Plan | 08.04.2017 |
| L1.02 | On Structure Materials Plan | 08.04.2017 |
| L2.01 | Streetscape Layout Plan | 08.04.2017 |
| L2.02 | On Structure Layout Plan | 08.04.2017 |
| L2.02A | Layout Plan Blow Up- Roof | 08.04.2017 |
| L2.03 | On Structure Paving Layout Plan | 08.04.2017 |
| L5.01 | Streetscape Planting Plan | 08.04.2017 |
| L5.02 | On Structure Planting Plan | 08.04.2017 |
| L6.01 | Landscape Paving Details | 08.04.2017 |
| L6.02 | Landscape Paving Details | 08.04.2017 |
| L6.03 | Landscape Paving Details | 08.04.2017 |
| L6.04 | Landscape Paving Layout | 08.04.2017 |
| L6.05 | Landscape Wall Details | 08.04.2017 |
| L6.06 | Landscape Wall Details | 08.04.2017 |
| L6.07 | Landscape Wall Details | 08.04.2017 |
| L6.08 | Landscape Wall Details | 08.04.2017 |
| L6.09 | Landscape Fence Details | 08.04.2017 |
| L6.10 | Landscape Furnishing Details | 08.04.2017 |
| L6.11 | Landscape Furnishing Details | 08.04.2017 |

| L6.20 | Landscape Furnishing Details | 08.04.2017 |
| L6.21 | Landscape Furnishing Details | 08.04.2017 |
| L6.30 | Landscape Furnishing Details | 08.04.2017 |
| L6.40 | Landscape Furnishing Details | 08.04.2017 |
| L6.50 | Landscape Metal Details | 08.04.2017 |
| L6.60 | Drainage Details | 08.04.2017 |
| L6.70 | Streetscape Planting Details | 08.04.2017 |
| L6.71 | On Structure Planting Details | 08.04.2017 |
| L6.72 | Plant Layout Detail Plans Streetscape | 08.04.2017 |
| L6.73 | Plant Layout Detail Plans at Podium | 08.04.2017 |
| L6.74 | Plant Layout Detail Plans at Podium at Roof | 08.04.2017 |
| L6.75 | Plant Layout Detail Plans at Roof | 08.04.2017 |
| L7.01 | Streetscape Irrigation Plan | 08.04.2017 |
| L7.02 | On Structure Irrigation Plan | 08.04.2017 |
| L7.03 | Irrigation Notes and Legend | 08.04.2017 |
| L7.04 | Irrigation Details | 08.04.2017 |

## Architectural

| A1.01 | Building Site Plan Floor 01 | 08.04.2017 |
| A1.02 | Building Site Plan Roof | 08.04.2017 |
| A2.01 | Building Plan Floor 1 | 08.04.2017 |
| A2.01S | Building Slab Plan Floor 1 | 08.04.2017 |
| A2.02 | Building Plan Floor 2 | 08.04.2017 |
| A2.02S | Building Slab Plan Floor 2 | 08.04.2017 |
| A2.03 | Building Plan Floor 3 | 08.04.2017 |
| A2.03S | Building Slab Plan Floor 3 | 08.04.2017 |
| A2.04 | Building Plan Floor 4 | 08.04.2017 |
| A2.05 | Building Plan Floor 5 | 08.04.2017 |
| A2.06 | Building Plan Floor 6 | 08.04.2017 |

| A2.07 | Building Plan Floor 7 | 08.04.2017 |
| A2.08 | Building Plan Roof | 08.04.2017 |
| A2.09 | Building Plan Roof Drainage | 08.04.2017 |
| A2.10 | Building Plan Upper Roof | 08.04.2017 |
| A3.00 | Exterior Elevations | 08.04.2017 |
| A3.01 | Exterior Elevations | 08.04.2017 |
| A3.02 | Exterior Elevations | 08.04.2017 |
| A3.03 | Exterior Elevations Materials | 08.04.2017 |
| A3.04 | Exterior Elevations Materials | 08.04.2017 |
| A3.05 | Exterior Elevations Materials | 08.04.2017 |
| A3.10 | Building Sections | 08.04.2017 |
| A3.11 | Building Sections | 08.04.2017 |
| A3.12 | Building Sections | 08.04.2017 |
| A3.20 | 3D Building View | 08.04.2017 |
| A3.22 | 3D Building View | 08.04.2017 |
| A3.23 | 3D Building View | 08.04.2017 |
| A3.24 | Perspective Render | 08.04.2017 |
| A3.25 | Perspective Render | 08.04.2017 |
| A3.26 | Perspective Render | 08.04.2017 |
| A4.00 | Unit Plans | 08.04.2017 |
| A4.01 | Unit Plans | 08.04.2017 |
| A4.02 | Unit Plans | 08.04.2017 |
| A4.03 | Unit Plans | 08.04.2017 |
| A4.04 | Unit Plans | 08.04.2017 |
| A4.05 | Unit Plans | 08.04.2017 |
| A4.06 | Unit Plans | 08.04.2017 |
| A4.07 | Unit Plans | 08.04.2017 |
| A4.08 | Unit Plans | 08.04.2017 |
| A4.09 | Unit Plans | 08.04.2017 |

| A4.10 | Unit Plans | 08.04.2017 |
|-------|------------|------------|
| A4.11 | Unit Plans | 08.04.2017 |
| A4.12 | Unit Plans | 08.04.2017 |
| A4.13 | Unit Plans | 08.04.2017 |
| A4.14 | Unit Plans | 08.04.2017 |
| A4.15 | Unit Plans | 08.04.2017 |
| A4.16 | Unit Plans | 08.04.2017 |
| A4.17 | Unit Plans | 08.04.2017 |
| A4.18 | Unit Plans | 08.04.2017 |
| A4.19 | Unit Plans | 08.04.2017 |
| A4.20 | Vertical Plans | 08.04.2017 |
| A4.21 | Vertical Plans | 08.04.2017 |
| A4.22 | Vertical Plans | 08.04.2017 |
| A4.23 | Vertical Plans | 08.04.2017 |
| A4.24 | Vertical Plans | 08.04.2017 |
| A4.25 | Vertical Plans | 08.04.2017 |
| A4.26 | Vertical Plans | 08.04.2017 |
| A4.27 | Vertical Plans | 08.04.2017 |
| A4.28 | Vertical Plans | 08.04.2017 |
| A4.29 | Vertical Plans | 08.04.2017 |
| A4.30 | Vertical Plans | 08.04.2017 |
| A4.31 | Vertical Plans | 08.04.2017 |
| A4.32 | Vertical Plans | 08.04.2017 |
| A4.33 | Vertical Plans | 08.04.2017 |
| A4.34 | Vertical Plans | 08.04.2017 |
| A4.40 | Enlarged Plans | 08.04.2017 |
| A4.41 | Enlarged Plans | 08.04.2017 |
| A4.42 | Enlarged Plans | 08.04.2017 |
| A4.43 | Enlarged Plans | 08.04.2017 |

| | | |
|---|---|---|
| A5.00 | Interior Elevations | 08.04.2017 |
| A5.01 | Interior Elevations | 08.04.2017 |
| A5.02 | Interior Elevations | 08.04.2017 |
| A5.03 | Interior Elevations | 08.04.2017 |
| A5.04 | Interior Elevations | 08.04.2017 |
| A6.00 | Unit RCPS | 08.04.2017 |
| A6.01 | Unit RCPS | 08.04.2017 |
| A6.02 | Unit RCPS | 08.04.2017 |
| A6.03 | Unit RCPS | 08.04.2017 |
| A6.04 | Unit RCPS | 08.04.2017 |
| A6.05 | Unit RCPS | 08.04.2017 |
| A6.06 | Unit RCPS | 08.04.2017 |
| A6.07 | Unit RCPS | 08.04.2017 |
| A6.08 | Unit RCPS | 08.04.2017 |
| A6.09 | Unit RCPS | 08.04.2017 |
| A6.10 | Unit RCPS | 08.04.2017 |
| A6.11 | Unit RCPS | 08.04.2017 |
| A6.12 | Unit RCPS | 08.04.2017 |
| A6.13 | Unit RCPS | 08.04.2017 |
| A6.14 | Unit RCPS | 08.04.2017 |
| A6.15 | Unit RCPS | 08.04.2017 |
| A6.16 | Unit RCPS | 08.04.2017 |
| A6.17 | Unit RCPS | 08.04.2017 |
| A6.18 | Unit RCPS | 08.04.2017 |
| A6.19 | Unit RCPS | 08.04.2017 |
| A6.21 | Building RCP Floor 1 | 08.04.2017 |
| A6.22 | Building RCP Floor 2 | 08.04.2017 |
| A6.23 | Building RCP Floor 3 | 08.04.2017 |
| A6.24 | Building RCP Floor 4 | 08.04.2017 |

| | | |
|---|---|---|
| A6.25 | Building RCP Floor 5 | 08.04.2017 |
| A6.26 | Building RCP Floor 6 | 08.04.2017 |
| A6.27 | Building RCP Floor 7 | 08.04.2017 |
| A6.28 | Building RCP Roof | 08.04.2017 |
| A7.00 | Wall Sections | 08.04.2017 |
| A7.01 | Wall Sections | 08.04.2017 |
| A7.03 | Wall Sections | 08.04.2017 |
| A7.06 | Wall Sections | 08.04.2017 |
| A7.07 | Wall Sections | 08.04.2017 |
| A7.08 | Wall Sections | 08.04.2017 |
| A8.00 | WD Roof Equip & Penetration Details | 08.04.2017 |
| A8.01 | Parapet Details | 08.04.2017 |
| A8.02 | Gutter & Scupper Details | 08.04.2017 |
| A8.03 | Bridge Details | 08.04.2017 |
| A8.10 | Transition & Corner Details | 08.04.2017 |
| A8.11 | Deck Details | 08.04.2017 |
| A8.12 | Ext. Soffit Details | 08.04.2017 |
| A8.15 | Seismic Details | 08.04.2017 |
| A8.18 | Floor Break Details | 08.04.2017 |
| A8.20 | Wall to Slab at Podium Details | 08.04.2017 |
| A8.21 | Wall to Slab at Grade Details | 08.04.2017 |
| A8.22 | Podium Details | 08.04.2017 |
| A8.30 | Below Grade Details | 08.04.2017 |
| A8.40 | Misc Connection Detail | 08.04.2017 |
| A8.41 | Railing Details | 08.04.2017 |
| A8.43 | Stoop Railing Detail | 08.04.2017 |
| A8.44 | Bolt-On Balcony Details | 08.04.2017 |
| A8.45 | Awning Details | 08.04.2017 |
| A8.46 | Courtyard Canopy Details | 08.04.2017 |

| | | |
|---|---|---|
| A8.47 | Entry Canopy Details | 08.04.2017 |
| A8.50 | Exterior Mock-Up | 08.04.2017 |
| A8.60 | Car Stacker Details | 08.04.2017 |
| A8.61 | Car Stacker Details | 08.04.2017 |
| A8.62 | Car Stacker Details | 08.04.2017 |
| A9.00 | 1 HR Wall Transition Details- Type III-A | 08.04.2017 |
| A9.01 | 1 HR Wall Transition Details- Type I-A | 08.04.2017 |
| A9.02 | 3 HR Wall Transition Details | 08.04.2017 |
| A9.03 | Stair Details | 08.04.2017 |
| A9.10 | Duct & Shaft Details | 08.04.2017 |
| A9.11 | Soffit & Penetration Details | 08.04.2017 |
| A9.12 | Acoustical Details | 08.04.2017 |
| A9.20 | Fire Stopping Details | 08.04.2017 |
| A9.21 | Fire Stopping Details | 08.04.2017 |
| A9.22 | Fire Stopping Details | 08.04.2017 |
| A9.30 | Bathroom Details | 08.04.2017 |
| A9.31 | Kitchen Details | 08.04.2017 |
| A9.32 | Unit Details & Misc Details | 08.04.2017 |
| A10.00 | Wall Assemblies | 08.04.2017 |
| A10.01 | Wall Assemblies Metal | 08.04.2017 |
| A10.02 | Wall Assemblies Wood | 08.04.2017 |
| A10.03 | Floor/ Ceiling and Roof Assemblies | 08.04.2017 |
| A10.10 | Door Schedules | 08.04.2017 |
| A10.20 | Exterior Door Details | 08.04.2017 |
| A10.21 | Exterior Door Details | 08.04.2017 |
| A10.22 | Exterior Door Details | 08.04.2017 |
| A10.30 | Interior Door Details | 08.04.2017 |
| A10.31 | Interior Door Details | 08.04.2017 |
| A10.40 | Window Schedule | 08.04.2017 |

| A10.41 | Storefront Schedule | 08.04.2017 |
| A10.42 | Window Details | 08.04.2017 |
| A10.43 | Window Detail | 08.04.2017 |
| A10.51 | Storefront Details | 08.04.2017 |
| A10.52 | Window Wall Details | 08.04.2017 |
| A10.53 | Storefront & Window Wall Flr 1 Details | 08.04.2017 |
| A10.61 | Finish Schedule | 08.04.2017 |
| A10.62 | Finish Detail | 08.04.2017 |

## Exterior Building Maintenance System

| EBM1.0 | EBM Roof Plan | 08.04.2017 |
| EBM1.1 | EBM Sections | 08.04.2017 |
| EBM1.2 | EBM Elevations | 08.04.2017 |
| EBM1.3 | EBM Elevations | 08.04.2017 |
| EBM1.4 | EBM Elevations | 08.04.2017 |

## Structural

| S1.01 | Structural General Notes | 10.06.2017 |
| S1.02 | Structural General Notes | 10.06.2017 |
| S1.03 | Structural General Notes – Abbreviations and Legends | 10.06.2017 |
| S2.01 | Structural Floor 1 Foundation Plan | 10.06.2017 |
| S2.01A | Structural – Foundation Pile Cap Plan | 10.06.2017 |
| S2.02 | Structural Floor 2 Mild Reinforcing Plan | 10.06.2017 |
| S2.02A | Structural Floor 2 Post Tensioning Plan | 10.06.2017 |
| S2.03 | Structural Floor 3 Mild Reinforcing Plan | 10.06.2017 |
| S2.03A | Structural Floor 3 Post Tensioning Plan | 10.06.2017 |
| S2.03B | Structural 3 Floor 3 Stud and Shear Wall Plan | 10.06.2017 |
| S2.04 | Structural Floor 4 Framing Plan | 10.06.2017 |
| S2.04B | Structural Floor 4 Stud and Shear Wall Plan | 10.06.2017 |
| S2.05 | Structural Floor 5 Framing Plan | 10.06.2017 |

| S2.05B | Structural Floor 5 Stud and Shear Wall Plan | 10.06.2017 |
| S2.06 | Structural Floor 6 Framing Plan | 10.06.2017 |
| S2.06B | Structural Floor 6 Stud and Shear Wall Plan | 10.06.2017 |
| S2.07 | Structural Floor 7 Framing Plan | 10.06.2017 |
| S2.07B | Structural Floor 7 Stud and Shear Wall Plan | 10.06.2017 |
| S2.08 | Structural Roof Framing Plan | 10.06.2017 |
| S2.08B | Structural Roof Stud and Shear Wall Plan | 10.06.2017 |
| S2.09 | Structural Upper Roof Framing Plan | 10.06.2017 |
| S3.01 | Structural Concrete Column Details | 10.06.2017 |
| S3.02 | Structural Concrete Column Details | 10.06.2017 |
| S3.05 | Structural Concrete Shear Wall Details | 10.06.2017 |
| S4.01 | Structural Foundation Details | 10.06.2017 |
| S4.02 | Structural Foundation Details | 10.06.2017 |
| S5.01 | Structural Concrete Framing Details | 10.06.2017 |
| S5.02 | Structural Foundation Details | 10.06.2017 |
| S5.03 | Structural Foundation Details | 10.06.2017 |
| S6.01 | Structural Wood Framing Details | 10.06.2017 |
| S6.02 | Structural Wood Framing Details | 10.06.2017 |
| S6.03 | Structural Wood Framing Details | 10.06.2017 |
| S6.04 | Structural Wood Framing Details | 10.06.2017 |
| S6.05 | Structural Wood Framing Details | 10.06.2017 |
| S7.01 | Structural Steel Framing Details | 10.06.2017 |
| S7.02 | Structural Steel Framing Details | 10.06.2017 |
| S7.03 | Structural Steel Framing Details | 10.06.2017 |

## Waterproofing

| BE0.00 | Index, General Notes, and Schedules | 08.04.2017 |
| BE2.01 | Floor 1 Waterproofing Plan | 08.04.2017 |
| BE2.02 | Floor 2 Waterproofing Plan | 08.04.2017 |

| | | |
|---|---|---|
| BE2.03 | Floor 3 Waterproofing Plan | 08.04.2017 |
| BE2.04 | Floor 4 Waterproofing Plan | 08.04.2017 |
| BE2.05 | Floor 5 Waterproofing Plan | 08.04.2017 |
| BE2.06 | Floor 6 Waterproofing Plan | 08.04.2017 |
| BE2.07 | Floor 7 Waterproofing Plan | 08.04.2017 |
| BE2.09 | Roof Waterproofing Plan | 08.04.2017 |
| BE2.10 | Upper Roof Waterproofing Plan | 08.04.2017 |
| BE4.01 | Window Flashing Sequence | 08.04.2017 |
| BE4.02 | Storefront Flashing Sequence | 08.04.2017 |
| BE4.11 | Swing Door Flashing Sequence | 08.04.2017 |
| BE4.12 | Flanged Sliding Door Flashing Sequence | 08.04.2017 |
| BE4.21 | Knife Plate Flashing Sequence | 08.04.2017 |
| BE4.22 | Penetration Flashing Sequence | 08.04.2017 |
| BE4.31 | Typical Slab on Grade Details | 08.04.2017 |
| BE4.41 | Typical Podium Details | 08.04.2017 |
| BE4.42 | Typical Podium Details | 08.04.2017 |
| BE4.61 | Typical Penetration Details | 08.04.2017 |
| BE4.71 | Typical Roof Details | 08.04.2017 |
| BE4.72 | Typical Roof Details | 08.04.2017 |
| BE4.73 | Typical Roof Details | 08.04.2017 |
| BE8.00 | Roof Details | 08.04.2017 |
| BE8.01 | Roof Details | 08.04.2017 |
| BE8.10 | Transition & Corner Details | 08.04.2017 |
| BE8.11 | Deck Details | 08.04.2017 |
| BE8.12 | Soffit Details | 08.04.2017 |
| BE8.20A | Podium Details | 08.04.2017 |
| BE8.20B | Podium Details | 08.04.2017 |
| BE8.22 | Louver Details | 08.04.2017 |
| BE8.40 | Railing Connection Details | 08.04.2017 |

| | | |
|---|---|---|
| BE10.20 | Exterior Door Details | 08.04.2017 |
| BE10.21 | Exterior Door Details | 08.04.2017 |
| BE10.42 | Storefront Details | 08.04.2017 |
| BE10.51 | Storefront Details | 08.04.2017 |
| BE10.52 | Window Details | 08.04.2017 |

## Mechanical

| | | |
|---|---|---|
| M0.0 | Legend, Notes, & Index | 08.04.2017 |
| M0.01 | Schedules & Calculations | 08.04.2017 |
| M2.01 | Building Plan Floor 1 | 08.04.2017 |
| M2.02 | Building Plan Floor 2 | 08.04.2017 |
| M2.03 | Building Plan Floor 3 | 08.04.2017 |
| M2.04 | Building Plan Floor 4 | 08.04.2017 |
| M2.05 | Building Plan Floor 5 | 08.04.2017 |
| M2.06 | Building Plan Floor 6 | 08.04.2017 |
| M2.07 | Building Plan Floor 7 | 08.04.2017 |
| M2.09 | Building Plan Upper Roof | 08.04.2017 |
| M3.00 | Enlarged Plans | 08.04.2017 |
| M3.01 | Enlarged Plans | 08.04.2017 |
| M3.02 | Enlarged Plans | 08.04.2017 |
| M3.03 | Enlarged Plans | 08.04.2017 |
| M3.04 | Enlarged Plans | 08.04.2017 |
| M3.05 | Enlarged Plans | 08.04.2017 |
| M3.06 | Enlarged Plans | 08.04.2017 |
| M3.07 | Enlarged Plans | 08.04.2017 |
| M3.08 | Enlarged Plans | 08.04.2017 |
| M3.09 | Enlarged Plans | 08.04.2017 |
| M3.10 | Enlarged Plans | 08.04.2017 |
| M3.11 | Enlarged Plans | 08.04.2017 |

| M3.12 | Enlarged Plans | 08.04.2017 |
| M3.13 | Enlarged Plans | 08.04.2017 |
| M3.14 | Enlarged Plans | 08.04.2017 |
| M3.15 | Enlarged Plans | 08.04.2017 |
| M3.16 | Enlarged Plans | 08.04.2017 |
| M3.17 | Enlarged Plans | 08.04.2017 |
| M3.18 | Enlarged Plans | 08.04.2017 |
| M3.19 | Enlarged Plans | 08.04.2017 |
| M4.00 | Details & Diagrams | 08.04.2017 |
| M4.01 | Details & Diagrams | 08.04.2017 |
| M4.02 | Details & Diagrams | 08.04.2017 |
| M4.03 | Details & Diagrams | 08.04.2017 |
| M5.00 | Compliance Forms | 08.04.2017 |

## Electrical

| E0.0 | LEGEND, GENERAL NOTES, INDEX | 08.04.2017 |
| E0.1 | LUMINAIRE SCHEDULE | 08.04.2017 |
| E0.2 | LUMINAIRE SCHEDULE | 08.04.2017 |
| E2.1 | FIRST FLOOR LIGHTING | 07.07.2017 |
| E2.2 | SECOND FLOOR LIGHTING | 07.07.2017 |
| E2.3 | THIRD FLOOR LTG/POWER | 07.07.2017 |
| E2.4 | FOURTH FLOOR LTG/POWER | 07.07.2017 |
| E2.5 | FIFTH FLOOR LTG/POWER | 07.07.2017 |
| E2.6 | SIXTH FLOOR LTG/POWER | 07.07.2017 |
| E2.7 | SEVENTH FLOOR LTG/POWER | 07.07.2017 |
| E2.8 | ROOF FLOOR LIGHTING | 07.07.2017 |
| E2.9 | UPPER ROOF FLOOR LTG/POWER | 08.04.2017 |
| E3.1 | FLOOR 1 POWER | 08.04.2017 |
| E3.2 | FLOOR 2 POWER | 08.04.2017 |
| E3.3 | ROOF POWER | 08.04.2017 |

| E3.4 | POWER DETAILS | 08.04.2017 |
|------|---------------|------------|
| E4.0 | UNIT PLANS | 08.04.2017 |
| E4.1 | UNIT PLANS | 08.04.2017 |
| E4.2 | UNIT PLANS | 08.04.2017 |
| E4.3 | UNIT PLANS | 08.04.2017 |
| E4.4 | UNIT PLANS | 08.04.2017 |
| E4.5 | UNIT PLANS | 08.04.2017 |
| E4.6 | UNIT PLANS | 08.04.2017 |
| E4.7 | UNIT PLANS | 08.04.2017 |
| E4.8 | UNIT PLANS | 08.04.2017 |
| E4.9 | UNIT PLANS | 08.04.2017 |
| E4.10 | UNIT PLANS | 08.04.2017 |
| E4.11 | UNIT PLANS | 08.04.2017 |
| E4.12 | UNIT PLANS | 08.04.2017 |
| E4.13 | UNIT PLANS | 08.04.2017 |
| E4.14 | UNIT PLANS | 08.04.2017 |
| E4.15 | UNIT PLANS | 08.04.2017 |
| E4.16 | UNIT PLANS | 08.04.2017 |
| E4.17 | UNIT PLANS | 08.04.2017 |
| E4.18 | UNIT PLANS | 08.04.2017 |
| E4.19 | UNIT PLANS | 08.04.2017 |
| E4.20 | UNIT PLANS | 08.04.2017 |
| E5.0 | ONE LINE DIAGRAM | 08.04.2017 |
| E5.1 | ONE LINE DIAGRAM | 08.04.2017 |
| E5.2 | LOAD CALCULATIONS | 08.04.2017 |
| E5.3 | PANEL SCHEDULES | 08.04.2017 |
| E5.4 | PANEL SCHEDULES | 08.04.2017 |
| E5.5 | PANEL SCHEDULES | 08.04.2017 |
| E5.6 | PANEL SCHEDULES | 08.04.2017 |

| E5.7 | PANEL SCHEDULES | 08.04.2017 |
| E6.0 | LOW VOLTAGE RISER | 08.04.2017 |
| E6.1 | LOW VOLTAGE DETAILS | 08.04.2017 |
| E6.2 | DETAILS/DIAGRAMS | 08.04.2017 |
| E6.3 | DETAILS/DIAGRAMS | 08.04.2017 |
| E6.4 | DETAILS/DIAGRAMS | 08.04.2017 |

## Lighting

| LP.01 | FIRST FLOOR LIGHTING PLAN | 08.04.2017 |
| LP.02 | SECOND FLOOR LIGHTING PLAN | 08.04.2017 |
| LP.03 | THIRD FLOOR LIGHTING PLAN | 08.04.2017 |
| LP.04 | TYPICAL CORRIDOR LIGHTING PLAN | 08.04.2017 |
| LP.05 | ROOF LIGHTING PLAN | 08.04.2017 |
| LP.06 | TYPICAL UNIT LIGHTING PLAN | 08.04.2017 |

## Plumbing

| P0.00 | LEGEND, GENERAL NOTES, DRAWING INDEX | 08.04.2017 |
| P0.01 | SCHEDULES AND CALCULATIONS | 08.04.2017 |
| P1.00 | SITE PLAN | 08.04.2017 |
| P2.00 | BUILDING PLAN UNDERSLAB | 08.04.2017 |
| P2.01 | BUILDING PLAN FLOOR 1 | 08.04.2017 |
| P2.02 | BUILDING PLAN FLOOR 2 | 08.04.2017 |
| P2.02D | BUILDING PLAN FLOOR 2 DRAIN PIPING | 08.04.2017 |
| P2.02S | BUILDING PLAN FLOOR 2 SUPPLY PIPING | 08.04.2017 |
| P2.03 | BUILDING PLAN FLOOR 3 | 08.04.2017 |
| P2.04 | BUILDING PLAN FLOOR 4 | 08.04.2017 |
| P2.05 | BUILDING PLAN FLOOR 5 | 08.04.2017 |
| P2.06 | BUILDING PLAN FLOOR 6 | 08.04.2017 |
| P2.07 | BUILDING PLAN FLOOR 7 | 08.04.2017 |

| P2.08 | BUILDING PLAN ROOF | 08.04.2017 |
| P2.09 | BUILDING PLAN UPPER ROOF | 08.04.2017 |
| P3.00 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.01 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.02 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.03 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.04 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.05 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.06 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.07 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.08 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.09 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.10 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.11 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.12 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.13 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.14 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.15 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.16 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.17 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.18 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.19 | ENLARGED UNIT PLANS | 08.04.2017 |
| P3.20 | ENLARGED UNIT PLANS | 08.04.2017 |
| P4.00 | WASTE & VENT RISER DIAGRAMS | 08.04.2017 |
| P4.01 | WATER SUPPLY RISERS DIAGRAMS | 08.04.2017 |
| P4.02 | DETAILS & DIAGRAMS | 08.04.2017 |
| P4.03 | DETAILS & DIAGRAMS | 08.04.2017 |
| P4.04 | DETAILS & DIAGRAMS | 08.04.2017 |
| P4.05 | DETAILS & DIAGRAMS | 08.04.2017 |

| | | |
|---|---|---|
| P4.06 | DETAILS & DIAGRAMS | 08.04.2017 |
| P4.07 | DETAILS & DIAGRAMS | 08.04.2017 |

## Fire Sprinkler

| | | |
|---|---|---|
| FPS.0 | FLOOR 1 STANDPIPE OVERHEAD PIPING PLAN | 08.03.2017 |
| FPS.01 | FLOOR 2 STANDPIPE OVERHEAD PIPING PLAN | 08.03.2017 |
| FPS.1 | STAIR 1 STANDPIPE | 08.03.2017 |
| FPS.2 | STAIR 2 STANDPIPE | 08.03.2017 |
| FPS.3 | STAIR 3 STANDPIPE | 08.03.2017 |
| FPS.4 | STAIR 4 STANDPIPE | 08.03.2017 |

## INTERIOR DESIGN

| | | |
|---|---|---|
| ID-CS | COVER SHEET | 08.11.2017 |
| ID1.01 | LEVEL 01 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.02 | LEVEL 02 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.03 | LEVEL 03 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.04 | LEVEL 04 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.05 | LEVEL 05 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.06 | LEVEL 06 FINISH FLOOR PLAN | 08.11.2017 |
| ID1.07 | LEVEL 07 FINISH FLOOR PLAN | 08.11.2017 |
| ID2.01 | LEVEL 01 ENLARGED FLOOR PLAN | 08.11.2017 |
| ID2.02 | LEVEL 02 ENLARGED FLOOR PLAN | 08.11.2017 |
| ID3.01 | LEVEL 01 ENLARGED FINISH PLAN | 08.11.2017 |
| ID3.02 | LEVEL 03 ENLARGED FINISH PLAN | 08.11.2017 |
| ID4.01 | LEVEL 01 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.02 | LEVEL 02 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.03 | LEVEL 03 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.04 | LEVEL 04 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.05 | LEVEL 05 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.06 | LEVEL 06 REFLECTED CEILING PLAN | 08.11.2017 |
| ID4.07 | LEVEL 07 REFLECTED CEILING PLAN | 08.11.2017 |

| | | |
|---|---|---|
| ID5.01 | AMENITY LEVEL 01 INTERIOR ELEVATIONS | 08.11.2017 |
| ID5.02 | AMENITY LEVEL 01 INTERIOR ELEVATIONS | 08.11.2017 |
| ID5.03 | AMENITY LEVEL 01 INTERIOR ELEVATIONS | 08.11.2017 |
| ID5.04 | AMENITY LEVEL 03 INTERIOR ELEVATIONS | 08.11.2017 |
| ID5.51 | LEVEL 01 CORRIDOR ELEVATIONS | 08.11.2017 |
| ID5.52 | LEVEL 01 CORRIDOR ELEVATIONS | 08.11.2017 |
| ID5.53 | LEVEL 03-07 CORRIDOR ELEVATIONS | 08.11.2017 |
| ID5.54 | LEVEL 03-07 CORRIDOR ELEVATIONS | 08.11.2017 |
| ID6.01 | INTERIOR SECTIONS | 08.11.2017 |
| ID6.02 | INTERIOR SECTIONS | 08.11.2017 |
| ID7.01 | INTERIOR DETAILS | 08.11.2017 |
| ID8.01 | AMENITY & UNIT FINISH LEGEND | 08.11.2017 |
| ID8.02 | APPLIANCE & EQUIPMENT LEGEND | 08.11.2017 |
| ID8.03 | PLUMBINGS & ACCESSORIES | 08.11.2017 |

## RFI SECTION

See BID RFI LOG dated 12/05/2017

## BID ADDENDUM

| BID ADDENDUM # | DATE ISSUED |
|---|---|
| Bid Addendum #01 | 09/22/2017 |
| Bid Addendum #02 | 09/29/2017 |
| Bid Addendum #03 | 11/02/2017 |
| Bid Addendum #04 | 11/30/2017 |

# REPORTS

**REPORT**

1.  Updated Asbestos, Lead & Hazardous Materials Assessment, 1301 16th Street, San Francisco, CA 94110, AllWest Environmental, Revised September 22, 2017

2.  Phase I Environmental Site Assessment Update, PR III/Wood Potrero Hill, LLC, 1301 16th Street, San Francisco, California, The Vertex Companies, Inc., October 13, 2017

3.  Site Mitigation Plan, PR III/Wood Potrero Hill, LLC, 1301 16th Street, San Francisco, California, The Vertex Companies, Inc., October 24, 2017

4.  Site Mitigation Plan, Appendix A – Site Specific Dust Control Plan, PR III/Wood Potrero Hill, LLC, 1301 16th Street, San Francisco, California, The Vertex Companies, Inc., October 24, 2017

5.  Site Mitigation Plan, Appendix B – Vertex Health and Safety Plan, PR III/Wood Potrero Hill, LLC, 1301 16th Street, San Francisco, California, The Vertex Companies, Inc., October 24, 2017

6.  City and County of San Francisco, Department of Public Health/Environmental Health, SFHC Article 22A and 22B Compliance letter, 1301 16th Street, San Francisco, SMED 972, November  1, 2017

7.  Site Mitigation Plan Addendum, Potrero Development, 1301 16th Street, San Francisco, California, The Vertex Companies, Inc., May 3, 2017

8.  Preliminary Soil Vapor Intrusion Mitigation Measures completed by Carlin Environmental Consulting, dated 09/18/2017.

DocuSign Envelope ID: 7B996EE7-57AD-4506-931E-6C65679B0A41

# EXHIBIT E
# Schedule



## PBL 06 - 1301 16th St. San Francisco Apts 11.27.17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| **Milestones** | | | | | | |
| MS-1000 | Owner to Close Property 12.06.17 | 13 | 13 | 16-Nov-17 | 05-Dec-17 | 0 |
| MS-100 | Notice to Proceed 12.11.17 | 0 | 0 | | 11-Dec-17* | 0 |
| MS-120 | Project Duration 585 Cal Days | 585 | 585 | 11-Dec-17 | 18-Jul-19 | 0 |
| MS-160 | Temporary Power System | 0 | 0 | | 19-Apr-18 | 0 |
| MS-140 | Permanent Power | 0 | 0 | | 21-Dec-18 | 65 |
| MS-900 | TCO - Substantial Completion 07.18.19 | 0 | 0 | | 18-Jul-19* | 0 |
| MS-980 | Final Punchlist | 31 | 31 | 19-Jul-19 | 18-Aug-19 | 0 |
| MS-920 | C of O 08.18.19 | 0 | 0 | | 18-Aug-19 | 0 |
| MS-960 | Final Project Close-Out | 31 | 31 | 19-Aug-19 | 18-Sep-19 | 0 |
| MS-940 | Project Completion 09.18.19 | 0 | 0 | | 18-Sep-19 | 0 |
| **Permits** | | | | | | |
| P1000 | Grading Permit 11.30.17 | 10 | 10 | 16-Nov-17 | 30-Nov-17 | 59 |
| P1020 | Abatement Permit 12.14.17 | 20 | 20 | 16-Nov-17 | 14-Dec-17 | 0 |
| P1040 | Demo Permit 11.30.17 | 10 | 10 | 16-Nov-17 | 30-Nov-17 | 15 |
| **Deferred Approvals** | | | | | | |
| DA1020 | Hot Water Passive Solar | 53 | 53 | 11-Dec-17 | 27-Feb-18 | 183 |
| DA1060 | Architectural Metals | 30 | 30 | 11-Dec-17 | 24-Jan-18 | 304 |
| DA1080 | Structural (Stair Rails / Stairs / Balconies) | 30 | 30 | 11-Dec-17 | 24-Jan-18 | 304 |
| DA1000 | Torque Piles | 30 | 30 | 04-Jan-18 | 15-Feb-18 | 0 |
| DA1040 | Fire Alarm | 30 | 30 | 16-Jan-18* | 27-Feb-18 | 0 |
| DA1105 | Fire Protection | 30 | 30 | 16-Jan-18* | 27-Feb-18 | 0 |
| DA1120 | Exterior Building Maintenance | 30 | 30 | 01-Feb-18* | 15-Mar-18 | 0 |
| DA1100 | Storefront Glazing System | 30 | 30 | 15-Feb-18* | 29-Mar-18 | 0 |
| **Mobilization & Site Work Preparation** | | | | | | |
| SF10920 | PG&E Utility Disconnects (Gas & Electric) | 17 | 17 | 16-Nov-17 | 11-Dec-17 | 3 |
| SF10900 | Site Fencing | 4 | 4 | 04-Dec-17* | 07-Dec-17 | 0 |
| SF10940 | Mobilization & Site Work Preparation Start | 11 | 11 | 11-Dec-17 | 26-Dec-17 | 3 |
| SF14775 | TEMP Power | 5 | 5 | 11-Dec-17 | 15-Dec-17 | 57 |
| SF14760 | Abatement | 5 | 5 | 15-Dec-17 | 21-Dec-17 | 0 |

Legend:
- ▬▬ Remaining Level of Effort   ◆ ◆ Milestone
- ▬▬ Actual Level of Effort
- ▬▬ Actual Work
- ▬▬ Remaining Work
- ▬▬ Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17



| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF10790 | Demolition of Warehouse | 10 | 10 | 22-Dec-17 | 08-Jan-18 | 0 |
| SF14770 | Torque Pile Drill Test | 2 | 2 | 02-Jan-18 | 03-Jan-18 | 0 |
| SF10740 | Demo work Complete | 0 | 0 | | 08-Jan-18 | 0 |
| SF10670 | Excavation & Grading for Piles | 8 | 8 | 09-Jan-18 | 18-Jan-18 | 35 |
| **Foundation Concrete Work** | | | | | | |
| **Stacker Pits** | | | | | | |
| SF14765 | Torque Pile & Pile Caps below - Stacker Pits | 10 | 10 | 16-Feb-18 | 02-Mar-18 | 5 |
| SF11085 | Excavate Pits - Stacker Pits | 6 | 6 | 12-Mar-18 | 19-Mar-18 | 0 |
| SF11105 | Prep/Rebar/Pour Slab on Grade - Stacker Pits | 5 | 5 | 20-Mar-18 | 26-Mar-18 | 0 |
| SF11125 | Form/Rebar Walls - Stacker Pits | 6 | 6 | 27-Mar-18 | 03-Apr-18 | 0 |
| SF11145 | Shotcrete Walls - Stacker Pits | 3 | 3 | 04-Apr-18 | 06-Apr-18 | 0 |
| SF11165 | Cure Walls - Stacker Pits | 5 | 5 | 09-Apr-18 | 13-Apr-18 | 0 |
| SF11185 | Waterproof Backfill Walls - Stacker Pits | 4 | 4 | 16-Apr-18 | 19-Apr-18 | 0 |
| SF11186 | Finish Grading | 4 | 4 | 18-Apr-18 | 23-Apr-18 | 0 |
| **Mat Foundations (incl Elevator Pits)** | | | | | | |
| **Level 1** | | | | | | |
| SF10660 | Torque Piles & Pile Caps | 15 | 15 | 16-Feb-18 | 09-Mar-18 | 0 |
| SF10640 | Underslab MEP & Vapor Mitigation | 10 | 10 | 12-Mar-18 | 23-Mar-18 | 0 |
| SF11090 | Mat Foundations with Waterproofing | 12 | 12 | 26-Mar-18 | 10-Apr-18 | 0 |
| SF14780 | Optional Rat Slab | 5 | 5 | 11-Apr-18 | 17-Apr-18 | 0 |
| SF14750 | Pour Mat Foundations | 2 | 2 | 18-Apr-18 | 19-Apr-18 | 0 |
| SF1156 | Layout/Form Columns - Lev 1 | 7 | 7 | 20-Apr-18 | 30-Apr-18 | 1 |
| SF1166 | Rebar Walls & Cols - Lev 1 | 5 | 5 | 25-Apr-18 | 01-May-18 | 1 |
| SF1006 | Prep & Shotcrete Walls/Pour & Strip Columns - Lev 1 | 3 | 3 | 02-May-18 | 04-May-18 | 1 |
| **Level 2** | | | | | | |
| SF1036 | Shore & Form Deck - Lev 2 | 10 | 10 | 07-May-18 | 18-May-18 | 1 |
| SF1016 | Deck Layout & Can MEP Utilities - Lev 2 | 3 | 3 | 21-May-18 | 23-May-18 | 1 |
| SF1026 | Rebar/PT Cable/Prep Slab on Deck - Lev 2 | 8 | 8 | 21-May-18 | 31-May-18 | 1 |
| SF1056 | Inspection - Lev 2 | 1 | 1 | 01-Jun-18 | 01-Jun-18 | 1 |
| SF1066 | Pour Deck - Lev 2 | 2 | 2 | 04-Jun-18 | 05-Jun-18 | 1 |
| SF1046 | Cure Slab on Deck - Lev 2 | 3 | 3 | 06-Jun-18 | 08-Jun-18 | 1 |

Legend:
- Remaining Level of Effort
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work
- ◆ Milestone

Page 2 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF1076 | Tension Deck - Lev 2 | 2 | 2 | 11-Jun-18 | 12-Jun-18 | 1 |
| **Level 3** | | | | | | |
| SF1086 | Shore & Form Deck - Lev 3 | 10 | 10 | 13-Jun-18 | 26-Jun-18 | 1 |
| SF1096 | Deck Layout & Can MEP Utilities - Lev 3 | 3 | 3 | 27-Jun-18 | 29-Jun-18 | 1 |
| SF1106 | Rebar/PT Cable/Prep Slab on Deck - Lev 3 | 8 | 8 | 27-Jun-18 | 09-Jul-18 | 1 |
| SF1116 | Inspection - Lev 3 | 1 | 1 | 10-Jul-18 | 10-Jul-18 | 1 |
| SF1126 | Pour Deck - Lev 3 | 2 | 2 | 11-Jul-18 | 12-Jul-18 | 1 |
| SF1136 | Cure Slab on Deck - Lev 3 | 3 | 3 | 13-Jul-18 | 17-Jul-18 | 1 |
| SF1146 | Tension - Lev 3 | 2 | 2 | 18-Jul-18 | 19-Jul-18 | 1 |
| **Level 4** | | | | | | |
| SF12510 | Wood Deck on Level 4 | 6 | 6 | 20-Jul-18 | 26-Jul-18 | 1 |
| SF12730 | Exterior & Interior Framing Level 4 | 18 | 18 | 27-Jul-18 | 16-Aug-18 | 1 |
| **Level 5** | | | | | | |
| SF12950 | Wood Deck on Level 5 | 6 | 6 | 17-Aug-18 | 23-Aug-18 | 1 |
| SF12990 | Exterior & Interior Framing Level 5 | 18 | 18 | 24-Aug-18 | 14-Sep-18 | 1 |
| **Level 6** | | | | | | |
| SF13010 | Wood Deck on Level 6 | 6 | 6 | 15-Sep-18 | 21-Sep-18 | 1 |
| SF13130 | Exterior & Interior Framing Level 6 | 18 | 18 | 22-Sep-18 | 12-Oct-18 | 1 |
| **Level 7** | | | | | | |
| SF13290 | Wood Deck on Level 7 | 6 | 6 | 13-Oct-18 | 19-Oct-18 | 1 |
| SF13510 | Exterior & Interior Framing Level 7 | 18 | 18 | 20-Oct-18 | 09-Nov-18 | 1 |
| **Roof** | | | | | | |
| SF7860 | Roof Work Start | 0 | 0 | 09-Nov-18 | | 5 |
| SF13690 | Wood Deck on Lower Roof | 4 | 4 | 10-Nov-18 | 15-Nov-18 | 7 |
| SF13650 | Exterior & Interior Framing Lower Roof | 14 | 14 | 16-Nov-18 | 04-Dec-18 | 21 |
| SF13710 | Wood Deck on Upper Roof | 6 | 6 | 05-Dec-18 | 11-Dec-18 | 21 |
| **Roof Work** | | | | | | |
| SF7840 | Plywood Sheathing Sub Floor (5/A8.04) | 8 | 8 | 09-Nov-18 | 21-Nov-18 | 5 |
| SF7820 | Cricket Framing (6/A8.04) | 3 | 3 | 26-Nov-18 | 28-Nov-18 | 5 |
| SF7810 | Plywood Sheathing over Cricket Framing (6/A8.04) | 3 | 3 | 28-Nov-18 | 30-Nov-18 | 5 |
| SF7800 | Mechanical Equipment Curb/Supports | 5 | 5 | 03-Dec-18 | 07-Dec-18 | 5 |



Legend:
— Remaining Level of Effort   ◆ ◆ Milestone
— Actual Level of Effort
— Actual Work
— Remaining Work
— Critical Remaining Work

Page 3 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF7790 | Roof Drains | 3 | 3 | 03-Dec-18 | 05-Dec-18 | 7 |
| SF7780 | PVC Membrane | 10 | 10 | 10-Dec-18 | 21-Dec-18 | 5 |
| SF7760 | Parapet Wall Flashings & Coping | 3 | 3 | 24-Dec-18 | 27-Dec-18 | 78 |
| SF7750 | Pedestal Paver System (6/A8.04) | 10 | 10 | 24-Dec-18 | 08-Jan-19 | 66 |
| SF7740 | Mechanical Equipment | 10 | 10 | 24-Dec-18 | 08-Jan-19 | 61 |
| SF7710 | Steel Trellis | 5 | 5 | 24-Dec-18 | 31-Dec-18 | 76 |
| SF7700 | Electrical for Mechanical Equipment | 10 | 10 | 09-Jan-19 | 22-Jan-19 | 61 |
| SF7690 | Pavers | 5 | 5 | 09-Jan-19 | 15-Jan-19 | 66 |
| SF7680 | Roof Work Complete | 0 | 0 | | 22-Jan-19 | 61 |

**Bldg Exterior Finish**

**North Ext. M1-Line (16th St.)**

**North Ext Floors 1 - 4**

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| EXT-1040 | Erect Scaffold - No.M1 1-4 | 5 | 5 | 24-Sep-18 | 28-Sep-18 | 74 |
| EXT-1100 | Sheathing - No.M1 1-4 | 12 | 12 | 01-Oct-18 | 16-Oct-18 | 79 |
| EXT-1160 | WRB Waterproofing - No.M1 1-4 | 8 | 8 | 17-Oct-18 | 26-Oct-18 | 79 |
| EXT-1220 | Furring Strips - No.M1 1-4 | 12 | 12 | 29-Oct-18 | 14-Nov-18 | 79 |
| EXT-1400 | Storefront - No.M1 1-4 | 6 | 6 | 15-Nov-18 | 26-Nov-18 | 79 |
| EXT-1420 | Aluminum Windows - No.M1 1-4 | 6 | 6 | 15-Nov-18 | 26-Nov-18 | 79 |
| EXT-1440 | Sliding Doors - No.M1 1-4 | 4 | 4 | 15-Nov-18 | 20-Nov-18 | 81 |
| EXT-1460 | Window Wall - No.M1 1-4 | 6 | 6 | 15-Nov-18 | 26-Nov-18 | 79 |
| EXT-1520 | Hardie Fiber Cement Panels - No.M1 1-4 | 15 | 15 | 27-Nov-18 | 17-Dec-18 | 79 |
| EXT-1660 | Galvanized Guardrail - No.M1 1-4 | 8 | 8 | 18-Dec-18 | 28-Dec-18 | 79 |
| EXT-1680 | Louvers - No.M1 1-4 | 4 | 4 | 18-Dec-18 | 21-Dec-18 | 83 |
| EXT-1700 | Cow Tongue Drains - No.M1 1-4 | 4 | 4 | 18-Dec-18 | 21-Dec-18 | 83 |
| EXT-1860 | Painting - No.M1 1-4 | 5 | 5 | 31-Dec-18 | 07-Jan-19 | 79 |
| EXT-2020 | Light Fixtures - No.M1 1-4 | 3 | 3 | 08-Jan-19 | 10-Jan-19 | 79 |

**North Ext Floors 5 - Roof**

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| EXT-1800 | Erect Scaffold - No.M1 5-Roof | 5 | 5 | 19-Dec-18 | 26-Dec-18 | 17 |
| EXT-1960 | Sheathing - No.M1 5-Roof | 12 | 12 | 27-Dec-18 | 14-Jan-19 | 20 |
| EXT-2180 | WRB Waterproofing - No.M1 5-Roof | 8 | 8 | 15-Jan-19 | 24-Jan-19 | 20 |
| EXT-2260 | Furring Strips - No.M1 5-Roof | 12 | 12 | 25-Jan-19 | 11-Feb-19 | 20 |

Legend:
- Remaining Level of Effort ◆ ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

Page 4 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| EXT-2500 | Storefront - No. M1 5-Roof | 6 | 6 | 12-Feb-19 | 20-Feb-19 | 20 |
| EXT-2520 | Aluminum Windows - No. M1 5-Roof | 6 | 6 | 12-Feb-19 | 20-Feb-19 | 20 |
| EXT-2540 | Sliding Doors - No. M1 5-Roof | 4 | 4 | 12-Feb-19 | 15-Feb-19 | 22 |
| EXT-2560 | Window Wall - No. M1 5-Roof | 6 | 6 | 12-Feb-19 | 20-Feb-19 | 20 |
| EXT-2640 | Hardie Fiber Cement Panels - No. M1 5-Roof | 15 | 15 | 21-Feb-19 | 13-Mar-19 | 20 |
| EXT-2880 | Galvanized Guardrail - No. M1 5-Roof | 8 | 8 | 14-Mar-19 | 25-Mar-19 | 20 |
| EXT-2900 | Louvers - No. M1 5-Roof | 4 | 4 | 14-Mar-19 | 19-Mar-19 | 24 |
| EXT-2920 | Cow Tongue Drains - No. M1 5-Roof | 4 | 4 | 14-Mar-19 | 19-Mar-19 | 24 |
| EXT-3020 | Painting - No. M1 5-Roof | 5 | 5 | 26-Mar-19 | 01-Apr-19 | 20 |
| EXT-3120 | Light Fixtures - No. M1 5-Roof | 3 | 3 | 02-Apr-19 | 04-Apr-19 | 20 |
| EXT-3180 | Remove Scaffold - No. M1 5-Roof | 5 | 5 | 05-Apr-19 | 11-Apr-19 | 20 |

**East Ext. 9.5-Line (Wisconsin St.)**

**East Ext Floors 1 - 4**

| | | | | | | |
|---|---|---|---|---|---|---|
| EXT-1020 | Erect Scaffold - E. 9.5 1-4 | 5 | 5 | 01-Oct-18 | 05-Oct-18 | 74 |
| EXT-1080 | Sheathing - E. 9.5 1-4 | 12 | 12 | 08-Oct-18 | 23-Oct-18 | 74 |
| EXT-1140 | WRB Waterproofing - E. 9.5 1-4 | 8 | 8 | 24-Oct-18 | 02-Nov-18 | 74 |
| EXT-1200 | Furring Strips - E. 9.5 1-4 | 12 | 12 | 05-Nov-18 | 21-Nov-18 | 74 |
| EXT-1320 | Storefront - E. 9.5 1-4 | 6 | 6 | 26-Nov-18 | 03-Dec-18 | 74 |
| EXT-1340 | Aluminum Windows - E. 9.5 1-4 | 6 | 6 | 26-Nov-18 | 03-Dec-18 | 74 |
| EXT-1360 | Sliding Doors - E. 9.5 1-4 | 4 | 4 | 26-Nov-18 | 29-Nov-18 | 76 |
| EXT-1380 | Window Wall - E. 9.5 1-4 | 6 | 6 | 26-Nov-18 | 03-Dec-18 | 74 |
| EXT-1500 | Hardie Fiber Cement Panels - E. 9.5 1-4 | 15 | 15 | 04-Dec-18 | 24-Dec-18 | 74 |
| EXT-1600 | Galvanized Guardrail - E. 9.5 1-4 | 8 | 8 | 26-Dec-18 | 07-Jan-19 | 74 |
| EXT-1620 | Louvers - E. 9.5 1-4 | 4 | 4 | 26-Dec-18 | 31-Dec-18 | 78 |
| EXT-1640 | Cow Tongue Drains - E. 9.5 1-4 | 4 | 4 | 26-Dec-18 | 31-Dec-18 | 78 |
| EXT-1840 | Painting - E. 9.5 1-4 | 5 | 5 | 08-Jan-19 | 14-Jan-19 | 74 |
| EXT-2000 | Light Fixtures - E. 9.5 1-4 | 3 | 3 | 15-Jan-19 | 17-Jan-19 | 74 |

**East Ext Floors 5 - Roof**

| | | | | | | |
|---|---|---|---|---|---|---|
| EXT-1780 | Erect Scaffold - E. 9.5 1-Roof | 5 | 5 | 27-Dec-18 | 03-Jan-19 | 17 |
| EXT-1940 | Sheathing - E. 9.5 1-Roof | 12 | 12 | 04-Jan-19 | 21-Jan-19 | 17 |
| EXT-2160 | WRB Waterproofing - E. 9.5 1-Roof | 8 | 8 | 21-Jan-19 | 30-Jan-19 | 17 |

Legend:
- ▬▬▬ Remaining Level of Effort    ◆ — ◆ Milestone
- ▬▬▬ Actual Level of Effort
- ▬▬▬ Actual Work
- ▬▬▬ Remaining Work
- ▬▬▬ Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| EXT-2240 | Furring Strips - E. 9.5 1-Roof | 12 | 12 | 30-Jan-19 | 14-Feb-19 | 17 |
| EXT-2420 | Storefront - E. 9.5 1-Roof | 6 | 6 | 15-Feb-19 | 25-Feb-19 | 17 |
| EXT-2440 | Aluminum Windows - E. 9.5 1-Roof | 6 | 6 | 15-Feb-19 | 25-Feb-19 | 17 |
| EXT-2460 | Sliding Doors - E. 9.5 1-Roof | 4 | 4 | 15-Feb-19 | 21-Feb-19 | 19 |
| EXT-2480 | Window Wall - E. 9.5 1-Roof | 6 | 6 | 15-Feb-19 | 25-Feb-19 | 17 |
| EXT-2620 | Hardie Fiber Cement Panels - E. 9.5 1-Roof | 15 | 15 | 26-Feb-19 | 18-Mar-19 | 17 |
| EXT-2820 | Galvanized Guardrail - E. 9.5 1-Roof | 8 | 8 | 19-Mar-19 | 28-Mar-19 | 17 |
| EXT-2840 | Louvers - E. 9.5 1-Roof | 4 | 4 | 19-Mar-19 | 22-Mar-19 | 21 |
| EXT-2860 | Cow Tongue Drains - E. 9.5 1-Roof | 4 | 4 | 19-Mar-19 | 22-Mar-19 | 21 |
| EXT-3000 | Painting - E. 9.5 1-Roof | 5 | 5 | 29-Mar-19 | 04-Apr-19 | 17 |
| EXT-3100 | Light Fixtures - E. 9.5 1-Roof | 3 | 3 | 05-Apr-19 | 09-Apr-19 | 17 |
| EXT-3160 | Remove Scaffold - E. 9.5 1-Roof | 5 | 5 | 10-Apr-19 | 16-Apr-19 | 17 |
| **South Ext. A-Line** | | | | | | |
| EXT-1760 | Erect Scaffold - So.A Line | 5 | 5 | 07-Dec-18 | 13-Dec-18 | 17 |
| EXT-1920 | Sheathing - So.A Line | 12 | 12 | 14-Dec-18 | 02-Jan-19 | 24 |
| EXT-2140 | WRB Waterproofing - So.A Line | 8 | 8 | 03-Jan-19 | 14-Jan-19 | 24 |
| EXT-2220 | Furring Strips - So.A Line | 12 | 12 | 15-Jan-19 | 30-Jan-19 | 51 |
| EXT-2280 | Lath - So.A Line | 18 | 18 | 15-Jan-19 | 07-Feb-19 | 24 |
| EXT-2400 | Aluminum Windows - So.A Line | 6 | 6 | 31-Jan-19 | 07-Feb-19 | 51 |
| EXT-2660 | Scratch - So.A Line | 5 | 5 | 08-Feb-19 | 14-Feb-19 | 24 |
| EXT-2680 | Brown - So.A Line | 5 | 5 | 15-Feb-19 | 22-Feb-19 | 24 |
| EXT-2720 | Cure - So.A Line | 7 | 7 | 25-Feb-19 | 05-Mar-19 | 24 |
| EXT-2960 | Finish Coat | 10 | 10 | 06-Mar-19 | 19-Mar-19 | 24 |
| EXT-3060 | Hardie Fiber Cement Panels - So.A Line | 15 | 15 | 20-Mar-19 | 09-Apr-19 | 24 |
| EXT-3280 | Galvanized Guardrail- So.A Line | 8 | 8 | 10-Apr-19 | 19-Apr-19 | 24 |
| EXT-3300 | Louvers - So.A Line | 4 | 4 | 10-Apr-19 | 15-Apr-19 | 28 |
| EXT-3320 | Cow Tongue Drains - So.A Line | 4 | 4 | 10-Apr-19 | 15-Apr-19 | 28 |
| EXT-3380 | Painting - So.A Line | 5 | 5 | 22-Apr-19 | 26-Apr-19 | 24 |
| EXT-3400 | Light Fixtures - So.A Line | 3 | 3 | 29-Apr-19 | 01-May-19 | 24 |
| EXT-3420 | Remove Scaffold - So.A Line | 5 | 5 | 02-May-19 | 08-May-19 | 24 |
| **West Ext. 1-Line (Carolina St.)** | | | | | | |

Legend:
- Remaining Level of Effort ◆ ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

Page 6 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| **West Ext Floors 1 -4** | | | | | | |
| EXT-1000 | Erect Scaffold - W.1 1-4 | 5 | 5 | 17-Sep-18 | 21-Sep-18 | 74 |
| EXT-1060 | Sheathing - W.1 1-4 | 12 | 12 | 24-Sep-18 | 09-Oct-18 | 84 |
| EXT-1120 | WRB Waterproofing - W.1 1-4 | 8 | 8 | 10-Oct-18 | 19-Oct-18 | 84 |
| EXT-1180 | Furring Strips - W.1 1-4 | 12 | 12 | 22-Oct-18 | 06-Nov-18 | 84 |
| EXT-1240 | Storefront - W.1 1-4 | 6 | 6 | 07-Nov-18 | 15-Nov-18 | 84 |
| EXT-1260 | Aluminum Windows - W.1 1-4 | 6 | 6 | 07-Nov-18 | 15-Nov-18 | 84 |
| EXT-1280 | Sliding Doors - W.1 1-4 | 4 | 4 | 07-Nov-18 | 13-Nov-18 | 86 |
| EXT-1300 | Window Wall - W.1 1-4 | 6 | 6 | 07-Nov-18 | 15-Nov-18 | 84 |
| EXT-1480 | Hardie Fiber Cement Panels - W.1 1-4 | 15 | 15 | 16-Nov-18 | 10-Dec-18 | 84 |
| EXT-1540 | Galvanized Guardrail - W.1 1-4 | 8 | 8 | 11-Dec-18 | 20-Dec-18 | 84 |
| EXT-1560 | Louvers - W.1 1-4 | 4 | 4 | 11-Dec-18 | 14-Dec-18 | 88 |
| EXT-1580 | Cow Tongue Drains - W.1 1-4 | 4 | 4 | 11-Dec-18 | 14-Dec-18 | 88 |
| EXT-1820 | Painting - W.1 1-4 | 5 | 5 | 21-Dec-18 | 28-Dec-18 | 84 |
| EXT-1980 | Light Fixtures - W.1 1-4 | 3 | 3 | 31-Dec-18 | 03-Jan-19 | 84 |
| **West Ext Floors 5 - Roof** | | | | | | |
| EXT-1720 | Erect Scaffold - W.1 1-Roof | 5 | 5 | 12-Dec-18 | 18-Dec-18 | 17 |
| EXT-1880 | Sheathing - W.1 1-Roof | 12 | 12 | 19-Dec-18 | 07-Jan-19 | 25 |
| EXT-2100 | WRB Waterproofing - W.1 1-Roof | 8 | 8 | 08-Jan-19 | 17-Jan-19 | 25 |
| EXT-2200 | Furring Strips - W.1 1-Roof | 12 | 12 | 18-Jan-19 | 04-Feb-19 | 25 |
| EXT-2320 | Storefront - W.1 1-Roof | 6 | 6 | 05-Feb-19 | 12-Feb-19 | 25 |
| EXT-2340 | Aluminum Windows - W.1 1-Roof | 6 | 6 | 05-Feb-19 | 12-Feb-19 | 25 |
| EXT-2360 | Sliding Doors - W.1 1-Roof | 4 | 4 | 05-Feb-19 | 08-Feb-19 | 27 |
| EXT-2380 | Window Wall - W.1 1-Roof | 6 | 6 | 05-Feb-19 | 12-Feb-19 | 25 |
| EXT-2580 | Hardie Fiber Cement Panels - W.1 1-Roof | 15 | 15 | 13-Feb-19 | 06-Mar-19 | 25 |
| EXT-2760 | Galvanized Guardrail - W.1 1-Roof | 8 | 8 | 07-Mar-19 | 18-Mar-19 | 25 |
| EXT-2780 | Louvers - W.1 1-Roof | 4 | 4 | 07-Mar-19 | 12-Mar-19 | 29 |
| EXT-2800 | Cow Tongue Drains - W.1 1-Roof | 4 | 4 | 07-Mar-19 | 12-Mar-19 | 29 |
| EXT-2980 | Painting - W.1 1-Roof | 5 | 5 | 19-Mar-19 | 25-Mar-19 | 25 |
| EXT-3080 | Light Fixtures - W.1 1-Roof | 3 | 3 | 26-Mar-19 | 28-Mar-19 | 25 |
| EXT-3140 | Remove Scaffold - W.1 1-Roof | 5 | 5 | 29-Mar-19 | 04-Apr-19 | 25 |

Page 7 of 25
PBL 06 - 1301 16th St. San Francisco Apts 11.27.17
* WBS Layout
Data Date 16-Nov-17



| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| **Courtyard** | | | | | | |
| EXT-1740 | Erect Scaffold - Int. Crtyard | 5 | 5 | 14-Dec-18 | 20-Dec-18 | 17 |
| EXT-1900 | Sheathing - Int. Crtyard | 10 | 10 | 21-Dec-18 | 07-Jan-19 | 17 |
| EXT-2120 | WRB Waterproofing - Int. Crtyard | 8 | 8 | 07-Jan-19 | 16-Jan-19 | 17 |
| EXT-2300 | Lath - Int. Crtyard | 15 | 15 | 17-Jan-19 | 06-Feb-19 | 17 |
| EXT-2600 | Aluminum Windows - Int. Crtyard | 6 | 6 | 04-Feb-19 | 11-Feb-19 | 17 |
| EXT-2700 | Scratch - Int. Crtyard | 5 | 5 | 12-Feb-19 | 19-Feb-19 | 17 |
| EXT-2740 | Brown - Int. Crtyard | 5 | 5 | 20-Feb-19 | 26-Feb-19 | 17 |
| EXT-2940 | Cure - Int. Crtyard | 7 | 7 | 27-Feb-19 | 07-Mar-19 | 17 |
| EXT-3040 | Finish Coat | 8 | 8 | 08-Mar-19 | 19-Mar-19 | 17 |
| EXT-3200 | Galvanized Guardrail - Int. Crtyard | 8 | 8 | 20-Mar-19 | 29-Mar-19 | 17 |
| EXT-3220 | Louvers - Int. Crtyard | 4 | 4 | 20-Mar-19 | 25-Mar-19 | 21 |
| EXT-3240 | Cow Tongue Drains - Int. Crtyard | 4 | 4 | 20-Mar-19 | 25-Mar-19 | 21 |
| EXT-3260 | Painting - Int. Crtyard | 5 | 5 | 01-Apr-19 | 05-Apr-19 | 17 |
| EXT-3340 | Light Fixtures - Int. Crtyard | 3 | 3 | 08-Apr-19 | 10-Apr-19 | 17 |
| EXT-3360 | Remove Scaffold - Int. Crtyard | 5 | 5 | 11-Apr-19 | 17-Apr-19 | 17 |
| **Interior Construction** | | | | | | |
| **Elevator Machine Room & Elevator CAB** | | | | | | |
| **Elevator Machine Room** | | | | | | |
| SF4180 | Elevator Machine Rooms (Elevators 1,2) Work Start | 0 | 0 | 24-Dec-18 | | 66 |
| SF4160 | Elevator Equipment (Elevators 1,2) | 15 | 15 | 24-Dec-18 | 15-Jan-19 | 66 |
| SF4150 | Elevator Cab (Elevators 1,2) | 10 | 10 | 24-Dec-18 | 08-Jan-19 | 71 |
| SF4140 | Elevator Machine Rooms (Elevators 1,2) Work Complete | 0 | 0 | | 15-Jan-19 | 66 |
| **Elevator Finishes** | | | | | | |
| SF4130 | Elevator Finishes Work Start | 0 | 0 | 23-Jan-19 | | 61 |
| SF4120 | Elevator # 1 Finishes (Doors, Frames, Push Buttons, Etc.) | 30 | 30 | 23-Jan-19 | 06-Mar-19 | 61 |
| SF4110 | Elevator # 2 Finishes (Doors, Frames, Push Buttons, Etc.) | 30 | 30 | 23-Jan-19 | 06-Mar-19 | 61 |
| SF4100 | Elevator Testing and Inspection | 10 | 10 | 07-Mar-19 | 20-Mar-19 | 61 |
| **Level 1 Interior Build-Out** | | | | | | |
| **Rough - Level 1** | | | | | | |
| SF1920 | Level 1 Rough Interior Construction Work Start(LV1) | 0 | 0 | 20-Jul-18 | | 131 |

Legend:
- Remaining Level of Effort ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF1910 | Metal Stud Framing (A2.1)(LV1) | 15 | 15 | 20-Jul-18 | 09-Aug-18 | 131 |
| SF1860 | Rough Mechanical (M1.2)(LV1) | 15 | 15 | 27-Jul-18 | 16-Aug-18 | 131 |
| SF1850 | Rough Plumbing Including Setting Tubs & Showers (P2.2A)(LV1) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 136 |
| SF1840 | Rough Fire Sprinkler (LV1) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 136 |
| SF1830 | Rough Electrical/Lighting (E2.10)(LV1) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 136 |
| SF1820 | Rough Communication(LV1) | 8 | 8 | 27-Jul-18 | 07-Aug-18 | 138 |
| SF1810 | Rough Fire Alarm (FA-503)(LV1) | 8 | 8 | 27-Jul-18 | 07-Aug-18 | 138 |
| SF1800 | Rough HVAC Control (LV1) | 5 | 5 | 27-Jul-18 | 02-Aug-18 | 141 |
| SF1880 | Door Frames(LV1) | 3 | 3 | 07-Aug-18 | 09-Aug-18 | 144 |
| SF1790 | MEP Rough-In & Rough Framing Inspection(LV1) | 1 | 1 | 17-Aug-18 | 17-Aug-18 | 131 |
| SF1780 | Fire Caulking(LV1) | 3 | 3 | 20-Aug-18 | 22-Aug-18 | 131 |
| SF1740 | Fire Caulking Inspection(LV1) | 1 | 1 | 23-Aug-18 | 23-Aug-18 | 131 |
| SF1730 | Insulation(LV1) | 3 | 3 | 24-Aug-18 | 28-Aug-18 | 131 |
| SF1720 | Drywall-Standard(LV1) | 15 | 15 | 11-Mar-19 | 29-Mar-19 | 0 |
| SF1710 | Drywall-Water Resistant(LV1) | 15 | 15 | 11-Mar-19 | 29-Mar-19 | 0 |
| SF1700 | Drywall Nailing Inspection(LV1) | 1 | 1 | 01-Apr-19 | 01-Apr-19 | 0 |
| SF1690 | Tape and Texture(LV1) | 10 | 10 | 02-Apr-19 | 15-Apr-19 | 0 |
| *Finish - Level 1* | | | | | | |
| SF1680 | Doors(LV1) | 10 | 10 | 16-Apr-19 | 29-Apr-19 | 22 |
| SF1660 | Paint(LV1) | 10 | 10 | 16-Apr-19 | 29-Apr-19 | 0 |
| SF1670 | Hardware(Doors )(LV1) | 10 | 10 | 19-Apr-19 | 02-May-19 | 22 |
| SF1630 | Wall Covering(LV1) | 8 | 8 | 30-Apr-19 | 09-May-19 | 17 |
| SF1610 | Suspended Wood Ceiling (Pre-Finished) (A6.75)(LV1) | 8 | 8 | 30-Apr-19 | 09-May-19 | 7 |
| SF1600 | Finish Mechanical (M1.2)(LV1) | 15 | 15 | 30-Apr-19 | 20-May-19 | 10 |
| SF1590 | Finish Plumbing (P2.2A)(LV1) | 10 | 10 | 30-Apr-19 | 13-May-19 | 15 |
| SF1580 | Finish Fire Sprinkler (LV1) | 10 | 10 | 30-Apr-19 | 13-May-19 | 15 |
| SF1570 | Finish Electrical/Lighting (E2.10)(LV1) | 20 | 20 | 30-Apr-19 | 28-May-19 | 5 |
| SF1560 | Finish Communication(LV1) | 8 | 8 | 30-Apr-19 | 09-May-19 | 17 |
| SF1550 | Finish Fire Alarm (FA-503)(LV1) | 8 | 8 | 30-Apr-19 | 09-May-19 | 17 |
| SF1530 | Finish HVAC Control (LV1) | 5 | 5 | 30-Apr-19 | 06-May-19 | 20 |
| SF1500 | Ceramic Tiles (LV1) | 10 | 10 | 30-Apr-19 | 13-May-19 | 0 |

Legend:
- Remaining Level of Effort ◆    ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF1460 | Restroom Accessories(LV1) | 4 | 4 | 30-Apr-19 | 03-May-19 | 21 |
| SF1440 | Signage(LV1) | 4 | 4 | 30-Apr-19 | 03-May-19 | 21 |
| SF1420 | Window Treatment (A6.72)(LV1) | 8 | 8 | 30-Apr-19 | 09-May-19 | 17 |
| SF1450 | Kitchen Accessories(LV1) | 4 | 4 | 30-Apr-19 | 03-May-19 | 21 |
| SF1510 | Floor Covering(LV1) | 10 | 10 | 10-May-19 | 23-May-19 | 7 |
| SF1480 | Cabinetry (LV1) | 10 | 10 | 14-May-19 | 28-May-19 | 0 |
| SF1470 | Quartz Counter Tops (A6.43)(LV1) | 5 | 5 | 29-May-19 | 04-Jun-19 | 0 |
| SF1410 | Preliminary Clean - Level 1(LV1) | 2 | 2 | 05-Jun-19 | 06-Jun-19 | 0 |
| **Inspection and Acceptance - Level 1** | | | | | | |
| SF1130 | Walk-thru and issue punch list(LV1) | 1 | 1 | 07-Jun-19 | 07-Jun-19 | 0 |
| SF1120 | Punch list corrections(LV1) | 5 | 5 | 10-Jun-19 | 14-Jun-19 | 0 |
| SF1110 | Final (2nd) walk-thru to sign off corrections(LV1) | 1 | 1 | 17-Jun-19 | 17-Jun-19 | 0 |
| SF1080 | Ready for Final Inspection LV1(LV1) | 0 | 0 | | 17-Jun-19 | 0 |
| **Level 2 Interior Build-Out** | | | | | | |
| **Rough - Level 2** | | | | | | |
| SF1070 | Level 2 Rough Interior Construction Work Start(LV2) | 0 | 0 | 20-Jul-18 | | 118 |
| SF1060 | Metal Stud Framing (A2.2)(LV2) | 20 | 20 | 20-Jul-18 | 16-Aug-18 | 118 |
| SF1030 | Rough Mechanical (M1.3)(LV2) | 20 | 20 | 27-Jul-18 | 23-Aug-18 | 118 |
| SF1020 | Rough Plumbing Including Setting Tubs & Showers (P2.3)(LV2) | 15 | 15 | 27-Jul-18 | 16-Aug-18 | 123 |
| SF1010 | Rough Fire Sprinkler (LV2) | 15 | 15 | 27-Jul-18 | 16-Aug-18 | 123 |
| SF1000 | Rough Electrical/Lighting (E2.20)(LV2) | 20 | 20 | 27-Jul-18 | 23-Aug-18 | 118 |
| SF14170 | Rough Communication(LV2) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 128 |
| SF14160 | Rough Fire Alarm (FA-504)(LV2) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 128 |
| SF14140 | Rough HVAC Control (LV2) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 128 |
| SF1050 | Door Frames(LV2) | 4 | 4 | 13-Aug-18 | 16-Aug-18 | 132 |
| SF14130 | MEP Rough-In & Rough Framing Inspection(LV2) | 1 | 1 | 24-Aug-18 | 24-Aug-18 | 118 |
| SF14120 | Fire Caulking(LV2) | 3 | 3 | 27-Aug-18 | 29-Aug-18 | 118 |
| SF14100 | Fire Caulking Inspection(LV2) | 1 | 1 | 30-Aug-18 | 30-Aug-18 | 118 |
| SF14090 | Insulation(LV2) | 4 | 4 | 31-Aug-18 | 06-Sep-18 | 118 |
| SF14080 | Drywall-Standard(LV2) | 15 | 15 | 28-Feb-19 | 20-Mar-19 | 0 |
| SF14060 | Drywall-Water Resistant(LV2) | 15 | 15 | 28-Feb-19 | 20-Mar-19 | 0 |



Legend:
- Remaining Level of Effort
- ◆ ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | Gantt |
|---|---|---|---|---|---|---|---|
| SF14050 | Drywall Nailing Inspection(LV2) | 1 | 1 | 21-Mar-19 | 21-Mar-19 | 6 | Drywall Nailing Inspection(LV2) |
| SF14040 | Tape and Texture(LV2) | 10 | 10 | 22-Mar-19 | 04-Apr-19 | 6 | Tape and Texture(LV2) |
| **Finish - Level 2** | | | | | | | |
| SF14030 | Doors (LV2) | 10 | 10 | 05-Apr-19 | 18-Apr-19 | 28 | Doors(LV2) |
| SF14000 | Paint (LV2) | 10 | 10 | 05-Apr-19 | 18-Apr-19 | 6 | Paint (LV2) |
| SF14010 | Hardware (Doors )(LV2) | 10 | 10 | 10-Apr-19 | 23-Apr-19 | 28 | Hardware (Doors )(LV2) |
| SF13980 | Wall Covering(LV2) | 8 | 8 | 19-Apr-19 | 30-Apr-19 | 23 | Wall Covering(LV2) |
| SF13970 | Finish Mechanical (M1.3)(LV2) | 15 | 15 | 19-Apr-19 | 09-May-19 | 16 | Finish Mechanical (M1.3)(LV2) |
| SF13940 | Finish Plumbing (P2.3)(LV2) | 10 | 10 | 19-Apr-19 | 02-May-19 | 21 | Finish Plumbing (P2.3)(LV2) |
| SF13930 | Finish Fire Sprinkler (LV2) | 10 | 10 | 19-Apr-19 | 02-May-19 | 21 | Finish Fire Sprinkler (LV2) |
| SF13920 | Finish Electrical/Lighting (E2.20)(LV2) | 15 | 15 | 19-Apr-19 | 09-May-19 | 16 | Finish Electrical/Lighting (E2.20)(LV2) |
| SF13910 | Finish Communication(LV2) | 10 | 10 | 19-Apr-19 | 02-May-19 | 21 | Finish Communication(LV2) |
| SF13900 | Finish Fire Alarm (FA-503)(LV2) | 10 | 10 | 19-Apr-19 | 02-May-19 | 21 | Finish Fire Alarm (FA-503)(LV2) |
| SF13890 | Finish HVAC Control (LV2) | 5 | 5 | 19-Apr-19 | 25-Apr-19 | 26 | Finish HVAC Control (LV2) |
| SF13870 | Floor Covering(LV2) | 15 | 15 | 19-Apr-19 | 09-May-19 | 16 | Floor Covering(LV2) |
| SF13850 | Ceramic Tiles (LV2) | 15 | 15 | 19-Apr-19 | 09-May-19 | 6 | Ceramic Tiles (LV2) |
| SF13820 | Restroom Accessories(LV2) | 5 | 5 | 19-Apr-19 | 25-Apr-19 | 26 | Restroom Accessories(LV2) |
| SF13800 | Signage(LV2) | 4 | 4 | 19-Apr-19 | 24-Apr-19 | 27 | Signage(LV2) |
| SF13790 | Window Treatment (A6.72)(LV2) | 8 | 8 | 19-Apr-19 | 30-Apr-19 | 23 | Window Treatment (A6.72)(LV2) |
| SF13810 | Kitchen Accessories(LV2) | 5 | 5 | 19-Apr-19 | 25-Apr-19 | 26 | Kitchen Accessories(LV2) |
| SF13830 | Cabinetry (LV2) | 10 | 10 | 10-May-19 | 23-May-19 | 6 | Cabinetry (LV2) |
| SF13780 | Preliminary Clean - Level 2(LV2) | 2 | 2 | 24-May-19 | 28-May-19 | 6 | Preliminary Clean - Level 2(LV2) |
| **Inspection and Acceptance - Level 2** | | | | | | | |
| SF13570 | Walk-thru and issue punch list(LV2) | 1 | 1 | 29-May-19 | 29-May-19 | 6 | Walk-thru and issue punch list(LV2) |
| SF13560 | Punch list corrections(LV2) | 5 | 5 | 30-May-19 | 05-Jun-19 | 6 | Punch list corrections(LV2) |
| SF13550 | Final (2nd) walk-thru to sign off corrections(LV2) | 1 | 1 | 06-Jun-19 | 06-Jun-19 | 6 | Final (2nd) walk-thru to sign off correctio... |
| SF13540 | Ready for Final Inspection LV 2(LV2) | 0 | 0 | | 06-Jun-19 | 6 | Ready for Final Inspection LV 2(LV2) |
| **Level 3 Interior Build-Out** | | | | | | | |
| **Rough - Level 3** | | | | | | | |
| SF13530 | Level 3 Rough Interior Construction Work Start(LV3) | 0 | 0 | 20-Jul-18 | | 111 | Level 3 Rough Interior Construction Work Start(LV3) |
| SF13520 | Wood Stud Framing (A2.3)(LV3) | 20 | 20 | 20-Jul-18 | 16-Aug-18 | 111 | Wood Stud Framing (A2.3)(LV3) |

Legend:
- Remaining Level of Effort ◆
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work
- ◆ Milestone

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF13480 | Rough Mechanical (M1.4)(LV3) | 20 | 20 | 27-Jul-18 | 23-Aug-18 | 111 |
| SF13460 | Rough Plumbing Including Setting Tubs & Showers (P2.4)(LV3) | 15 | 15 | 27-Jul-18 | 16-Aug-18 | 116 |
| SF13450 | Rough Fire Sprinkler (LV3) | 15 | 15 | 27-Jul-18 | 16-Aug-18 | 116 |
| SF13440 | Rough Electrical/Lighting (E2.30)(LV3) | 20 | 20 | 27-Jul-18 | 23-Aug-18 | 111 |
| SF13430 | Rough Communication(LV3) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 121 |
| SF13420 | Rough Fire Alarm (FA-506)(LV3) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 121 |
| SF13410 | Rough HVAC Control (LV3) | 10 | 10 | 27-Jul-18 | 09-Aug-18 | 121 |
| SF13500 | Door Frames(LV3) | 4 | 4 | 13-Aug-18 | 16-Aug-18 | 124 |
| SF13390 | MEP Rough-In & Rough Framing Inspection(LV3) | 1 | 1 | 24-Aug-18 | 24-Aug-18 | 111 |
| SF13380 | Fire Caulking(LV3) | 3 | 3 | 27-Aug-18 | 29-Aug-18 | 111 |
| SF13360 | Fire Caulking Inspection (LV3) | 1 | 1 | 30-Aug-18 | 30-Aug-18 | 111 |
| SF13350 | Insulation(LV3) | 3 | 3 | 31-Aug-18 | 05-Sep-18 | 111 |
| SF13330 | Drywall-Standard(LV3) | 15 | 15 | 15-Feb-19 | 08-Mar-19 | 0 |
| SF13320 | Drywall-Water Resistant(LV3) | 15 | 15 | 15-Feb-19 | 08-Mar-19 | 0 |
| SF13310 | Drywall Nailing Inspection(LV3) | 1 | 1 | 11-Mar-19 | 11-Mar-19 | 14 |
| SF13300 | Tape and Texture(LV3) | 10 | 10 | 12-Mar-19 | 25-Mar-19 | 14 |
| **Finish - Level 3** | | | | | | |
| SF13280 | Doors(LV3) | 10 | 10 | 26-Mar-19 | 08-Apr-19 | 36 |
| SF13260 | Paint(LV3) | 10 | 10 | 26-Mar-19 | 08-Apr-19 | 14 |
| SF13270 | Hardware(Doors )(LV3) | 10 | 10 | 29-Mar-19 | 11-Apr-19 | 36 |
| SF13240 | Wall Covering(LV3) | 8 | 8 | 09-Apr-19 | 18-Apr-19 | 31 |
| SF13230 | Finish Mechanical (M1.4) (LV3) | 15 | 15 | 09-Apr-19 | 29-Apr-19 | 24 |
| SF13220 | Finish Plumbing (P2.4)(LV3) | 10 | 10 | 09-Apr-19 | 22-Apr-19 | 29 |
| SF13200 | Finish Fire Sprinkler (LV3) | 15 | 15 | 09-Apr-19 | 29-Apr-19 | 24 |
| SF13190 | Finish Electrical/Lighting (E2.30)(LV3) | 15 | 15 | 09-Apr-19 | 29-Apr-19 | 24 |
| SF13170 | Finish Communication(LV3) | 10 | 10 | 09-Apr-19 | 22-Apr-19 | 29 |
| SF13160 | Finish Fire Alarm (FA-505)(LV3) | 10 | 10 | 09-Apr-19 | 22-Apr-19 | 29 |
| SF13150 | Finish HVAC Control (LV3) | 5 | 5 | 09-Apr-19 | 15-Apr-19 | 34 |
| SF13140 | Floor Covering(LV3) | 15 | 15 | 09-Apr-19 | 29-Apr-19 | 24 |
| SF13210 | Ceramic Tiles (LV3) | 15 | 15 | 09-Apr-19 | 29-Apr-19 | 14 |
| SF13100 | Restroom Accessories(LV3) | 5 | 5 | 09-Apr-19 | 15-Apr-19 | 34 |



Legend:
- Remaining Level of Effort ◆ ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

PBL 06 - 1301 16th St. San Francisco Apts 11.27.17
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF13050 | Signage(LV3) | 4 | 4 | 09-Apr-19 | 12-Apr-19 | 35 |
| SF13040 | Window Treatment (A6.72)(LV3) | 8 | 8 | 09-Apr-19 | 18-Apr-19 | 31 |
| SF13090 | Kitchen Accessories(LV3) | 5 | 5 | 09-Apr-19 | 15-Apr-19 | 34 |
| SF13110 | Cabinetry (LV3) | 10 | 10 | 30-Apr-19 | 13-May-19 | 14 |
| SF13030 | Preliminary Clean - Level 3(LV3) | 2 | 2 | 14-May-19 | 15-May-19 | 14 |
| *Inspection and Acceptance - Level 3* | | | | | | |
| SF12920 | Walk-thru and issue punch list(LV3) | 1 | 1 | 16-May-19 | 16-May-19 | 14 |
| SF12910 | Punch list corrections(LV3) | 5 | 5 | 17-May-19 | 23-May-19 | 14 |
| SF12900 | Final (2nd) walk-thru to sign off corrections(LV3) | 1 | 1 | 24-May-19 | 24-May-19 | 14 |
| SF12890 | Ready for Final Inspection LV 3(LV3) | 0 | 0 | | 24-May-19 | 14 |
| *Level 4 Interior Build-Out* | | | | | | |
| *Rough - Level 4* | | | | | | |
| SF12870 | Level 4 Rough Interior Construction Work Start(LV4) | 0 | 0 | 17-Aug-18 | | 82 |
| SF12860 | Wood Stud Framing (A2.4)(LV4) | 20 | 20 | 17-Aug-18 | 14-Sep-18 | 82 |
| SF12830 | Rough Mechanical (M1.5)(LV4) | 20 | 20 | 24-Aug-18 | 21-Sep-18 | 82 |
| SF12820 | Rough Plumbing Including Setting Tubs & Showers (P2.5)(LV4) | 15 | 15 | 24-Aug-18 | 14-Sep-18 | 87 |
| SF12810 | Rough Fire Sprinkler (LV4) | 15 | 15 | 24-Aug-18 | 14-Sep-18 | 87 |
| SF12790 | Rough Electrical/Lighting (E2.40)(LV4) | 20 | 20 | 24-Aug-18 | 21-Sep-18 | 82 |
| SF12780 | Rough Communication(LV4) | 10 | 10 | 24-Aug-18 | 07-Sep-18 | 92 |
| SF12770 | Rough Fire Alarm (FA-506)(LV4) | 10 | 10 | 24-Aug-18 | 07-Sep-18 | 92 |
| SF12750 | Rough HVAC Control (LV4) | 10 | 10 | 24-Aug-18 | 07-Sep-18 | 92 |
| SF12850 | Door Frames(LV4) | 4 | 4 | 11-Sep-18 | 14-Sep-18 | 96 |
| SF12740 | MEP Rough-In & Rough Framing Inspection(LV4) | 1 | 1 | 24-Sep-18 | 24-Sep-18 | 82 |
| SF12720 | Fire Caulking(LV4) | 3 | 3 | 25-Sep-18 | 27-Sep-18 | 82 |
| SF12710 | Fire Caulking Inspection(LV4) | 1 | 1 | 28-Sep-18 | 28-Sep-18 | 82 |
| SF12700 | Insulation(LV4) | 4 | 4 | 01-Oct-18 | 04-Oct-18 | 82 |
| SF12690 | Drywall-Standard(LV4) | 15 | 15 | 05-Feb-19 | 26-Feb-19 | 0 |
| SF12680 | Drywall-Water Resistant(LV4) | 15 | 15 | 05-Feb-19 | 26-Feb-19 | 0 |
| SF12660 | Drywall Nailing Inspection(LV4) | 1 | 1 | 27-Feb-19 | 27-Feb-19 | 11 |
| SF12650 | Tape and Texture(LV4) | 10 | 10 | 28-Feb-19 | 13-Mar-19 | 11 |
| *Finish - Level 4* | | | | | | |

Legend:
- Remaining Level of Effort — ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF12630 | Doors(LV4) | 10 | 10 | 14-Mar-19 | 27-Mar-19 | 33 |
| SF12600 | Paint (LV4) | 10 | 10 | 14-Mar-19 | 27-Mar-19 | 11 |
| SF12610 | Hardware(Doors )(LV4) | 10 | 10 | 19-Mar-19 | 01-Apr-19 | 33 |
| SF12590 | Wall Covering(LV4) | 8 | 8 | 28-Mar-19 | 08-Apr-19 | 28 |
| SF12580 | Finish Mechanical (M1.2)(LV4) | 15 | 15 | 28-Mar-19 | 17-Apr-19 | 21 |
| SF12570 | Finish Plumbing (P2.2A)(LV4) | 10 | 10 | 28-Mar-19 | 10-Apr-19 | 26 |
| SF12560 | Finish Fire Sprinkler (LV4) | 15 | 15 | 28-Mar-19 | 17-Apr-19 | 21 |
| SF12550 | Finish Electrical/Lighting (E2.10)(LV4) | 15 | 15 | 28-Mar-19 | 17-Apr-19 | 21 |
| SF12530 | Finish Communication(LV4) | 10 | 10 | 28-Mar-19 | 10-Apr-19 | 26 |
| SF12500 | Finish Fire Alarm (FA-503)(LV4) | 10 | 10 | 28-Mar-19 | 10-Apr-19 | 26 |
| SF12490 | Finish HVAC Control (LV4) | 5 | 5 | 28-Mar-19 | 03-Apr-19 | 31 |
| SF12480 | Floor Covering(LV4) | 15 | 15 | 28-Mar-19 | 17-Apr-19 | 21 |
| SF12470 | Ceramic Tiles (LV4) | 15 | 15 | 28-Mar-19 | 17-Apr-19 | 11 |
| SF12450 | Restroom Accessories(LV4) | 5 | 5 | 28-Mar-19 | 03-Apr-19 | 31 |
| SF12430 | Signage(LV4) | 4 | 4 | 28-Mar-19 | 02-Apr-19 | 32 |
| SF12420 | Window Treatment (A6.72)(LV4) | 8 | 8 | 28-Mar-19 | 08-Apr-19 | 28 |
| SF12440 | Kitchen Accessories(LV4) | 5 | 5 | 28-Mar-19 | 03-Apr-19 | 31 |
| SF12460 | Cabinetry (LV4) | 10 | 10 | 18-Apr-19 | 01-May-19 | 11 |
| SF12380 | Preliminary Clean - Level 4(LV4) | 2 | 2 | 02-May-19 | 03-May-19 | 11 |
| **Inspection and Acceptance - Level 4** | | | | | | |
| SF12370 | Contractor Punchout(LV4) | 1 | 1 | 06-May-19 | 06-May-19 | 11 |
| SF12360 | Contractor Punchout Punchlist Correction(LV4) | 5 | 5 | 07-May-19 | 13-May-19 | 11 |
| SF12350 | System Testing(LV4) | 5 | 5 | 14-May-19 | 20-May-19 | 11 |
| SF12340 | Walk-thru and issue punch list(LV4) | 1 | 1 | 21-May-19 | 21-May-19 | 11 |
| SF12330 | Punch list corrections(LV4) | 5 | 5 | 22-May-19 | 29-May-19 | 11 |
| SF12320 | Final (2nd) walk-thru to sign off corrections(LV4) | 1 | 1 | 30-May-19 | 30-May-19 | 11 |
| SF12310 | Ready for Final Inspection LV 4(LV4) | 0 | 0 | | 30-May-19 | 11 |
| **Level 5 Interior Build-Out** | | | | | | |
| **Rough - Level 5** | | | | | | |
| SF12300 | Level 5 Rough Interior Construction Work Start(LV5) | 0 | 0 | 17-Sep-18 | | 54 |
| SF12280 | Wood Stud Framing (A2.5)(LV5) | 20 | 20 | 17-Sep-18 | 12-Oct-18 | 54 |

Legend:
- ◆ ◆ Remaining Level of Effort / Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

PBL 06 - 1301 16th St. San Francisco Apts 11.27.17
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF12240 | Rough Mechanical (M1.6)(LV5) | 20 | 20 | 24-Sep-18 | 19-Oct-18 | 54 |
| SF12230 | Rough Plumbing Including Setting Tubs & Showers (P2.6)(LV5) | 15 | 15 | 24-Sep-18 | 12-Oct-18 | 59 |
| SF12220 | Rough Fire Sprinkler (LV5) | 15 | 15 | 24-Sep-18 | 12-Oct-18 | 59 |
| SF12210 | Rough Electrical/Lighting (E2.50)(LV5) | 20 | 20 | 24-Sep-18 | 19-Oct-18 | 54 |
| SF12200 | Rough Communication(LV5) | 10 | 10 | 24-Sep-18 | 05-Oct-18 | 64 |
| SF12190 | Rough Fire Alarm (FA-507)(LV5) | 10 | 10 | 24-Sep-18 | 05-Oct-18 | 64 |
| SF12170 | Rough HVAC Control (LV5) | 10 | 10 | 24-Sep-18 | 05-Oct-18 | 64 |
| SF12250 | Door Frames(LV5) | 4 | 4 | 09-Oct-18 | 12-Oct-18 | 68 |
| SF12160 | MEP Rough-In & Rough Framing Inspection(LV5) | 1 | 1 | 22-Oct-18 | 22-Oct-18 | 54 |
| SF12140 | Fire Caulking(LV5) | 3 | 3 | 23-Oct-18 | 25-Oct-18 | 54 |
| SF12120 | Fire Caulking Inspection(LV5) | 1 | 1 | 26-Oct-18 | 26-Oct-18 | 54 |
| SF12110 | Insulation(LV5) | 4 | 4 | 29-Oct-18 | 01-Nov-18 | 54 |
| SF12100 | Drywall-Standard(LV5) | 15 | 15 | 24-Jan-19 | 13-Feb-19 | 0 |
| SF12090 | Drywall-Water Resistant(LV5) | 15 | 15 | 24-Jan-19 | 13-Feb-19 | 0 |
| SF12080 | Drywall Nailing Inspection(LV5) | 1 | 1 | 14-Feb-19 | 14-Feb-19 | 19 |
| SF12060 | Tape and Texture(LV5) | 10 | 10 | 15-Feb-19 | 01-Mar-19 | 19 |
| **Finish - Level 5** | | | | | | |
| SF12050 | Doors(LV5) | 10 | 10 | 04-Mar-19 | 15-Mar-19 | 41 |
| SF12020 | Paint (LV5) | 10 | 10 | 04-Mar-19 | 15-Mar-19 | 19 |
| SF12040 | Hardware (Doors )(LV5) | 10 | 10 | 07-Mar-19 | 20-Mar-19 | 41 |
| SF12010 | Wall Covering(LV5) | 8 | 8 | 18-Mar-19 | 27-Mar-19 | 36 |
| SF11990 | Finish Mechanical (M1.6) (LV5) | 15 | 15 | 18-Mar-19 | 05-Apr-19 | 29 |
| SF11980 | Finish Plumbing (P2.6)(LV5) | 10 | 10 | 18-Mar-19 | 29-Mar-19 | 34 |
| SF11970 | Finish Fire Sprinkler (LV5) | 15 | 15 | 18-Mar-19 | 05-Apr-19 | 29 |
| SF11940 | Finish Electrical/Lighting (E2.10)(LV5) | 15 | 15 | 18-Mar-19 | 05-Apr-19 | 29 |
| SF11930 | Finish Communication(LV5) | 10 | 10 | 18-Mar-19 | 29-Mar-19 | 34 |
| SF11920 | Finish Fire Alarm (FA-507)(LV5) | 10 | 10 | 18-Mar-19 | 29-Mar-19 | 34 |
| SF11910 | Finish HVAC Control (LV5) | 5 | 5 | 18-Mar-19 | 22-Mar-19 | 39 |
| SF11890 | Floor Covering(LV5) | 15 | 15 | 18-Mar-19 | 05-Apr-19 | 29 |
| SF11850 | Ceramic Tiles (LV5) | 15 | 15 | 18-Mar-19 | 05-Apr-19 | 19 |
| SF11850 | Restroom Accessories(LV5) | 5 | 5 | 18-Mar-19 | 22-Mar-19 | 39 |

Legend:
- Remaining Level of Effort ◆ Milestone
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work

Page 15 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | 2019 |
|---|---|---|---|---|---|---|---|
| SF11820 | Signage(LV5) | 4 | 4 | 18-Mar-19 | 21-Mar-19 | 40 | Signage(LV5) |
| SF11810 | Window Treatment (A6.72)(LV5) | 8 | 8 | 18-Mar-19 | 27-Mar-19 | 36 | Window Treatment (A6.72)(LV5) |
| SF11830 | Kitchen Accessories(LV5) | 5 | 5 | 18-Mar-19 | 22-Mar-19 | 39 | Kitchen Accessories(LV5) |
| SF11870 | Cabinetry (LV5) | 10 | 10 | 08-Apr-19 | 19-Apr-19 | 19 | Cabinetry (LV5) |
| SF11800 | Preliminary Clean - Level 5(LV5) | 2 | 2 | 22-Apr-19 | 23-Apr-19 | 19 | Preliminary Clean - Level 5(LV5) |
| **Inspection and Acceptance - Level 5** | | | | | | | |
| SF11770 | Contractor Punchout(LV5) | 1 | 1 | 24-Apr-19 | 24-Apr-19 | 19 | Contractor Punchout(LV5) |
| SF11760 | Contractor Punchout Punchlist Correction(LV5) | 5 | 5 | 25-Apr-19 | 01-May-19 | 19 | Contractor Punchout Punchlist Correction(LV5) |
| SF11750 | System Testing(LV5) | 5 | 5 | 02-May-19 | 08-May-19 | 19 | System Testing(LV5) |
| SF11740 | Walk-thru and issue punch list(LV5) | 1 | 1 | 09-May-19 | 09-May-19 | 19 | Walk-thru and issue punch list(LV5) |
| SF11710 | Punch list corrections(LV5) | 5 | 5 | 10-May-19 | 16-May-19 | 19 | Punch list corrections(LV5) |
| SF11700 | Final (2nd) walk-thru to sign off corrections(LV5) | 1 | 1 | 17-May-19 | 17-May-19 | 19 | Final (2nd) walk-thru to sign off corrections(LV |
| SF11690 | Ready for Final Inspection LV 6(LV5) | 0 | 0 | | 17-May-19 | 19 | ◆ Ready for Final Inspection LV 6(LV5) |
| **Level 6 Interior Build-Out** | | | | | | | |
| **Rough - Level 6** | | | | | | | |
| SF11680 | Level 6 Rough Interior Construction Work Start(LV6) | 0 | 0 | 15-Oct-18 | | 26 | ◆ Level 6 Rough Interior Construction Work Start(LV6) |
| SF11670 | Wood Stud Framing (A2.6)(LV6) | 20 | 20 | 15-Oct-18 | 09-Nov-18 | 26 | Wood Stud Framing (A2.6)(LV6) |
| SF11640 | Rough Mechanical (M1.7)(LV6) | 15 | 15 | 22-Oct-18 | 09-Nov-18 | 31 | Rough Mechanical (M1.7)(LV6) |
| SF11630 | Rough Plumbing Including Setting Tubs & Showers (P2.7)(LV6) | 15 | 15 | 22-Oct-18 | 09-Nov-18 | 31 | Rough Plumbing Including Setting Tubs & Showers (P2.7)(LV6) |
| SF11610 | Rough Fire Sprinkler (LV6) | 15 | 15 | 22-Oct-18 | 09-Nov-18 | 31 | Rough Fire Sprinkler (LV6) |
| SF11600 | Rough Electrical Lighting (E2.60)(LV6) | 20 | 20 | 22-Oct-18 | 19-Nov-18 | 26 | Rough Electrical Lighting (E2.60)(LV6) |
| SF11580 | Rough Communication(LV6) | 10 | 10 | 22-Oct-18 | 02-Nov-18 | 36 | Rough Communication(LV6) |
| SF11570 | Rough Fire Alarm (FA-508)(LV6) | 10 | 10 | 22-Oct-18 | 02-Nov-18 | 36 | Rough Fire Alarm (FA-508)(LV6) |
| SF11560 | Rough HVAC Control (LV6) | 10 | 10 | 22-Oct-18 | 02-Nov-18 | 36 | Rough HVAC Control (LV6) |
| SF11650 | Door Frames(LV6) | 4 | 4 | 06-Nov-18 | 09-Nov-18 | 40 | Door Frames(LV6) |
| SF11550 | MEP Rough-In & Rough Framing Inspection(LV6) | 1 | 1 | 20-Nov-18 | 20-Nov-18 | 26 | MEP Rough-In & Rough Framing Inspection(LV6) |
| SF11530 | Fire Caulking(LV6) | 3 | 3 | 21-Nov-18 | 27-Nov-18 | 26 | Fire Caulking(LV6) |
| SF11520 | Fire Caulking Inspection(LV6) | 1 | 1 | 28-Nov-18 | 28-Nov-18 | 26 | Fire Caulking Inspection(LV6) |
| SF11500 | Insulation(LV6) | 4 | 4 | 29-Nov-18 | 04-Dec-18 | 26 | Insulation(LV6) |
| SF11480 | Drywall- Standard(LV6) | 15 | 15 | 14-Jan-19 | 01-Feb-19 | 0 | Drywall- Standard(LV6) |
| SF11480 | Drywall- Water Resistant(LV6) | 15 | 15 | 14-Jan-19 | 01-Feb-19 | 0 | Drywall- Water Resistant(LV6) |

Legend:
- ━━━ Remaining Level of Effort  ◆ Milestone
- ━━━ Actual Level of Effort
- ━━━ Actual Work
- ▭ Remaining Work
- ▬ Critical Remaining Work

Page 16 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF11470 | Drywall Nailing Inspection(LV6) | 1 | 1 | 04-Feb-19 | 04-Feb-19 | 27 |
| SF11450 | Tape and Texture(LV6) | 10 | 10 | 05-Feb-19 | 19-Feb-19 | 27 |
| **Finish - Level 6** | | | | | | |
| SF11440 | Doors(LV6) | 10 | 10 | 20-Feb-19 | 05-Mar-19 | 49 |
| SF11410 | Paint (LV6) | 10 | 10 | 20-Feb-19 | 05-Mar-19 | 27 |
| SF11430 | Hardware (Doors )(LV6) | 10 | 10 | 25-Feb-19 | 08-Mar-19 | 49 |
| SF11390 | Wall Covering(LV6) | 8 | 8 | 06-Mar-19 | 15-Mar-19 | 44 |
| SF11380 | Finish Mechanical (M1.7)(LV6) | 15 | 15 | 06-Mar-19 | 26-Mar-19 | 37 |
| SF11370 | Finish Plumbing (P2.7)(LV6) | 10 | 10 | 06-Mar-19 | 19-Mar-19 | 42 |
| SF11360 | Finish Fire Sprinkler (LV6) | 10 | 10 | 06-Mar-19 | 19-Mar-19 | 42 |
| SF11350 | Finish Electrical/Lighting (E2.60)(LV6) | 15 | 15 | 06-Mar-19 | 26-Mar-19 | 37 |
| SF11340 | Finish Communication(LV6) | 10 | 10 | 06-Mar-19 | 19-Mar-19 | 42 |
| SF11320 | Finish Fire Alarm (FA-508)(LV6) | 10 | 10 | 06-Mar-19 | 19-Mar-19 | 42 |
| SF11310 | Finish HVAC Control (LV6) | 5 | 5 | 06-Mar-19 | 12-Mar-19 | 47 |
| SF11280 | Floor Covering(LV6) | 15 | 15 | 06-Mar-19 | 26-Mar-19 | 37 |
| SF11270 | Ceramic Tiles (LV6) | 15 | 15 | 06-Mar-19 | 26-Mar-19 | 27 |
| SF11250 | Restroom Accessories(LV6) | 5 | 5 | 06-Mar-19 | 12-Mar-19 | 47 |
| SF11230 | Signage(LV6) | 4 | 4 | 06-Mar-19 | 11-Mar-19 | 48 |
| SF11220 | Window Treatment (A6.72)(LV6) | 8 | 8 | 06-Mar-19 | 15-Mar-19 | 44 |
| SF11240 | Kitchen Accessories(LV6) | 5 | 5 | 06-Mar-19 | 12-Mar-19 | 47 |
| SF11260 | Cabinetry (LV6) | 10 | 10 | 27-Mar-19 | 09-Apr-19 | 27 |
| SF11210 | Preliminary Clean - Level 6(LV6) | 2 | 2 | 10-Apr-19 | 11-Apr-19 | 27 |
| **Inspection and Acceptance - Level 6** | | | | | | |
| SF11160 | Contractor Punchout(LV6) | 1 | 1 | 12-Apr-19 | 12-Apr-19 | 27 |
| SF11150 | Contractor Punchout Punchlist Correction(LV6) | 5 | 5 | 15-Apr-19 | 19-Apr-19 | 27 |
| SF11140 | System Testing(LV6) | 5 | 5 | 22-Apr-19 | 26-Apr-19 | 27 |
| SF11130 | Walk-thru and issue punch list(LV6) | 1 | 1 | 29-Apr-19 | 29-Apr-19 | 27 |
| SF11120 | Punch list corrections(LV6) | 5 | 5 | 30-Apr-19 | 06-May-19 | 27 |
| SF11110 | Final (2nd) walk-thru to sign off corrections(LV6) | 1 | 1 | 07-May-19 | 07-May-19 | 27 |
| SF11100 | Ready for Final Inspection LV 6(LV6) | 0 | 0 | | 07-May-19 | 27 |
| **Level 7 Interior Build-Out** | | | | | | |

Legend:
- ━━━ Remaining Level of Effort  ◆ ◆ Milestone
- ━━━ Actual Level of Effort
- ━━━ Actual Work
- ▭ Remaining Work
- ▭ Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
*\* WBS Layout*
**Data Date 16-Nov-17**

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| **Rough - Level 7** | | | | | | |
| SF14300 | Level 6 Rough Interior Construction Work Start(LV7) | 0 | 0 | 13-Nov-18 | | 0 |
| SF14310 | Wood Stud Framing (A2.6)(LV7) | 18 | 18 | 13-Nov-18 | 10-Dec-18 | 0 |
| SF14330 | Rough Mechanical (M1.7)(LV7) | 15 | 15 | 20-Nov-18 | 12-Dec-18 | 3 |
| SF14340 | Rough Plumbing Including Setting Tubs & Showers (P2.7)(LV7) | 15 | 15 | 20-Nov-18 | 12-Dec-18 | 3 |
| SF14350 | Rough Fire Sprinkler (LV7) | 15 | 15 | 20-Nov-18 | 12-Dec-18 | 3 |
| SF14360 | Rough Electrical/Lighting (E2.60)(LV7) | 18 | 18 | 20-Nov-18 | 17-Dec-18 | 0 |
| SF14370 | Rough Communication(LV7) | 10 | 10 | 20-Nov-18 | 05-Dec-18 | 8 |
| SF14380 | Rough Fire Alarm (FA-508)(LV7) | 10 | 10 | 20-Nov-18 | 05-Dec-18 | 8 |
| SF14390 | Rough HVAC Control (LV7) | 10 | 10 | 20-Nov-18 | 05-Dec-18 | 8 |
| SF14320 | Door Frames(LV7) | 4 | 4 | 05-Dec-18 | 10-Dec-18 | 14 |
| SF14400 | MEP Rough-In & Rough Framing Inspection(LV7) | 1 | 1 | 18-Dec-18 | 18-Dec-18 | 0 |
| SF14410 | Fire Caulking(LV7) | 3 | 3 | 19-Dec-18 | 21-Dec-18 | 0 |
| SF14420 | Fire Caulking Inspection (LV7) | 1 | 1 | 24-Dec-18 | 24-Dec-18 | 0 |
| SF14430 | Insulation(LV7) | 4 | 4 | 26-Dec-18 | 31-Dec-18 | 0 |
| SF14440 | Drywall-Standard(LV7) | 15 | 15 | 02-Jan-19 | 22-Jan-19 | 0 |
| SF14450 | Drywall-Water Resistant(LV7) | 15 | 15 | 02-Jan-19 | 22-Jan-19 | 0 |
| SF14460 | Drywall Nailing Inspection(LV7) | 1 | 1 | 23-Jan-19 | 23-Jan-19 | 58 |
| SF14470 | Tape and Texture(LV7) | 10 | 10 | 24-Jan-19 | 06-Feb-19 | 58 |
| **Finish - Level 7** | | | | | | |
| SF14480 | Doors(LV7) | 10 | 10 | 07-Feb-19 | 21-Feb-19 | 80 |
| SF14490 | Paint(LV7) | 10 | 10 | 07-Feb-19 | 21-Feb-19 | 58 |
| SF14660 | Hardware(Doors )(LV7) | 10 | 10 | 12-Feb-19 | 26-Feb-19 | 80 |
| SF14500 | Wall Covering(LV7) | 8 | 8 | 22-Feb-19 | 05-Mar-19 | 75 |
| SF14510 | Finish Mechanical (M1.7)(LV7) | 15 | 15 | 22-Feb-19 | 14-Mar-19 | 68 |
| SF14520 | Finish Plumbing (P2.7)(LV7) | 10 | 10 | 22-Feb-19 | 07-Mar-19 | 73 |
| SF14530 | Finish Fire Sprinkler (LV7) | 10 | 10 | 22-Feb-19 | 07-Mar-19 | 73 |
| SF14540 | Finish Electrical/Lighting (E2.60)(LV7) | 15 | 15 | 22-Feb-19 | 14-Mar-19 | 68 |
| SF14550 | Finish Communication(LV7) | 10 | 10 | 22-Feb-19 | 07-Mar-19 | 73 |
| SF14560 | Finish Fire Alarm (FA-508)(LV7) | 10 | 10 | 22-Feb-19 | 07-Mar-19 | 73 |
| SF14570 | Finish HVAC Control (LV7) | 5 | 5 | 22-Feb-19 | 28-Feb-19 | 78 |

Legend: Remaining Level of Effort — Milestone ◆ — Actual Level of Effort — Actual Work — Remaining Work — Critical Remaining Work

Page 18 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF14580 | Floor Covering(LV7) | 15 | 15 | 22-Feb-19 | 14-Mar-19 | 68 |
| SF14590 | Ceramic Tiles (LV7) | 15 | 15 | 22-Feb-19 | 14-Mar-19 | 58 |
| SF14610 | Restroom Accessories(LV7) | 5 | 5 | 22-Feb-19 | 28-Feb-19 | 78 |
| SF14620 | Signage(LV7) | 4 | 4 | 22-Feb-19 | 27-Feb-19 | 79 |
| SF14630 | Window Treatment (A6.72)(LV7) | 8 | 8 | 22-Feb-19 | 05-Mar-19 | 75 |
| SF14670 | Kitchen Accessories(LV7) | 5 | 5 | 22-Feb-19 | 28-Feb-19 | 78 |
| SF14600 | Cabinetry (LV7) | 10 | 10 | 15-Mar-19 | 28-Mar-19 | 58 |
| SF14650 | Preliminary Clean - Level 6(LV7) | 2 | 2 | 29-Mar-19 | 01-Apr-19 | 58 |
| **Inspection and Acceptance - Level 7** | | | | | | |
| SF14680 | Contractor Punchout(LV7) | 1 | 1 | 02-Apr-19 | 02-Apr-19 | 58 |
| SF14690 | Contractor Punchout Punchlist Correction(LV7) | 5 | 5 | 03-Apr-19 | 09-Apr-19 | 58 |
| SF14730 | System Testing(LV7) | 5 | 5 | 10-Apr-19 | 16-Apr-19 | 58 |
| SF14700 | Walk-thru and issue punch list(LV7) | 1 | 1 | 17-Apr-19 | 17-Apr-19 | 58 |
| SF14710 | Punch list corrections(LV7) | 5 | 5 | 18-Apr-19 | 24-Apr-19 | 58 |
| SF14720 | Final (2nd) walk-thru to sign off corrections(LV7) | 1 | 1 | 25-Apr-19 | 25-Apr-19 | 58 |
| SF14740 | Ready for Final Inspection LV 6 (LV7) | 0 | 0 | | 25-Apr-19 | 58 |
| **Site Utilities Work** | | | | | | |
| **Site Utilities-Wet** | | | | | | |
| **Site Storm Drain** | | | | | | |
| SF5120 | Site Storm Drain Work Start | 0 | 0 | 19-Jan-18 | | 218 |
| SF5110 | Survey (E) UG Utilities | 1 | 1 | 19-Jan-18 | 19-Jan-18 | 218 |
| SF5080 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) | 3 | 3 | 22-Jan-18 | 24-Jan-18 | 218 |
| SF5070 | Trench/Excavate for Storm Drainage System (3rd Ave Side) | 2 | 2 | 25-Jan-18 | 26-Jan-18 | 218 |
| SF5060 | Storm Drain Clean-Out (Type A-4) | 2 | 2 | 29-Jan-18 | 30-Jan-18 | 218 |
| SF5040 | Storm Drain 18" RCP Piping (Note 18&Drwg. 39697-5-D) | 3 | 3 | 31-Jan-18 | 02-Feb-18 | 218 |
| SF5030 | Backfill and Compaction | 3 | 3 | 05-Feb-18 | 07-Feb-18 | 218 |
| SF5010 | Inspection & Testing | 2 | 2 | 08-Feb-18 | 09-Feb-18 | 318 |
| SF5000 | Site Storm Drain Work Complete | 0 | 0 | | 09-Feb-18 | 318 |
| **Site Sewer** | | | | | | |
| SF4990 | Site Sewer Work Start | 0 | 0 | 08-Feb-18 | | 218 |
| SF4980 | Survey (E) UG Utilities | 1 | 1 | 08-Feb-18 | 08-Feb-18 | 218 |



Legend:
— Remaining Level of Effort    ◆ ◆ Milestone
— Actual Level of Effort
— Actual Work
— Remaining Work
— Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
*** WBS Layout**
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF4970 | Traffic Control Implementation (Diversion, Cone Set-Up, Signs, VMS,) | 3 | 3 | 09-Feb-18 | 13-Feb-18 | 218 |
| SF4950 | Saw Cut/Trench/Excavate for Sewer System | 3 | 3 | 14-Feb-18 | 16-Feb-18 | 218 |
| SF4930 | Sewer Manholes (Note 11/Drawing 39698-7-D) | 2 | 2 | 20-Feb-18 | 21-Feb-18 | 218 |
| SF4920 | Sewer Piping (2 Location- 8" and 6" PVC Lateral) | 5 | 5 | 22-Feb-18 | 28-Feb-18 | 218 |
| SF4910 | Backfill and Compaction Sewer Trench | 3 | 3 | 01-Mar-18 | 05-Mar-18 | 218 |
| SF4890 | Inspection & Testing | 2 | 2 | 06-Mar-18 | 07-Mar-18 | 298 |
| SF4880 | Connect to (E) Main Sewer Line (2 Points) | 1 | 1 | 08-Mar-18 | 08-Mar-18 | 298 |
| SF4870 | Asphalt Restoration | 2 | 2 | 09-Mar-18 | 12-Mar-18 | 298 |
| SF4860 | Site Sewer Work Complete | 0 | 0 | | 12-Mar-18 | 298 |

**Site Water**

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF4760 | Site Water Work Start | 0 | 0 | 06-Mar-18 | | 218 |
| SF4750 | Survey (E) UG Utilities | 1 | 1 | 06-Mar-18 | 06-Mar-18 | 265 |
| SF4740 | Traffic Control Implementation (Diversion, Cone Set-Up, Signs, VMS,) | 3 | 3 | 07-Mar-18 | 09-Mar-18 | 265 |
| SF4720 | Saw Cut/Trench/Excavate for Domestic Water | 3 | 3 | 12-Mar-18 | 14-Mar-18 | 265 |
| SF4710 | Trench/Excavate for Domestic and Irrigation Water Service (6 Wet Taps) | 3 | 3 | 15-Mar-18 | 19-Mar-18 | 265 |
| SF4690 | Backflow Preventer | 2 | 2 | 20-Mar-18 | 21-Mar-18 | 265 |
| SF4680 | Water Piping, Meter, and Valves | 4 | 4 | 22-Mar-18 | 27-Mar-18 | 265 |
| SF4660 | Thrust Blocks | 2 | 2 | 28-Mar-18 | 29-Mar-18 | 265 |
| SF4650 | Inspect Thrust Blocks | 1 | 1 | 30-Mar-18 | 30-Mar-18 | 265 |
| SF4640 | Backfill and Compaction Water Trench | 5 | 5 | 02-Apr-18 | 06-Apr-18 | 265 |
| SF4630 | Inspection, Testing, Disinfect | 3 | 3 | 09-Apr-18 | 11-Apr-18 | 265 |
| SF4610 | Certify Backflow Preventers | 2 | 2 | 12-Apr-18 | 13-Apr-18 | 265 |
| SF4600 | Connect to (E) Water Mains (North Side) | 2 | 2 | 16-Apr-18 | 17-Apr-18 | 265 |
| SF4590 | Restoration of Asphalt | 2 | 2 | 18-Apr-18 | 19-Apr-18 | 265 |
| SF4560 | Domestic and Irrigation Water Service (6 Wet Taps) (Drwg. 39697-5-D) 3rd Ave Side | 5 | 5 | 20-Apr-18 | 26-Apr-18 | 265 |
| SF4580 | Site Water Work Complete | 0 | 0 | 20-Apr-18 | 20-Apr-18 | 265 |

**Site Fire Water**

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF4540 | Site Water Work Start | 0 | 0 | 06-Mar-18 | | 218 |
| SF4530 | Survey (E) UG Utilities | 1 | 1 | 06-Mar-18 | 06-Mar-18 | 218 |
| SF4520 | Traffic Control Implementation (Diversion, Cone Set-Up, Signs, VMS,) | 3 | 3 | 07-Mar-18 | 08-Mar-18 | 218 |
| SF4500 | Saw Cut/Trench/Excavate for Fire Water | 1 | 1 | 09-Mar-18 | 09-Mar-18 | 218 |

Legend:
- ▬▬ Remaining Level of Effort   ◆   ◆ Milestone
- ▬▬ Actual Level of Effort
- ▬▬ Actual Work
- ▭ Remaining Work
- ▬▬ Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | Gantt label |
|---|---|---|---|---|---|---|---|
| SF4490 | Trench/Excavate for Fire Water Service | 2 | 2 | 12-Mar-18 | 13-Mar-18 | 218 | Trench/Excavate for Fire Water Service |
| SF4480 | Backflow Preventer | 2 | 2 | 14-Mar-18 | 15-Mar-18 | 218 | Backflow Preventer |
| SF4470 | Water Piping, Meter, and Valves | 2 | 2 | 16-Mar-18 | 19-Mar-18 | 218 | Water Piping, Meter, and Valves |
| SF4460 | Thrust Blocks | 2 | 2 | 20-Mar-18 | 21-Mar-18 | 218 | Thrust Blocks |
| SF4450 | Inspect Thrust Blocks | 1 | 1 | 22-Mar-18 | 22-Mar-18 | 218 | Inspect Thrust Blocks |
| SF4420 | Backfill and Compaction Water Trench | 2 | 2 | 23-Mar-18 | 26-Mar-18 | 218 | Backfill and Compaction Water Trench |
| SF4410 | Inspection, Testing, Disinfect | 1 | 1 | 27-Mar-18 | 27-Mar-18 | 218 | Inspection, Testing, Disinfect |
| SF4390 | Certify Backflow Preventers | 1 | 1 | 28-Mar-18 | 28-Mar-18 | 218 | Certify Backflow Preventers |
| SF4380 | Connect to (E) Water Mains | 1 | 1 | 29-Mar-18 | 29-Mar-18 | 218 | Connect to (E) Water Mains |
| SF4370 | Restoration of Asphalt | 1 | 1 | 30-Mar-18 | 30-Mar-18 | 218 | Restoration of Asphalt |
| SF4350 | Site Water Work Complete | 0 | 0 | | 02-Apr-18 | 218 | ◆ Site Water Work Complete |
| SF4360 | Site Water Work Complete | 0 | 0 | 02-Apr-18 | 02-Apr-18 | 218 | Site Water Work Complete |

### Site Utilities-Dry

#### Site Electrical

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | Gantt label |
|---|---|---|---|---|---|---|---|
| SF9970 | Site Electrical Work Start | 0 | 0 | | 27-Mar-18 | 252 | ◆ Site Electrical Work Start |
| SF9910 | Survey (E) UG Utilities | 1 | 1 | 27-Mar-18 | 27-Mar-18 | 252 | Survey (E) UG Utilities |
| SF9890 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) | 3 | 3 | 28-Mar-18 | 30-Mar-18 | 252 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) |
| SF9810 | Trench/Excavate for Electrical to Tapping Point (4th Ave Side) | 2 | 2 | 02-Apr-18 | 03-Apr-18 | 252 | Trench/Excavate for Electrical to Tapping Point (4th Ave Side) |
| SF9690 | Electrical Manhole | 2 | 2 | 04-Apr-18 | 05-Apr-18 | 252 | Electrical Manhole |
| SF9560 | Conduit/Electrical Duct | 3 | 3 | 06-Apr-18 | 10-Apr-18 | 252 | Conduit/Electrical Duct |
| SF9200 | Backfill and Compaction | 1 | 1 | 11-Apr-18 | 11-Apr-18 | 252 | Backfill and Compaction |
| SF9080 | Pull Wire to New Conduit (Going to Level P1) | 2 | 2 | 12-Apr-18 | 13-Apr-18 | 279 | Pull Wire to New Conduit (Going to Level P1) |
| SF8960 | Connect/Energized Electrical Gear @ Main Electrical Room (Drawing E1.0) | 2 | 2 | 24-Dec-18 | 26-Dec-18 | 105 | Connect/Energized Electrical Gear @ Main Electrical Room (Drawing E1.0) |
| SF8840 | Inspection & Testing | 2 | 2 | 27-Dec-18 | 28-Dec-18 | 105 | Inspection & Testing |
| SF8700 | Connect/Energized Electrical Gear @ Main Electrical Room (Drawing E1.0) | 2 | 2 | 31-Dec-18 | 02-Jan-19 | 105 | Connect/Energized Electrical Gear @ Main Electrical Room (Drawing E1.0) |

#### Site Telecom/CATV

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | Gantt label |
|---|---|---|---|---|---|---|---|
| SF5830 | Site Telecom/CATV Work Start | 0 | 0 | | 12-Apr-18 | 252 | ◆ Site Telecom/CATV Work Start |
| SF4620 | Survey (E) UG Utilities | 1 | 1 | 12-Apr-18 | 12-Apr-18 | 252 | Survey (E) UG Utilities |
| SF3430 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) | 2 | 2 | 13-Apr-18 | 16-Apr-18 | 252 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) |
| SF2210 | Saw Cut/Trench/Excavate for Telecom/CATV | 2 | 2 | 17-Apr-18 | 18-Apr-18 | 252 | Saw Cut/Trench/Excavate for Telecom/CATV |
| SF14180 | Telecom/CATV Manholes | 2 | 2 | 19-Apr-18 | 20-Apr-18 | 252 | Telecom/CATV Manholes |

Timeline header: 2018 — Nov Dec | Jan Feb Mar | Apr May Jun | Jul Aug Sep | Oct Nov Dec | 2019 — Jan Feb Mar | Apr May Jun | Jul Aug Sep | Oct

Legend:
- Remaining Level of Effort
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work
- ◆ ◆ Milestone

Page 21 of 25
**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float | Schedule |
|---|---|---|---|---|---|---|---|
| SF11620 | Install Underground Conduit Stub-Out (Telecom/CATV) Per Note 2 and 3/Drawing E.10 | 3 | 3 | 23-Apr-18 | 25-Apr-18 | 252 | Install Underground Conduit Stub-Out (Telecom/CATV) Per Note 2 and 3/Drawing E.10 |
| SF10400 | Backfill and Compaction Telecom/CATV Trench | 1 | 1 | 26-Apr-18 | 26-Apr-18 | 252 | Backfill and Compaction Telecom/CATV Trench |
| SF10090 | Site Telecom/CATV Work Complete | 0 | 0 | | 27-Apr-18 | 270 | ◆ Site Telecom/CATV Work Complete |
| SF10210 | Site Telecom/CATV Work Complete | 0 | 0 | 27-Apr-18 | 27-Apr-18 | 270 | Site Telecom/CATV Work Complete |
| **Site Gas** | | | | | | | |
| SF8580 | Site Gas Work Start | 0 | 0 | 27-Apr-18 | | 252 | ◆ Site Gas Work Start |
| SF8460 | Survey (E) U/G Utilities | 1 | 1 | 27-Apr-18 | 27-Apr-18 | 252 | Survey (E) U/G Utilities |
| SF8330 | Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,) | 2 | 2 | 30-Apr-18 | 01-May-18 | 252 | Traffic Control Implementation (Diversion, Cone Set-Up, Signs, VMS, ) |
| SF8210 | Saw Cut/Trench/Excavate for Gas Line | 2 | 2 | 02-May-18 | 03-May-18 | 252 | Saw Cut/Trench/Excavate for Gas Line |
| SF8090 | Gas Manholes | 2 | 2 | 04-May-18 | 04-May-18 | 252 | Gas Manholes |
| SF7850 | Install Underground Conduit Stub-Out (Gas Lines) Per Note 7,8,9 10/Drawing P2.2) | 3 | 3 | 08-May-18 | 10-May-18 | 252 | Install Underground Conduit Stub-Out (Gas Lines) Per Note 7,8,9 10/Drawing P2.2) |
| SF7730 | Backfill and Compaction Gas Trench | 1 | 1 | 11-May-18 | 11-May-18 | 252 | Backfill and Compaction Gas Trench |
| SF7640 | Site Gas Work Complete | 0 | 0 | | 11-May-18 | 252 | ◆ Site Gas Work Complete |
| **Site Improvements** | | | | | | | |
| **Site Work & Landscaping** | | | | | | | |
| **Concrete Sections** | | | | | | | |
| SF5930 | Concrete Section Work Start | 0 | 0 | 17-Apr-19 | | 17 | ◆ Concrete Section Work Start |
| SF5920 | Curb and Gutter | 4 | 4 | 17-Apr-19 | 22-Apr-19 | 17 | Curb and Gutter |
| SF5900 | Curb Ramps (Including Truncated Domes) | 3 | 3 | 23-Apr-19 | 25-Apr-19 | 33 | Curb Ramps (Including Truncated Domes) |
| SF5890 | Concrete Bands (Per note 26/Drawing 39697-D-5) | 5 | 5 | 23-Apr-19 | 29-Apr-19 | 31 | Concrete Bands (Per note 26/Drawing 39697-D-5) |
| SF5870 | Concrete Planters | 5 | 5 | 23-Apr-19 | 29-Apr-19 | 31 | Concrete Planters |
| SF5860 | Concrete Post and Embeds for New Light Post | 3 | 3 | 23-Apr-19 | 25-Apr-19 | 33 | Concrete Post and Embeds for New Light Post |
| SF5850 | Concrete Section Complete | 0 | 0 | | 29-Apr-19 | 31 | ◆ Concrete Section Complete |
| **Irrigation** | | | | | | | |
| SF5840 | Irrigation Work Start | 0 | 0 | 23-Apr-19 | | 23 | ◆ Irrigation Work Start |
| SF5820 | Trench/Excavate for Irrigation Lines and Pipe Sleeves | 3 | 3 | 23-Apr-19 | 25-Apr-19 | 23 | Trench/Excavate for Irrigation Lines and Pipe Sleev |
| SF5810 | Modular Control System and and sensor (Including Independent Circuit Power) | 2 | 2 | 26-Apr-19 | 29-Apr-19 | 23 | Modular Control System and and sensor (Including |
| SF5790 | Irrigation Manholes | 2 | 2 | 26-Apr-19 | 29-Apr-19 | 26 | Irrigation Manholes |
| SF5800 | Irrigation Mains & Valves, Backflow Assembly (Including Irrigation Meter) | 3 | 3 | 30-Apr-19 | 02-May-19 | 23 | Irrigation Mains & Valves, Backflow Assembly (Inc |
| SF5770 | Irrigation Branches & Heads | 3 | 3 | 03-May-19 | 07-May-19 | 23 | Irrigation Branches & Heads |
| SF5750 | Backfill Trench | 2 | 2 | 08-May-19 | 09-May-19 | 23 | Backfill Trench |

| Legend | |
|---|---|
| ▬▬▬ Remaining Level of Effort    ◆    ◆ Milestone | |
| ▬▬▬ Actual Level of Effort | |
| ▬▬▬ Actual Work | |
| ▬▬▬ Remaining Work | |
| ▬▬▬ Critical Remaining Work | |

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF5740 | *Irrigation Work Complete* | 0 | 0 | | 09-May-19 | 23 |
| **Landscaping** | | | | | | |
| SF5730 | Plants-Trees | 3 | 3 | 10-May-19 | 14-May-19 | 23 |
| **Concrete Sidewalk Pavers** | | | | | | |
| SF5710 | **Concrete Side Walk Pavers-Gaslamp Work Start** | 0 | 0 | 23-Apr-19 | | 17 |
| SF5700 | **Compaction and Fine Grading of Subgrade** | 3 | 3 | 23-Apr-19 | 25-Apr-19 | 17 |
| SF5690 | **Class II Base** | 3 | 3 | 26-Apr-19 | 30-Apr-19 | 17 |
| SF5680 | **Re-Enforce Concrete Subrate (See Detail No 4/Drawing LC-1.1)** | 3 | 3 | 01-May-19 | 03-May-19 | 17 |
| SF5670 | **Concrete Cure** | 5 | 5 | 06-May-19 | 10-May-19 | 17 |
| SF5660 | **Mortar Bed** | 5 | 5 | 13-May-19 | 17-May-19 | 17 |
| SF5630 | **Brick Pavers and Mortal Fill** | 5 | 5 | 16-May-19 | 22-May-19 | 17 |
| SF5620 | **Concrete Side Walk Pavers-Gaslamp Work Complete** | 0 | 0 | | 22-May-19 | 17 |
| **Asphalt Paving Restoration** | | | | | | |
| SF5540 | **Asphalt Paving Restoration Work Start** | 0 | 0 | 09-May-19 | | 43 |
| SF5530 | **Traffic Control Implementation (Diversion,Cone Set-Up, Signs, VMS,)** | 2 | 2 | 09-May-19 | 10-May-19 | 43 |
| SF5490 | **Saw Cut Scarify Asphalt (As Indicated)** | 2 | 2 | 13-May-19 | 14-May-19 | 43 |
| SF5480 | **Prime Coat and Tack Coat** | 1 | 1 | 15-May-19 | 15-May-19 | 43 |
| SF5470 | **Asphalt Paving** | 1 | 1 | 16-May-19 | 16-May-19 | 43 |
| SF5460 | **Asphalt Paving Restoration Work Complete** | 0 | 0 | | 16-May-19 | 43 |
| **Site/Road Misc. Work** | | | | | | |
| SF5290 | Site/Road Misc. Work Start | 0 | 0 | 09-May-19 | | 24 |
| SF5250 | Street Lighting (Poles and Fixtures) | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5240 | Re-Install Mail Box | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5220 | Re-Install Parking Pay Station | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5210 | Pavement Stripping | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5200 | Road Signage | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5280 | Tree Grate and Frame (Note 2 and 3 , LC-1.2) | 2 | 2 | 09-May-19 | 10-May-19 | 25 |
| SF5190 | Litter Receptacles (14/LC1.0) | 3 | 3 | 09-May-19 | 13-May-19 | 24 |
| SF5180 | Site/Road Misc. Work Complete | 0 | 0 | | 13-May-19 | 24 |
| **Podium Level Hardscape and Landscape** | | | | | | |
| **BUILT IN BBQ AREA** | | | | | | |

Legend:
— Remaining Level of Effort   ◆   ◆ Milestone
— Actual Level of Effort
— Actual Work
▭ Remaining Work
▬ Critical Remaining Work

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| **Cast-in Place at BBQ Area** | | | | | | |
| SF6970 | Cast-in Place at BBQ Area Work Start | 0 | 0 | 05-Dec-18 | | 114 |
| SF6960 | Water Proofing on Structural Slab | 5 | 5 | 05-Dec-18 | 11-Dec-18 | 114 |
| SF6950 | Rebar Works | 3 | 3 | 12-Dec-18 | 14-Dec-18 | 114 |
| SF6930 | Cast-in Place Paving with Color (To Include Expansion Joint) | 3 | 3 | 17-Dec-18 | 19-Dec-18 | 114 |
| SF6920 | Concrete Cure | 5 | 5 | 20-Dec-18 | 27-Dec-18 | 114 |
| SF6910 | Cast-in Place at BBQ Area Work Complete | 0 | 0 | | 27-Dec-18 | 114 |
| **Porcelain Tile Paving at BBQ Area** | | | | | | |
| SF6900 | Porcelain Tile Paving at BBQ Area Work Start | 0 | 0 | 05-Dec-18 | | 120 |
| SF6890 | Water Proofing on Structural Slab | 1 | 1 | 05-Dec-18 | 05-Dec-18 | 120 |
| SF6880 | Rebar Works | 1 | 1 | 06-Dec-18 | 06-Dec-18 | 120 |
| SF6850 | Cast-in Place Subslab | 1 | 1 | 07-Dec-18 | 07-Dec-18 | 120 |
| SF6840 | Concrete Cure | 5 | 5 | 10-Dec-18 | 14-Dec-18 | 120 |
| SF6820 | Porcelain Tile Paving (Including Mortar and Grout) | 2 | 2 | 17-Dec-18 | 18-Dec-18 | 120 |
| SF6810 | Porcelain Tile Paving at BBQ Area Work Complete | 0 | 0 | | 18-Dec-18 | 120 |
| **Special Feature at BBQ Area** | | | | | | |
| SF6800 | Built-in BBQ Counter | 5 | 5 | 28-Dec-18 | 04-Jan-19 | 114 |
| **Level 6 Hardscape and Landscape** | | | | | | |
| **Courtyard** | | | | | | |
| **Pedestal Pavers Courtyard Area** | | | | | | |
| SF7300 | Pedestal Pavers Work Start | 0 | 0 | 18-Apr-19 | | 17 |
| SF7290 | Pedestal System (L4.10 Detail 5) | 5 | 5 | 18-Apr-19 | 24-Apr-19 | 24 |
| SF7280 | Pedestal Pavers (Drawing L4.10-Detail 5 & 6) | 5 | 5 | 25-Apr-19 | 01-May-19 | 24 |
| SF7250 | Pedestal Pavers Courtyard Area  Work Complete | 0 | 0 | | 01-May-19 | 24 |
| **Hardscape at Courtyard Area** | | | | | | |
| SF7240 | Hardscape at Courtyard Area Work Start | 0 | 0 | 18-Apr-19 | | 17 |
| SF7230 | Planter Box (Detail 2/L4.10) | 8 | 8 | 18-Apr-19 | 29-Apr-19 | 17 |
| SF7210 | Portable Box (Detail 7/L4.10) | 3 | 3 | 18-Apr-19 | 22-Apr-19 | 22 |
| SF7200 | Drain Connection/Perporated Pipe Drain (L4.10) | 5 | 5 | 18-Apr-19 | 24-Apr-19 | 20 |
| SF7190 | Water Proofing at Planters Box (L4.10) | 2 | 2 | 18-Apr-19 | 19-Apr-19 | 23 |
| SF7180 | Protection Board at Planters Box (L4.10) | 3 | 3 | 18-Apr-19 | 22-Apr-19 | 23 |

Legend:
- Remaining Level of Effort
- Actual Level of Effort
- Actual Work
- Remaining Work
- Critical Remaining Work
- ◆ ◆ Milestone

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

| Activity ID | Activity Name | OD | Rem Dur | Start | Finish | Total Float |
|---|---|---|---|---|---|---|
| SF7170 | Drainage Composite at Planters (4.10) | 3 | 3 | 18-Apr-19 | 22-Apr-19 | 22 |
| SF7150 | Irrigation-Plants | 3 | 3 | 18-Apr-19 | 22-Apr-19 | 22 |
| SF7140 | Hardscape at Courtyard Area Work Complete | 0 | 0 | | 29-Apr-19 | 17 |
| **Landscaping at Courtyard Area** | | | | | | |
| SF7120 | Landscaping at Courtyard Area Work Start | 0 | 0 | 30-Apr-19 | | 17 |
| SF7110 | Backfill Mix at Planter Box & Portable Box (100% Washed Concrete Sand) | 5 | 5 | 30-Apr-19 | 06-May-19 | 17 |
| SF7090 | Backfill Mix at Planter Box & Portable Box (70% Washed Concrete Sand and 30% Compost) | 5 | 5 | 30-Apr-19 | 06-May-19 | 17 |
| SF7080 | Planting - Shrubs | 2 | 2 | 07-May-19 | 08-May-19 | 17 |
| SF7070 | Planting - Ground Covers | 2 | 2 | 09-May-19 | 10-May-19 | 17 |
| SF7060 | Landscaping at Game Courtyard Area Work Complete | 0 | 0 | | 10-May-19 | 17 |
| **Special Feature Courtyard Area** | | | | | | |
| SF7040 | Special Feature at Game Table Area Work Start | 0 | 0 | 13-May-19 | | 17 |
| SF7030 | Courtyard (Stell Trellis) (L2.41) | 8 | 8 | 13-May-19 | 22-May-19 | 17 |
| SF7020 | BBQ Counter | 5 | 5 | 13-May-19 | 17-May-19 | 20 |
| SF7010 | Fire Pit | 2 | 2 | 13-May-19 | 14-May-19 | 23 |
| SF6990 | Special Feature at  Courtyard Area Work Complete | 0 | 0 | | 22-May-19 | 17 |
| **Inspection and Acceptance Site Improvements** | | | | | | |
| SF5170 | Punchout Site Improvements Work | 2 | 2 | 23-May-19 | 24-May-19 | 17 |
| SF5150 | Punchlist Correction Site Improvements Work | 5 | 5 | 28-May-19 | 03-Jun-19 | 17 |
| SF5130 | Final Inspection Site Improvements Work | 1 | 1 | 04-Jun-19 | 04-Jun-19 | 17 |
| **Final Inspection and Acceptance** | | | | | | |
| SF4060 | Closeout Documents [OMSI, AS-BUILT DWGS, Etc] | 5 | 5 | 17-Jun-19 | 21-Jun-19 | 17 |
| SF4070 | Final System Testing, TAB, and Commissioning | 8 | 8 | 17-Jun-19 | 26-Jun-19 | 0 |
| SF4050 | Perform local building agency inspections | 5 | 5 | 27-Jun-19 | 03-Jul-19 | 1 |
| SF4030 | Perform Fire Marshal's inspection | 5 | 5 | 27-Jun-19 | 03-Jul-19 | 0 |
| SF4020 | Complete punch list items from all inspections | 5 | 5 | 05-Jul-19 | 11-Jul-19 | 0 |
| SF4010 | Obtain Temporary Certificate of Occupancy | 5 | 5 | 12-Jul-19 | 18-Jul-19 | 0 |
| SF4000 | Demobilization | 1 | 1 | 18-Jul-19 | 18-Jul-19 | 0 |

Legend:
- ▬ Remaining Level of Effort   ◆ ◆ Milestone
- ▬ Actual Level of Effort
- ▬ Actual Work
- ▭ Remaining Work
- ▬ Critical Remaining Work

**PBL 06 - 1301 16th St. San Francisco Apts 11.27.17**
\* WBS Layout
Data Date 16-Nov-17

DocuSign Envelope ID: 7B996EE767AD-4506-931F-6C65679B0A41

# EXHIBIT F

# SOV

| | | | BID DATE: | November 20, 2017 |
|---|---|---|---|---|
| **T.B. Penick & Sons, Inc.** | | **COST** | | **PRICE** |
| **1301 16th St San Francisco, CA** | | | | |
| 1 Project Executive | $535,040 | | 1.00 | $535,040.00 |
| 2 Project Manager | $245,227 | | 1.00 | $245,226.67 |
| 3 General Superintendent | $176,563 | | 1.00 | $176,563.20 |
| 4 Superintendent #1 | $445,867 | | 1.00 | $445,866.67 |
| 5 Superintendent #2 | $445,867 | | 1.00 | $445,866.67 |
| 6 Project Engineer / Quality Control Officer | $245,227 | | 1.00 | $245,226.67 |
| 7 Scheduler | $97,533 | | 1.00 | $97,533.33 |
| 8 Project Administrator | $256,373 | | 1.00 | $256,373.33 |
| 9 Safety Personnel | $139,333 | | 1.00 | $139,333.33 |
| 10 Carpenter Support # 1/ Foreman | $0 | | 1.00 | $115,000.00 |
| 11 Vehicles | $65,493 | | 1.00 | $65,493.00 |
| 12 Field Offices | $38,000 | | 1.00 | $38,000.00 |
| 13 Office Furniture | $13,300 | | 1.00 | $13,300.00 |
| 14 Copy Machine | $11,400 | | 1.00 | $11,400.00 |
| 15 Fax Machine | $2,850 | | 1.00 | $2,850.00 |
| 16 Computer/IT Support | $23,750 | | 1.00 | $23,750.00 |
| 17 Office Supplies | $13,300 | | 1.00 | $13,300.00 |
| 18 Postage/UPS | $5,000 | | 1.00 | $5,000.00 |
| 19 Delivery Service | $7,500 | | 1.00 | $7,500.00 |
| 20 Drinking Water | $5,700 | | 1.00 | $5,700.00 |
| 21 Chemical Toilets | $19,000 | | 1.00 | $19,000.00 |
| 22 Telephone | $20,900 | | 1.00 | $20,900.00 |
| 23 Project Signs | $1,600 | | 1.00 | $1,600.00 |
| 24 Warranty Administration | $40,000 | | 1.00 | $40,000.00 |
| 25 First Aid Kits/Supply | $5,700 | | 1.00 | $5,700.00 |
| 26 Fire Extinguishers | $5,000 | | 1.00 | $5,000.00 |
| 27 Fuel | $54,578 | | 1.00 | $54,577.50 |
| 28 Travel | $133,000 | | 1.00 | $133,000.00 |
| 29 Subsistence/ Housing | $365,750 | | 1.00 | $365,750.00 |
| 30 Plan Reproduction | $10,000 | | 1.00 | $10,000.00 |
| 31 Job Photographing & Recording | $5,700 | | 1.00 | $5,700.00 |
| 32 Earth Cam | $38,000 | | 0.00 | $0.00 |
| 33 | **Construction Site Services** | | | |
| 34 Traffic Control/ Lane Closure/ K Rails | 1.00 | LS | $ 75,000 | $75,000.00 |
| 35 Pedestrian Control/ Sidewalk Barricades | 1.00 | LS | $ 40,000 | $40,000.00 |
| 36 Ug Utility Locating / Potholing | 1.00 | LS | $ 3,600 | $3,600.00 |
| 37 Temp Lighting/ Temp Power Maintenance | 1.00 | LS | $ 52,500 | $52,500.00 |
| 38 Electrical Consumption | 1.00 | LS | $ 57,000 | $57,000.00 |
| 39 Temp Water Hook-Up | 1.00 | EA | $ 2,500 | $2,500.00 |
| 40 Water Consumption | 1.00 | LS | $ 38,000 | $38,000.00 |
| 41 Rough/Daily Cleaning | 1.00 | LS | $ 121,600 | $121,600.00 |
| 42 Dumpster/Dump Fees | 1.00 | LS | $ 64,600 | $64,600.00 |
| 43 Dust Control/ Street Sweeping | 1.00 | LS | $ 25,000 | $25,000.00 |
| 44 Railings, Safety | 1.00 | LS | $ 16,000 | $16,000.00 |
| 45 Temp Fence | 1.00 | LS | $ 60,000 | $60,000.00 |
| 46 Temporary Stairs (from ground level to podium) | 1.00 | LS | $ 9,582 | $9,581.66 |
| 47 Personnel Hoist Rental & Set Up and Dismantle | 1.00 | LS | $ 183,562 | $183,561.60 |
| 48 Personnel Hoist (operator) Straight Time | 14.00 | Mos | $ 15,120 | $211,680.00 |
| 49 Personnel Hoist (operator) Over Time | 14.00 | Mos | $ 10,080 | $141,120.00 |
| 50 Parking Lease of Parking Lot Adjacent with in 1300 LF | 10.00 | months | $ 20,480 | $204,800.00 |
| 51 | **VE OPTIONS / DEDUCT ALLOWANCES** | | | |
| 52 Delete Sidewalk Pavers/ Switch to gray concrete | 1.00 | LS | -50000.00 | ($50,000.00) |
| 53 Replace unit bath porcelain tile with ceramic tile | 1.00 | LS | -20000.00 | ($20,000.00) |
| 54 Replace Unit Entry doors with paint grade doors and no veneer | 1.00 | LS | -45325.00 | ($45,325.00) |
| 55 Replace Unit shower and tub surround wall tile with ceramic in lieu of porcelain tile | 1.00 | LS | -38850.00 | ($38,850.00) |
| 56 Replace Heath Ceramic Tile Backsplash with Arizona Tile | 1.00 | LS | -129927.00 | ($129,927.00) |
| 57 Eliminate Third Elevator | 1.00 | LS | -185667.00 | ($185,667.00) |
| 58 | **Division 2 -SITE WORK** | | | |
| 59 Construction Staking/ Survey (incl control up floors) | 1.00 | LS | 67350.00 | $67,350.00 |
| 60 Additional Survey that may be needed | 11.00 | EA | 1900.00 | $20,900.00 |
| 61 Erosion Control/ BMP Install | 1.00 | LS | 12289.00 | $12,289.00 |
| 62 Erosion Control / BMP Maintenance | 1.00 | LS | 25000.00 | $25,000.00 |
| 63 Erosion Control/ BMP Removal | 1.00 | LS | 5000.00 | $5,000.00 |
| 64 SWPPP/ QSD (QSP not required for project under 1 acre) | 1.00 | LS | 2500.00 | $2,500.00 |
| 65 EARTHWORK / DEMO AND GRADING | 1.00 | ls | 1098520.00 | $1,098,520.00 |
| 66 Haz Abatement | 1.00 | LS | 131100.00 | $131,100.00 |

DocuSign Envelope ID: 7B906EF2-57AD-4506-931E-6065079B0A11

| | | | | | |
|---|---|---|---|---|---|
| | *Removal of contaminated soil (HAUL OFF AND DISPOSE CLASS 2* | | | | |
| 67 | *CONTAMINATED SOIL) (9700 CY)* | 1.00 | ALLOW | 356863.00 | $356,863.00 |
| 68 | Torque Down Piles (per geotech report) | 1.00 | LS | 1141436.00 | $1,141,436.00 |
| 69 | Temp SHORING (underpin existing bldg | 1.00 | LS | 60000.00 | $60,000.00 |
| 70 | Vapor Mitigation | 1.00 | LS | 190180.00 | $190,180.00 |
| 71 | Landscape and Irrrigation | 1.00 | LS | 844711.00 | $844,711.00 |
| 72 | Misc Cut & AC Patch | 1.00 | LS | 30000.00 | $30,000.00 |
| 73 | Unit Pavers | 1.00 | LS | 232400.00 | $232,400.00 |
| 74 | Site Utilities | 1.00 | LS | 221514.00 | $221,514.00 |
| 75 | Site Gas | 1.00 | LS | 48000.00 | $48,000.00 |
| 76 | Site Concrete - Concrete for Exterior Improvements | 1.00 | LS | 605830.00 | $605,830.00 |
| 77 | Pavement Markings - Striping and Signage | 1.00 | LS | 12275.00 | $12,275.00 |
| 78 | GFRC (FOB) | 1.00 | LS | 63996.47 | $63,996.47 |
| 79 | GFRC (INSTALL) | 1.00 | LS | 50000.00 | $50,000.00 |
| 80 | FENCING AND GATES | 1.00 | LS | 15000.00 | $15,000.00 |
| 81 | Misc Spoils Removals | 1200.00 | CY | $60 | $72,000.00 |
| 82 | **Division 2 -SITE FURNISHINGS** | | | | |
| 83 | Laborer's Union Requirements | 1.00 | ls | 150000.00 | $150,000.00 |
| 84 | **Division 3 -Concrete** | | | | |
| 85 | Structural CIP Concrete & Reinforcing | 1.00 | LS | 4682690.00 | $4,682,690.00 |
| 86 | Rat Slab(s) | 1.00 | LS | 135520.00 | $135,520.00 |
| 87 | Concrete Floor Sealer | 1.00 | LS | 15000.00 | $15,000.00 |
| 88 | Diamond Polishing Concrete Floors (exposed agg finish of structural concre | 1.00 | LS | 60000.00 | $60,000.00 |
| 89 | Gypsum Cement Underlayments and Sound Mat | 1.00 | LS | 317208.00 | $317,208.00 |
| 90 | **Division 5 -Metals** | | | | |
| 91 | Structural Steel Framing & Misc Metals | 1.00 | LS | 3103900.00 | $3,103,900.00 |
| 92 | Metal Ladders @ Elevator Pits | 3.00 | ea | 5000.00 | $15,000.00 |
| 93 | Exterior Building Maintenance System | 1.00 | LS | 104800.00 | $104,800.00 |
| 94 | **Division 6 -Wood, Plastics, and Composites** | | | | |
| 95 | Rough Carpentry | 1.00 | LS | 8852507.00 | $8,852,507.00 |
| 96 | Rough Carpentry Crane | 1.00 | LS | 215750.00 | $215,750.00 |
| 97 | Crane for Misc Trades | 1.00 | LS | 225000.00 | $225,000.00 |
| 98 | temp foundations and shores for tower crane (incl demo) | 1.00 | LS | $   30,000 | $30,000.00 |
| 99 | Site Carpentry (wood finish boards for dining table, viewing platform, & fence finish boards) | 1.00 | LS | 125000.00 | $125,000.00 |
| 100 | Interior Architectural Casework & Finish Carp. (common areas) | 1.00 | LS | 413408.00 | $413,408.00 |
| 101 | Plastic Paneling (FRP) | 1.00 | LS | 5952.00 | $5,952.00 |
| 102 | Closet Shelving | 1.00 | LS | 141765.00 | $141,765.00 |
| 103 | Finish Carpentry (baseboard, base shoe) | 1.00 | LS | 425443.00 | $425,443.00 |
| 104 | **Division 7 -Thermal and Moisture Protection** | | | | |
| 105 | Fluid Applied Waterproofing | 1.00 | LS | 41340.00 | $41,340.00 |
| 106 | Hot Fluid Applied Rubberized Asphalt Waterproofing | 1.00 | LS | 30296.00 | $30,296.00 |
| 107 | Bentonite Waterproofing | 1.00 | LS | 69640.00 | $69,640.00 |
| 108 | Pedestrian Traffic Coatings | 1.00 | LS | 119640.00 | $119,640.00 |
| 109 | Water Repellents | 1.00 | ALLOW | 5000.00 | $5,000.00 |
| 110 | Building Insulation/ Thermal Insulation | 1.00 | LS | 280525.00 | $280,525.00 |
| 111 | Sprayed Insulation | 1.00 | LS | 25000.00 | $25,000.00 |
| 112 | Weather Resistive Air and Moisture Barrier Membrane | 1.00 | LS | 219808.00 | $219,808.00 |
| 113 | Poly Vinyl Chloride Roofing (PVC) | 1.00 | LS | 390595.00 | $390,595.00 |
| 114 | Sheet Metal Flashing and Trim | 1.00 | LS | 681657.00 | $681,657.00 |
| 115 | Roof Decking Pavers | 6761.00 | SF | 55.00 | $371,855.00 |
| 116 | Intumescent Mastic Fire  oofing | 1.00 | LS | 13655.00 | $13,655.00 |
| 117 | Firestopping | 1.00 | LS | 119818.00 | $119,818.00 |
| 118 | Joint Sealants | 1.00 | LS | 50000.00 | $50,000.00 |
| 119 | Expansion Control | 1.00 | LS | 66000.00 | $66,000.00 |
| 120 | **Division 8 -Openings** | | | | |
| 121 | Hollow Metal Doors and Frames | 1.00 | LS | 1106746.00 | $1,106,746.00 |
| 122 | Access Doors and Frames | 1.00 | LS | 20000.00 | $20,000.00 |
| 123 | Overhead Coiling Grilles | 1.00 | LS | 24682.00 | $24,682.00 |
| 124 | Elevator Door Smoke Containment Barriers | 1.00 | LS | 81181.00 | $81,181.00 |
| 125 | Integrated Door Opening Assemblies | 1.00 | LS | 52927.00 | $52,927.00 |
| 126 | Glazing | 1.00 | LS | 3235749.00 | $3,235,749.00 |
| 127 | Louvers | 1.00 | LS | 162690.00 | $162,690.00 |
| 128 | **Division 9 -Finishes** | | | | |
| 129 | Drywall and Metal Studs (Gypsum Board Shaft Wall Assemblies) | 1.00 | units | 4881000.00 | $4,881,000.00 |
| 130 | Portland Cement Plaster | 1.00 | LS | 494050.00 | $494,050.00 |
| 131 | Exterior Scaffold (Coordination)  SET UP & TAKEDOWN | 1.00 | LS | 262267.00 | $262,267.00 |
| 132 | Exterior Scaffold (Coordination) RENTAL | 1.00 | LS | 179096.00 | $179,096.00 |
| 133 | Tile | 1.00 | LS | 1068975.00 | $1,068,975.00 |
| 134 | RESILIENT FLOORING (No Tile) | 1.00 | LS | 683850.00 | $683,850.00 |
| 135 | Elastomeric Liquid Flooring | 1.00 | LS | 25000.00 | $25,000.00 |
| 136 | Painting Interior and Exterior | 1.00 | LS | 590875.00 | $590,875.00 |
| 137 | **Division 10 -Specialties** | | | | |

| # | Description | Qty | Unit | Unit Price | Total |
|---|---|---|---|---|---|
| 138 | Signage | 1.00 | LS | 70262.00 | $70,262.00 |
| 139 | Toilet Accessories and Bath Accessories | 1.00 | LS | 92753.00 | $92,753.00 |
| 140 | Shower Doors and Enclosures | 50.00 | LS | 2200.00 | $110,000.00 |
| 141 | Emergency Key Cabinets (Knox Boxes) | 1.00 | LS | 750.00 | $750.00 |
| 142 | Fire Extinguisher and Cabinets | 1.00 | LS | 10000.00 | $10,000.00 |
| 143 | Postal Specialties | 1.00 | LS | 19350.00 | $19,350.00 |
| 144 | Bike Racks (Dero- Ultra Space Saver) | 1.00 | LS | 50000.00 | $50,000.00 |
| 145 | Bike Repair Stand | 1.00 | LS | 2500.00 | $2,500.00 |
| 146 | Tenant Storage Lockers (Cal Stor N Lock) | 46.00 | units | 1600.00 | $73,600.00 |
| 147 | Convex Pedestrian Security Mirror | 1.00 | LS | 5000.00 | $5,000.00 |
| 148 | **Division 11 -Equipment** | | | | |
| 149 | Appliances (GE) | 1.00 | LS | 691313.00 | $691,313.00 |
| 150 | Parking Control Equipment | 1.00 | LS | 28500.00 | $28,500.00 |
| 151 | Waste and Recycling Compactors | 1.00 | LS | 100462.00 | $100,462.00 |
| 152 | **Division 12 - Furnishings** | | | | |
| 153 | ~~Horizontal Louver Blinds~~ Roller Shades | 1.00 | LS | 100000.00 | $100,000.00 |
| 154 | Residential Casework (unit kitchens and cabinets) FOB | 1.00 | LS | 596841.00 | $596,841.00 |
| 155 | Residential Casework (unit kitchens and cabinets) INSTALL | 1.00 | LS | 378744.00 | $378,744.00 |
| 156 | Quartz Surfacing Countertops (incl common area) | 1.00 | LS | 337540.00 | $337,540.00 |
| 157 | **Division 13 - Special Construction** | | | | |
| 158 | Final Cleaning | 199513.00 | SF | 0.65 | $129,683.45 |
| 159 | Security Guard and Requirements | 1.00 | LS | 350000.00 | $350,000.00 |
| 160 | **Division 14 - Conveying Equipment** | | | | |
| 161 | Electric Traction Elevators | 1.00 | LS | 617000.00 | $617,000.00 |
| 162 | **Division 15 Mechanical** | | | | |
| 163 | Fire Sprinklers | 1.00 | LS | 656400.00 | $656,400.00 |
| 164 | HVAC & Plumbing | 1.00 | LS | 7166083.00 | $7,166,083.00 |
| 165 | PEX Credit | 1.00 | LS | -227250.00 | ($227,250.00) |
| 166 | Vapor Mitigation Risers, Vents and Fans | 1.00 | LS | 58342.00 | $58,342.00 |
| 167 | Shower Surrounds | 1.00 | LS | 85750.00 | $85,750.00 |
| 168 | Submeters | 1.00 | LS | 84108.00 | $84,108.00 |
| 169 | Solar Hot Water System | 1.00 | LS | 234313.00 | $234,313.00 |
| 170 | **Division 16 - Electrical** | | | | |
| 171 | ELECTRICAL | 1.00 | LS | 5331323.00 | $5,331,323.00 |
| 172 | Weckworth - Value Engineering Deduct where applicable (Light fixtures and controls, Misc Materials) | 1.00 | LS | -278500.00 | ($278,500.00) |
| 173 | Street Lights | 1.00 | LS | 27855.00 | $27,855.00 |
| 174 | **SUBTOTAL** | . | | **SUBTOTAL** | **$60,968,771.54** |
| 175 | **SF GRT** | **1.00** | | **$135,000.00** | **$135,000.00** |
| 176 | CONTINGENCY | 2.0% | | 1.00 | $1,219,375.44 |
| 177 | MARK-UP | 3.50% | | 1.00 | $2,176,585.16 |
| 178 | SUBTOTAL | | | | $64,499,732.14 |
| 179 | **CONTRACTOR INSURANCE** | 0.500% | | | $322,499.00 |
| 180 | **Subcontractor Bonds** | **1.00** | LS | | **$485,154.00** |
| 181 | **TOTAL BASE BID** | | | | **$65,307,385.14** |

# EXHIBIT G
# Assumptions

# 1301 16th STREET APARTMENTS
## EXHIBIT G:  CONDITIONS OF GUARANTEED MAXIMUM PRICE

The Guaranteed Maximum Price Agreement includes the following conditions, product specifications, cost reduction changes and scope exclusions that have been agreed to by Owner and Contractor as a condition of agreeing to the GMP.

1. **Labor requirements**
   Open solicitation- TB Penick is signatory with Northern California Carpenters, Laborers and Masons.  Subcontractors participating that perform work claimed by these trade unions will be required to utilize union staff on site.

2. **Include demo of existing buildings**
   a.  Cut/cap, grub, remove all footings, Building shell, paving, concrete flatwork, recycle per city of San Francisco and state of California requirements and outlined in the approved DDRP.
   b.  All hazmat abatement to be completed by T.B. Penick & Sons, INC. Abatement per ACC Environmental report dated 11-18-2013 and All West Environmental Reports dated 9-22-2017.

3. **Level of finishes required**
   a.  Per the Interior Design Drawings, dated 8-11-2017.  Other assumptions made as per the below unit finishes qualifications.

4. **Geotech**
   a.  Submitted to City for plan check and is approved.
   b.  Soils work and Foundation work per the Rockridge Geotechnical report dated 12-9-2013 and the Phase II ESA Soil & Ground Water report dated 4-10-2015.
   c.  No nuisance water noted in the revised report.
   d.  All contaminated soil transportation and disposal is priced as Class II contaminated soils in an Allowance included in the GMP, calculated at $28.30 per ton.  Additional expense of transportation and disposal of contaminated Class 1 RCRA and Non-RCRA hazardous material encountered is specifically excluded. (If encountered disposal rates of $132.70/ton- Class 1 Non-RCRA and $290/ton Class 1 RCRA will be applied.)
   e.  Sub-surface structural additions include Torque-Down Piles. Design and Installation will depend upon the outcome of test piles and geotechnical evaluation.  Pricing adjustments may occur after test piles are evaluated.

5. **Wood Framing/Structural Steel**
   a.  Framing assumptions include Addendum 1 Foundation/Superstructure Resubmittal 8/28/2017, Permit Resubmittal date 10/06/17; Bid Addendum #1 dated 09-22-2017, Bid Addendum #2 dated 09-29-2017.
   b.  OSB sheathing to be used on all areas not designated as type 2 or roof diaphragm shear.  No OSB is to be used on horizontal exterior areas ie: balcony decks, recessed sills, parapet caps, etc.
   c.  Structural Steel fireproofing treatment specifically excludes added work described in Addendum #1 dated 08-28-2017 and Foundation/Superstructure Resubmittal 10/6/2017; All fireproofing designated in the 08/04/2017 GMP Document set is included in the GMP.
   d.  Steel support brackets and steel support angles for countertops are specifically excluded for cost savings of ($75,000) provided in the GMP.

6. **Design/build Trades**
   a.  MEP's are not design build through the subcontractors.
   b.  Steel stairs - DESIGN BUILD, DEFERRED SUBMITTAL as required for City Approval.
   c.  Various miscellaneous metal scope items are design build.  AISC Certificate is not required and is specifically excluded for cost savings provided in the GMP.  AISC Certificate is not required for structural steel framing.
   d.  Fire Alarm – Deferred approval through Electrician subcontractor.
   e.  Fire Protection – Deferred approval through Fire Protection subcontractor.
   f.  Structural Piles- Deferred approval though Torque-Down pile subcontractor.
   g.  Exterior Building Maintenance – Incorporated into current drawings.
   h.  Hot Water Passive Solar- Deferred approval through Solar water subcontractor.
   i.  Storefront glazing system to be subcontractor deferred approval as applicable.

7. **Traffic Engineer**
   a.  Easements and Encroachment entitlement- Done by Owner
   b.  Traffic Management Inc. - GC to coordinate and procure the traffic management design and permits for construction only.
   c.  Post construction traffic design by owner and represented in the current plans.

8. **Shoring/Earthwork**
   a.  Shoring, tiebacks and raker bracing are specifically excluded from this Agreement for cost savings provided in the GMP.  Temporary shoring is being carried as an allowance in the amount of $60,000.
   b.  Ground water dewatering requiring city permitting for filtering and disposal is specifically excluded from this Agreement.  Contractor includes handling of rain water as required.

9. **Below Grade Waterproofing**

    a.    At all below grade conditions, all courtyards and all planters, AVM waterproofing system is substituted in lieu of specified Tremco and Tremproof systems for cost savings of ($61,864) provided in the GMP. Final direction before installation is contingent on design team and owner approval of submittals.

    b.    Podium Decks & Balconies, Soprema PMMA traffic coating system as listed in the drawings and specifications.

**10.  Level of finishes required - Unit Finishes**

    a.    Per the design documents including Interior Design Drawings, dated 8-11-2017.  Other assumptions made as per the below unit finishes qualifications.

    b.    Laminate flooring- (Evoke collection Au Naturel Lionel Laminate #40196 Color TBD, w/ sound control (Ecox2-200) underlayment throughout, or equal.

    c.    All exposed drywall to be level a 4 finish.

    d.    All Unit bathrooms to have ceramic tile floors, showers and tub surrounds.  All ceramic tile wainscots are specifically excluded for cost savings of ($97,988) provided in the GMP.  Unit bathroom walls shall be painted water resistant gypsum board in lieu of tile shown on plans.

    e.    Painted MDF baseboard throughout.

    f.    Plastic laminate cabinet-High Gloss PANOLAM thermos fused. Euro Frameless construction with MDF drawers, white interior & concealed hinges. Standard euro design 6" wire pull

    g.    Kitchen tops and Bathroom vanities with stone/granite countertops in bathrooms. Fermol Group 1 Quartz, 3cm w/beveled edge & no splash in kitchens. Fermol Group 1 Quartz 2cm w/ 1- ½ " splash in bathrooms

    h.    Sink, Toilet, Tub/Shower Combo. Based on plumbing and fixture schedule per P0.01.

    i.    Glass shower doors and enclosures are included in the GMP as an Allowance in the Amount of $110,000.

    j.    Closet shelves will be MDF painted wood poles and shelves in lieu of wire closet systems for cost savings provided in the GMP.

    k.    Unit window covering are included in the GMP as an Allowance in the amount of $100,000 for all areas.

    l.    Kitchen Island in units per plan with caster wheel assemblies.  Details for a fixed island at select locations to be coordinated at a later date.

    m.    Full height tile kitchen backsplash included as shown in the drawings. Tile backsplash to be Alternate material Arizona Tile, H-Line 3x6 Subway, Color Pumice in lieu of Heath Ceramic Tile and is included as an Allowance in the GMP.

    n.    Sound isolator ceiling suspension systems are specifically excluded for cost savings provided in the GMP.

    o.    All unit entries wood paneling and running trim is specifically excluded for cost savings of ($194,851) provided in the GMP.

**11.  Standard Unit Appliances -** Per Appliance Equipment Legend ID8.02 dated 08/11/2017.

    a.    Gas hookup for range/oven 30" free standing GE model JGB660SEJSS.

    b.    Dishwasher. 24" GE SS E-star dishwasher Model GDT545PSJSS.

    c.    Garbage disposal. Included within plumbers scope.

    d.    Refrigerator/freezer-33" GE model GSE23GSKSSw/ext dispenser SS E-star.

    e.    Microwave hood. 30" GE Model JVM3162RJSS over range microwave with hood and integral exhaust.

    f.    Dishwasher GE 24" Model GDT545PSJSS

    g.    Washer-GE 27"Model GFWN1600JW~~V~~-**W** front load unit.

    h.    Dryer-GE 27" Model GFDL110EHW~~V~~**W** Electric.

**12.  All Units Doors and Finish Hardware**

    a.    Smooth, Solid core unit entry (Oregon door) doors w/ hollow metal frames. Solid core~~,~~ paint grade.

    b.    Masonite wood interior doors w/ wood frames. Solid core SCBH primed w/primed wood frames.

    c.    FG (patio doors Therma Tru) ~~French~~ doors with composite frames where shown in the plans and specifications.

    d.    Primed louvered laundry doors.

    e.    Door hardware- Schlage FE410, Falcon SC80 closer and F-series levers.

    f.    Ten each Integrated Door System, Syntegra Integrated Doors shall be provided and installed as alternates to the ten each specified Total Doors in the common areas for cost savings of ($13,175) provided in the GMP.

    g.    All other unit & common Doors and hardware per the ID drawings.

**13.  Studio Units Appliances**– Per Appliance Equipment Legend ID8.02 dated 08/11/2017.

    a.    Refrigerator- Bloomberg 24" counter depth SS with no ice, model BRFB1042SSN.

    b.    Free standing Gas Range Bloomberg 24" model BGR24100SS

    c.    GE 30" over range micro-wave with exhaust hood. Model JVM3162RJSS.  A 30" micro-wave with exhaust hood will not work with current studio cabinet layout.  Design team / Owner to select a 24" micro-wave with exhaust hood and incorporate into the design documents. (GE PEB7227DL, Possible alternate.)

    d.    Dishwasher Bloomberg 18" ADA SS E-star model DWS55100SS

    e.    Washer-GE 27" Front Load model GFWN1600JWV

    f.    Dryer- GE 27" Long Vent electric model GFDL110EHWV

**14.  Corridor Design / Finishes**

    a.    Wall covering at corridor walls or painted gyp board per ID drawings. All drywall to be level 4 finish unless otherwise noted.

    b.    Main corridor walks- Broadloom carpet, Milliken collection36 oz, at all corridors.

    c.    Elevator lobbies and feed corridors. LVT Karndean collection, color- Canadian oak.

    d.    All elevator smoke containment is via DSI 600 Fire protective smoke curtains. Owner has reduced the number of smoke containment doors to be installed from 18 each to 12 each for a cost savings of ($40,590) provided in the GMP.

    e.    Elevators- Kone EcoSystem Machine room-less gearless traction elevators, reduced to 2 elevators for a cost savings of ($185,667.) This reduction includes $20,000 for closet buildout of deleted elevator space.

- f. Trash compactors and trash bins are specifically excluded for cost savings of ($20,000) in the GMP
- g. Garage vehicle lift system and infrastructure to accommodate a future system are specifically excluded for cost savings provided in the GMP.  Garage vehicle lift system described in the construction documents shall be provided by Owner.

**15.  Exterior Skin**
- a. All Vinyl windows have a minimum STC rating of 28, Window U-Value= 0.30, SHGC- 0.21. Door U-Value= 0.29, SHGC- 0.16.  Standard Rehau Clear IG Solarban 70XL, Low E.  See STC figures on sheet A10.40.  All windows to meet these minimum STC recommendations from Salter.  Vinyl windows along the courtyard have a minimum STC rating of 32.
- b. Hardie Board Reveal 2.0 series or equal per plans and specifications.
- c. Painting of concrete surfaces in garage areas is specifically excluded for cost savings provided in the GMP.
- d. Smooth plaster finish is included- finish as noted on elevations
- e. All storefront Aluminum wall systems and doors, framed aluminum window systems and Vinyl windows are per the window schedule A10.40, A10.41, A10.42, A10.43, A10.51, A10.52 and A10.53.
- f. Painted Steel or aluminum balcony railings are included.
- g. Masonry veneer and manufactured stone are specifically excluded.  Not shown in the plans and specifications.
- h. A substitute TPO roofing system shall be included in lieu of specified Class A GAF roofing product, PVC.60mil single ply system for cost savings of ($35,000) provided in the GMP.
- i. Fluid applied building air-barrier is specifically excluded for cost savings provided in the GMP.  A sheet product type weather resistant barrier is currently carried as an Allowance in the GMP.

**16.  Amenity Space-Refer to the 8-11-17 I.D. PLANS**
- a. LVT Masland collection Calibre quiet down floating floor at the fitness room.
- b. Parquet floor- DuChateau 20ml hardwood in the Club Room, Level 3
- c. All drywall to be level 4 finish unless noted otherwise.
- d. All finish carpentry and custom casework is per the ID drawings dated 8-11-17.
- e. FF&E: Owner to provide and install all freestanding FF&E items.
- f. Wall protection and corner guards are specifically excluded for cost savings in the GMP.

**17.  Landscaping/Exterior Improvements**
- a. All landscape, On-grade, Podium, Roof and common areas are per plans & specs dated 8-04-17
- b. Planters shall be Tournesol Fiberglass Planters in lieu of GFRC for cost savings provided in the GMP.

**18.  Electrical-Lighting Fixtures at Units & Common areas –**
- a. LED Lighting, both interior and exterior, per the latest set of CD drawings dated 8-11-2107, the ID drawings dated 8-11-2017 and the Illuminosa lighting fixture & Budget schedule dated 8-4-17.  Substitutions of equivalent fixtures will be allowed where approved by Owner.
- b. A cost reduction in the amount of ($278,500) has been provided in the GMP for the anticipated Weckworth Electric value engineering alternate:  light fixtures, controls, and electrical materials, including those items listed herein.  Final light selection to be by Owner.
- c. Aluminum feeders in lieu of copper-Aluminum feeders throughout, including aluminum bussing lugs at all switch gear are included for cost savings provided in the GMP.  Aluminum Substitution is not acceptable for branch circuits.
- d. Use PVC/EMT with copper conductors in the decks.
- e. Use romex cable and plastic boxes within the units and common areas.
- f. Decora style receptacles and switches throughout per plans and specifications.
- g. Back up emergency generator system is specifically excluded for cost savings provided in the GMP.  Inverters are included.
- h. Audio or visual systems design and installation are specifically excluded for cost savings provided in the GMP.
- i. Code minimum egress lighting only as shown in the plans and specifications.
- j. HERS testing is specifically excluded for cost savings provided in the GMP.

**19.  HVAC/ Plumbing**
- a. All unit & common space HVAC, garage ventilation and controls are per the plans equipment schedule shown on M0.01
- b. A cost reduction of ($227,250) for allowing PEX domestic water piping inside the units only, lieu of specified CPVC is provided in the GMP SOV**.**

**20.  Deputy / Third Party Inspectors**
- a. Owner to provide all third party or deputy inspectors.

# EXHIBIT G

# Assumptions

# 1301 16th STREET APARTMENTS
## EXHIBIT G:  CONDITIONS OF GUARANTEED MAXIMUM PRICE

The Guaranteed Maximum Price Agreement includes the following conditions, product specifications, cost reduction changes and scope exclusions that have been agreed to by Owner and Contractor as a condition of agreeing to the GMP.

1. **Labor requirements**
   Open solicitation- TB Penick is signatory with Northern California Carpenters, Laborers and Masons.  Subcontractors participating that perform work claimed by these trade unions will be required to utilize union staff on site.
2. **Include demo of existing buildings**
   a. Cut/cap, grub, remove all footings, Building shell, paving, concrete flatwork, recycle per city of San Francisco and state of California requirements and outlined in the approved DDRP.
   b. All hazmat abatement to be completed by T.B. Penick & Sons, INC. Abatement per ACC Environmental report dated 11-18-2013 and All West Environmental Reports dated 9-22-2017.
3. **Level of finishes required**
   a. Per the Interior Design Drawings, dated 8-11-2017.  Other assumptions made as per the below unit finishes qualifications.
4. **Geotech**
   a. Submitted to City for plan check and is approved.
   b. Soils work and Foundation work per the Rockridge Geotechnical report dated 12-9-2013 and the Phase II ESA Soil & Ground Water report dated 4-10-2015.
   c. No nuisance water noted in the revised report.
   d. All contaminated soil transportation and disposal is priced as Class II contaminated soils in an Allowance included in the GMP, calculated at $28.30 per ton.  Additional expense of transportation and disposal of contaminated Class 1 RCRA and Non-RCRA hazardous material encountered is specifically excluded. (If encountered disposal rates of $132.70/ton- Class 1 Non-RCRA and $290/ton Class 1 RCRA will be applied.)
   e. Sub-surface structural additions include Torque-Down Piles. Design and Installation will depend upon the outcome of test piles and geotechnical evaluation.  Pricing adjustments may occur after test piles are evaluated.
5. **Wood Framing/Structural Steel**
   a. Framing assumptions include Addendum 1 Foundation/Superstructure Resubmittal 8/28/2017, Permit Resubmittal date 10/06/17; Bid Addendum #1 dated 09-22-2017, Bid Addendum #2 dated 09-29-2017.
   b. OSB sheathing to be used on all areas not designated as type 2 or roof diaphragm shear.  No OSB is to be used on horizontal exterior areas ie: balcony decks, recessed sills, parapet caps, etc.
   c. Structural Steel fireproofing treatment specifically excludes added work described in Addendum #1 dated 08-28-2017 and Foundation/Superstructure Resubmittal 10/6/2017; All fireproofing designated in the 08/04/2017 GMP Document set is included in the GMP.
   d. Steel support brackets and steel support angles for countertops are specifically excluded for cost savings of ($75,000) provided in the GMP.
6. **Design/build Trades**
   a. MEP's are not design build through the subcontractors.
   b. Steel stairs - DESIGN BUILD, DEFERRED SUBMITTAL as required for City Approval.
   c. Various miscellaneous metal scope items are design build.  AISC Certificate is not required and is specifically excluded for cost savings provided in the GMP.  AISC Certificate is not required for structural steel framing.
   d. Fire Alarm – Deferred approval through Electrician subcontractor.
   e. Fire Protection – Deferred approval through Fire Protection subcontractor.
   f. Structural Piles- Deferred approval though Torque-Down pile subcontractor.
   g. Exterior Building Maintenance – Incorporated into current drawings.
   h. Hot Water Passive Solar- Deferred approval through Solar water subcontractor.
   i. Storefront glazing system to be subcontractor deferred approval as applicable.
7. **Traffic Engineer**
   a. Easements and Encroachment entitlement- Done by Owner
   b. Traffic Management Inc. - GC to coordinate and procure the traffic management design and permits for construction only.
   c. Post construction traffic design by owner and represented in the current plans.
8. **Shoring/Earthwork**
   a. Shoring, tiebacks and raker bracing are specifically excluded from this Agreement for cost savings provided in the GMP. Temporary shoring is being carried as an allowance in the amount of $60,000.
   b. Ground water dewatering requiring city permitting for filtering and disposal is specifically excluded from this Agreement. Contractor includes handling of rain water as required.
9. **Below Grade Waterproofing**

   a.  At all below grade conditions, all courtyards and all planters, AVM waterproofing system is substituted in lieu of specified Tremco and Tremproof systems for cost savings of ($61,864) provided in the GMP. Final direction before installation is contingent on design team and owner approval of submittals.
   b.  Podium Decks & Balconies, Soprema PMMA traffic coating system as listed in the drawings and specifications.


10.  **Level of finishes required - Unit Finishes**
   a.  Per the design documents including Interior Design Drawings, dated 8-11-2017.  Other assumptions made as per the below unit finishes qualifications.
   b.  Laminate flooring- (Evoke collection Au Naturel Lionel Laminate #40196 Color TBD, w/ sound control (Ecox2-200) underlayment throughout, or equal.
   c.  All exposed drywall to be level a 4 finish.
   d.  All Unit bathrooms to have ceramic tile floors, showers and tub surrounds.  All ceramic tile wainscots are specifically excluded for cost savings of ($97,988) provided in the GMP.  Unit bathroom walls shall be painted water resistant gypsum board in lieu of tile shown on plans.
   e.  Painted MDF baseboard throughout.
   f.  Plastic laminate cabinet-High Gloss PANOLAM thermos fused. Euro Frameless construction with MDF drawers, white interior & concealed hinges. Standard euro design 6" wire pull
   g.  Kitchen tops and Bathroom vanities with stone/granite countertops in bathrooms. Fermol Group 1 Quartz, 3cm w/beveled edge & no splash in kitchens. Fermol Group 1 Quartz 2cm w/ 1- ½ " splash in bathrooms
   h.  Sink, Toilet, Tub/Shower Combo. Based on plumbing and fixture schedule per P0.01.
   i.  Glass shower doors and enclosures are included in the GMP as an Allowance in the Amount of $110,000.
   j.  Closet shelves will be MDF painted wood poles and shelves in lieu of wire closet systems for cost savings provided in the GMP.
   k.  Unit window covering are included in the GMP as an Allowance in the amount of $100,000 for all areas.
   l.  Kitchen Island in units per plan with caster wheel assemblies.  Details for a fixed island at select locations to be coordinated at a later date.
   m.  Full height tile kitchen backsplash included as shown in the drawings. Tile backsplash to be Alternate material Arizona Tile, H-Line 3x6 Subway, Color Pumice in lieu of Heath Ceramic Tile and is included as an Allowance in the GMP.
   n.  Sound isolator ceiling suspension systems are specifically excluded for cost savings provided in the GMP.
   o.  All unit entries wood paneling and running trim is specifically excluded for cost savings of ($194,851) provided in the GMP.
11.  **Standard Unit Appliances -** Per Appliance Equipment Legend ID8.02 dated 08/11/2017.
   a.  Gas hookup for range/oven 30" free standing GE model JGB660SEJSS.
   b.  Dishwasher. 24" GE SS E-star dishwasher Model GDT545PSJSS.
   c.  Garbage disposal. Included within plumbers scope.
   d.  Refrigerator/freezer-33" GE model GSE23GSKSSw/ext dispenser SS E-star.
   e.  Microwave hood. 30" GE Model JVM3162RJSS over range microwave with hood and integral exhaust.
   f.  Dishwasher GE 24" Model GDT545PSJSS
   g.  Washer-GE 27"Model GFWN1600JWV̶-**W** front load unit.
   h.  Dryer-GE 27" Model GFDL110EHW̶V̶**W** Electric.
12.  **All Units Doors and Finish Hardware**
   a.  Smooth, Solid core unit entry (Oregon door) doors w/ hollow metal frames. Solid core̶, paint grade.
   b.  Masonite wood interior doors w/ wood frames. Solid core SCBH primed w/primed wood frames.
   c.  FG (patio doors Therma Tru) ̶F̶r̶e̶n̶c̶h̶ doors with composite frames where shown in the plans and specifications.
   d.  Primed louvered laundry doors.
   e.  Door hardware- Schlage FE410, Falcon SC80 closer and F-series levers.
   f.  Ten each Integrated Door System, Syntegra Integrated Doors shall be provided and installed as alternates to the ten each specified Total Doors in the common areas for cost savings of ($13,175) provided in the GMP.
   g.  All other unit & common Doors and hardware per the ID drawings.
13.  **Studio Units Appliances**– Per Appliance Equipment Legend ID8.02 dated 08/11/2017.
   a.  Refrigerator- Bloomberg 24" counter depth SS with no ice, model BRFB1042SSN.
   b.  Free standing Gas Range Bloomberg 24" model BGR24100SS
   c.  GE 30" over range micro-wave with exhaust hood. Model JVM3162RJSS.  A 30" micro-wave with exhaust hood will not work with current studio cabinet layout.  Design team / Owner to select a 24" micro-wave with exhaust hood and incorporate into the design documents. (GE PEB7227DL, Possible alternate.)
   d.  Dishwasher Bloomberg 18" ADA SS E-star model DWS55100SS
   e.  Washer-GE 27" Front Load model GFWN1600JWV
   f.  Dryer- GE 27" Long Vent electric model GFDL110EHWV
14.  **Corridor Design / Finishes**
   a.  Wall covering at corridor walls or painted gyp board per ID drawings. All drywall to be level 4 finish unless otherwise noted.
   b.  Main corridor walks- Broadloom carpet, Milliken collection36 oz, at all corridors.
   c.  Elevator lobbies and feed corridors. LVT Karndean collection, color- Canadian oak.
   d.  All elevator smoke containment is via DSI 600 Fire protective smoke curtains. Owner has reduced the number of smoke containment doors to be installed from 18 each to 12 each for a cost savings of ($40,590) provided in the GMP.
   e.  Elevators- Kone EcoSystem Machine room-less gearless traction elevators, reduced to 2 elevators for a cost savings of ($185,667.) This reduction includes $20,000 for closet buildout of deleted elevator space.

f.  Trash compactors and trash bins are specifically excluded for cost savings of ($20,000) in the GMP

g.  Garage vehicle lift system and infrastructure to accommodate a future system are specifically excluded for cost savings provided in the GMP.  Garage vehicle lift system described in the construction documents shall be provided by Owner.

**15.  Exterior Skin**

a.  All Vinyl windows have a minimum STC rating of 28, Window U-Value= 0.30, SHGC- 0.21. Door U-Value= 0.29, SHGC- 0.16. Standard Rehau Clear IG Solarban 70XL, Low E.  See STC figures on sheet A10.40.  All windows to meet these minimum STC recommendations from Salter.  Vinyl windows along the courtyard have a minimum STC rating of 32.

b.  Hardie Board Reveal 2.0 series or equal per plans and specifications.

c.  Painting of concrete surfaces in garage areas is specifically excluded for cost savings provided in the GMP.

d.  Smooth plaster finish is included- finish as noted on elevations

e.  All storefront Aluminum wall systems and doors, framed aluminum window systems and Vinyl windows are per the window schedule A10.40, A10.41, A10.42, A10.43, A10.51, A10.52 and A10.53.

f.  Painted Steel or aluminum balcony railings are included.

g.  Masonry veneer and manufactured stone are specifically excluded.  Not shown in the plans and specifications.

h.  A substitute TPO roofing system shall be included in lieu of specified Class A GAF roofing product, PVC.60mil single ply system for cost savings of ($35,000) provided in the GMP.

i.  Fluid applied building air-barrier is specifically excluded for cost savings provided in the GMP.  A sheet product type weather resistant barrier is currently carried as an Allowance in the GMP.

**16.  Amenity Space-Refer to the 8-11-17 I.D. PLANS**

a.  LVT Masland collection Calibre quiet down floating floor at the fitness room.

b.  Parquet floor- DuChataeu 20ml hardwood in the Club Room, Level 3

c.  All drywall to be level 4 finish unless noted otherwise.

d.  All finish carpentry and custom casework is per the ID drawings dated 8-11-17.

e.  FF&E: Owner to provide and install all freestanding FF&E items.

f.  Wall protection and corner guards are specifically excluded for cost savings in the GMP.

**17.  Landscaping/Exterior Improvements**

a.  All landscape, On-grade, Podium, Roof and common areas are per plans & specs dated 8-04-17

b.  Planters shall be Tournesol Fiberglass Planters in lieu of GFRC for cost savings provided in the GMP.

**18.  Electrical-Lighting Fixtures at Units & Common areas –**

a.  LED Lighting, both interior and exterior, per the latest set of CD drawings dated 8-11-2107, the ID drawings dated 8-11-2017 and the Illuminosa lighting fixture & Budget schedule dated 8-4-17.  Substitutions of equivalent fixtures will be allowed where approved by Owner.

b.  A cost reduction in the amount of ($278,500) has been provided in the GMP for the anticipated Weckworth Electric value engineering alternate:  light fixtures, controls, and electrical materials, including those items listed herein.  Final light selection to be by Owner.

c.  Aluminum feeders in lieu of copper-Aluminum feeders throughout, including aluminum bussing lugs at all switch gear are included for cost savings provided in the GMP.  Aluminum Substitution is not acceptable for branch circuits.

d.  Use PVC/EMT with copper conductors in the decks.

e.  Use romex cable and plastic boxes within the units and common areas.

f.  Decora style receptacles and switches throughout per plans and specifications.

g.  Back up emergency generator system is specifically excluded for cost savings provided in the GMP.  Inverters are included.

h.  Audio or visual systems design and installation are specifically excluded for cost savings provided in the GMP.

i.  Code minimum egress lighting only as shown in the plans and specifications.

j.  HERS testing is specifically excluded for cost savings provided in the GMP.

**19.  HVAC/ Plumbing**

a.  All unit & common space HVAC, garage ventilation and controls are per the plans equipment schedule shown on M0.01

b.  A cost reduction of ($227,250) for allowing PEX domestic water piping inside the units only, lieu of specified CPVC is provided in the GMP SOV.

**20.  Deputy / Third Party Inspectors**

a.  Owner to provide all third party or deputy inspectors.

# EXHIBIT H

# G703

# CONTINUATION SHEET

*AIA DOCUMENT G703*

PAGE          OF          PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Contractor's signed certification is attached.

Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

| A | B | C | D | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS | TOTAL | | | |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | PRESENTLY STORED (NOT IN D OR E) | COMPLETED AND STORED TO DATE (D+E+F) | (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| 1 | Project Executive | $535,040.00 | | | | | | | |
| 2 | Project Manager | $245,226.67 | | | | | | | |
| 3 | General Superintendent | $176,563.20 | | | | | | | |
| 4 | Superintendent #1 | $445,866.67 | | | | | | | |
| 5 | Superintendent #2 | $445,866.67 | | | | | | | |
| 6 | Project Engineer / Quality Control Officer | $245,226.67 | | | | | | | |
| 7 | Scheduler | $97,533.33 | | | | | | | |
| 8 | Project Administrator | $256,373.33 | | | | | | | |
| 9 | Safety Personnel | $139,333.33 | | | | | | | |
| 10 | Carpenter Support # 1/ Foreman | $115,000.00 | | | | | | | |
| 11 | Vehicles | $65,493.00 | | | | | | | |
| 12 | Field Offices | $38,000.00 | | | | | | | |
| 13 | Office Furniture | $13,300.00 | | | | | | | |
| 14 | Copy Machine | $11,400.00 | | | | | | | |
| 15 | Fax Machine | $2,850.00 | | | | | | | |
| 16 | Computer/IT Support | $23,750.00 | | | | | | | |
| 17 | Office Supplies | $13,300.00 | | | | | | | |
| 18 | Postage/UPS | $5,000.00 | | | | | | | |
| 19 | Delivery Service | $7,500.00 | | | | | | | |
| 20 | Drinking Water | $5,700.00 | | | | | | | |
| 21 | Chemical Toilets | $19,000.00 | | | | | | | |
| 22 | Telephone | $20,900.00 | | | | | | | |
| 23 | Project Signs | $1,600.00 | | | | | | | |
| 24 | Warranty Administration | $40,000.00 | | | | | | | |
| 25 | First Aid Kits/Supply | $5,700.00 | | | | | | | |
| 26 | Fire Extinguishers | $5,000.00 | | | | | | | |
| 27 | Fuel | $54,577.50 | | | | | | | |
| 28 | Travel | $133,000.00 | | | | | | | |
| 29 | Subsistence/ Housing | $365,750.00 | | | | | | | |
| 30 | Plan Reproduction | $10,000.00 | | | | | | | |

AIA DOCUMENT G703 · CONTINUATION SHEET FOR G702 · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W. WASHINGTON, D.C. 20006-5232

G703-1992

# CONTINUATION SHEET

*AIA DOCUMENT G703*

PAGE        OF        PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Contractor's signed certification is attached.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:

Use Column I on Contracts where variable retainage for line items may apply.

ARCHITECT'S PROJECT NO:

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 31 | Job Photographing & Recording | $5,700.00 | | | | | | | |
| 32 | Traffic Control/ Lane Closure/ K Rails | $75,000.00 | | | | | | | |
| 33 | Pedestrian Control/ Sidewalk Barricades | $40,000.00 | | | | | | | |
| 34 | Ug Utility Locating / Potholing | $3,600.00 | | | | | | | |
| 35 | Temp Lighting/ Temp Power Maintenance | $52,500.00 | | | | | | | |
| 36 | Temp Elect Hook-Up & Rental of Cords and Boxe | $0.00 | | | | | | | |
| 37 | Electrical Consumption | $57,000.00 | | | | | | | |
| 38 | Temp Water Hook-Up | $2,500.00 | | | | | | | |
| 39 | Water Consumption | $38,000.00 | | | | | | | |
| 40 | Rough/Daily Cleaning | $121,600.00 | | | | | | | |
| 41 | Dumpster/Dump Fees | $64,600.00 | | | | | | | |
| 42 | Dust Control/ Street Sweeping | $25,000.00 | | | | | | | |
| 43 | Railings, Safety | $16,000.00 | | | | | | | |
| 44 | Temp Fence | $60,000.00 | | | | | | | |
| 45 | Temporary Stairs (from ground level to podium) | $9,581.66 | | | | | | | |
| 46 | Personnel Hoist Rental & Set Up and Dismantle | $183,561.60 | | | | | | | |
| 47 | Personnel Hoist (operator) Straight Time | $211,680.00 | | | | | | | |
| 48 | Personnel Hoist (operator) Over Time | $141,120.00 | | | | | | | |
| 49 | Parking Lease of Parking Lot Adjacent with in 130 | $204,800.00 | | | | | | | |

# CONTINUATION SHEET

*AIA DOCUMENT G703*

PAGE      OF      PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Contractor's signed certification is attached.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:

Use Column I on Contracts where variable retainage for line items may apply.

ARCHITECT'S PROJECT NO:

| A | B | C | D | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS | TOTAL | | | |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | PRESENTLY STORED (NOT IN D OR E) | COMPLETED AND STORED TO DATE (D+E+F) | (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| | | | | | | | | | |
| | **GRAND TOTALS** | $4,856,093.63 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |

**Users may obtain validation of this document by requesting of the license a completed AIA Document D401 - Certification of Document's Authenticity**

AIA DOCUMENT G703 · CONTINUATION SHEET FOR G702 · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W. WASHINGTON, D.C. 20006-5232

**G703-1992**

# EXHIBIT I
# List of Owner Allowances

## 1301 16th STREET APARTMENTS
## EXHIBIT I:  OWNER ALLOWANCES INCLUDED IN GUARANTEED MAXIMUM PRICE

| | | |
|---|---|---:|
| REMOVAL OF CONTAMINATED SOIL (HAUL OFF AND DISPOSE CLASS 2 CONTAMINATED SOIL) (9700 CY) @ $28.30 per ton | $ | 356,683.00 |
| TEMPORARY SHORING IF NEEDED (UNDERPIN EXISTING BUILDING) | $ | 60,000.00 |
| GFRC INSTALL | $ | 50,000.00 |
| MISC SPOIL REMOVAL | $ | 72,000.00 |
| LABORER'S & CARPENTER'S UNION REQUIREMENTS | $ | 150,000.00 |
| RAT SLAB | $ | 135,520.00 |
| DIAMOND POLISH / EXPOSED AGG FINISH OF STRUCTURAL CONCRETE | $ | 60,000.00 |
| SITE CARPENTRY | $ | 125,000.00 |
| WATER REPELLENTS | $ | 5,000.00 |
| SPRAYED INSULATION | $ | 25,000.00 |
| WEATHER RESISTIVE AIR AND MOISTURE BARRIER | $ | 219,808.00 |
| ROOF DECK PAVERS | $ | 371,855.00 |
| JOINT SEALANTS | $ | 50,000.00 |
| ACCESS DOORS AND FRAMES | $ | 20,000.00 |
| ELASTOMERIC FLOORING AND WALL COATING | $ | 25,000.00 |
| SHOWER DOOR ENCLOSURES | $ | 110,000.00 |
| BIKE RACKS AND BIKE REPAIR STAND | $ | 52,500.00 |
| TENANT STORAGE LOCKERS | $ | 73,600.00 |
| PARKING CONTROL EQUIPMENT | $ | 28,500.00 |
| ROLLER SHADES | $ | 100,000.00 |
| SECURITY GUARD AND REQUIREMENTS | $ | 350,000.00 |
| **VE OPTION / DEDUCT ALLOWANCES (ROM provided by Wood Partners):** | | |
| REPLACE SIDEWALK PAVERS WITH GRAY CONCRETE | $ | (50,000.00) |
| REPLACE UNIT BATHROOM PORCELAIN TILE WITH CERAMIC TILE | $ | (20,000.00) |

DocuSign Envelope ID: 7B996EE767AD-4506-931E-6Q65679B0A41

| | | |
|---|---|---|
| REPLACE STAIN GRADE UNIT ENTRY DOORS WITH PAINT GRADE DOORS AND NO VENEER | $ | (45,325.00) |
| REPLACE UNIT SHOWER AND TUB SURROUND WALL PORCELAIN TILE WITH CERAMIC TILE | $ | (38,850.00) |
| REPLACE HEATH CERAMIC TILE BACKSPLASH WITH ARIZONA TILE | $ | (129,927.00) |
| ELIMINATE THIRD ELEVATOR | $ | (185,667.00) |

# Exhibit J

# Distribution of Costs

## **Schedule 1**

### **Description of Components of Contractor's Fee**

1. All state or local fees or business license fees required to do business at the job site location.

2. Capital expenses, including interest on Contractor's working capital employed for the work.

3. Compensation of Contractor's salaried personnel located at principal offices, including:

   - Corporate Executives
   - Principal in Charge
   - Estimating/Cost Engineering
   - Value Engineering
   - Operations Manager
   - Office Engineer
   - E.E.O. Officer
   - Drafting and Detailing
   - Purchasing & Contracts
   - Accounting & Bookkeeping
   - Secretarial
   - Clerk/Typist
   - Legal (General Services)
   - Legal (Pertaining to Subj. Proj)
   - Bonuses / Main Office & Job Site Staff

4. Contractor's profit.

5. Contractor's federal, state, and local income and property taxes.

6. Home or other office telephone/telegraph and facsimile charges.

7. Home office overhead or overhead at other locations or offices.

8. Miscellaneous copying, postage, delivery, and priority mail charges.

9. Overhead, general, legal (other than general legal advice and consultation not involving claims or litigation) and accounting expenses (other than invoicing and other accounting services directly related to the Work), and all other expenses at Contractor's principal office or other offices or locations.

10. Workers' Compensation insurance premium for permanent employees, except for personnel stationed at the job site who receive wages and salaries pursuant to Paragraph 8 of the Agreement.

11. Warrantee Coordination

12. Corrective Work Damaged by G.C. or His Subs

13. Corrective Work Non- Conforming with Contract Specs

## <u>Schedule 2</u>

### <u>Description of Costs to be included in the Cost of the Work</u>

*The following costs are to be included as part of the Cost of the Work, except as otherwise limited by the provisions of the Contract Documents:*

1.  Wages of construction labor

2.  Payroll taxes, fringes and other payroll charges normally designated as "labor burden" on all direct hire labor subject to the Agreement.

3.  Subcontractor Work

4.  Subcontractor bonding if approved by Owner and/or Subguard costs

5.  Subcontractor permits

6.  Subcontractors' cleanup of their own work

7.  Subcontractor PL/PD insurance (see requirements)

8.  Independent Surveyor

9.  Rodman & Helpers

10. Field Trade Forman

11. Field Construction Labor

12. Workers' Compensation Insurance for personnel stationed at the job site as reflected in the Agreement

13. Concrete pumping

14. Consumable supplies incorporated into the work

15. Crane rental for setting major components

16. Exterior scaffolding and plank

17. Interior scaffolding, staging and rolling towers

18. Materials and equipment incorporated into the Work

19. Sales taxes on items included in the Cost of Work

20. Shipping and freight charges

21. Surveying and staking

22. Final janitorial cleanup

23. Saw filing

24. Material & Equipment/Included Cost of Work Items

25. Bond costs for off-site street replacement and/or streetscape work

26. Low voltage work – including telephone, security and phone cable installation

## <u>Schedule 3</u>

### <u>Description of Costs to be included in the Contractor's General Conditions / General Requirements & Equipment</u>

*Costs for the following items (if required in the performance of the Work) may be included in the **<u>Contractor's General Conditions</u>**:*

1. Project (Jobsite Staff)

   - Project Executive
   - Project Manager
   - Project Superintendent
   - Assistant Project Superintendents
   - Project Engineers
   - Assistant Project Engineers
   - Field Engineers
   - Safety Engineer
   - Drafting / As-Builts
   - Project Accountant
   - Time Keeper / Checker
   - Secretarial
   - Clerk / Typist
   - Runner / Water Boy
   - Fringe Benefits (including payroll burden) / Job Site Staff
   - Vacation Time / Job Site Staff
   - Detailing and drafting

2. BIM and other software costs

3. Computer Hardware

4. Drinking water/cooler and cups

5. Dual gate signage and administration

6. Field office equipment, including furniture, computers, copy machines, FAX machines, telephones and other FF&E items

7. Field office supplies, postage, printing and miscellaneous consumables and supplies

8. Field offices and trailers (including maintenance or hook up)

9.  Fuel and maintenance

10. Guarantees and maintenance (excluding any corporate Guarantee)

11. Job photos

12. Master record drawings (As-Builts)

13. Mobilization and demobilization

14. Periodic cleanup (including street sweeping)

15. Project close-out

16. Project construction signage

17. Punch list administration

18. Scheduling

19. Contractor's time to review and process shop drawings and submittals

20. Storage sheds/trailers

21. Subcontractors' pay telephone

22. Legal expenses authorized under this Contract

23. Travel and subsistence

24. Job Site Security

25. On-site Vehicles

   - Project Manager's Auto/Rental
   - Project Manager's Auto Fuel/Maintenance
   - Project Superintendents Pickup Truck Rental
   - Project Superintendents Auto Fuel/Maintenance

26. Misc. Project Costs
   - Traditional Trade Permits
   - Parking - Subcontractor

*Costs for the following items (if required in the performance of the Work) may be included in the __Contractor's General Requirements__:*

1. Winterization, dewatering, lime treatment and erosion control

2. Layout and batter boards

3. Debris boxes/dump fees

4. Fire extinguishers during construction period

5. Period Clean-Up – including street sweeping (Exempt final cleaning)

6. Finish protection

7. First aid stations

8. Street barricades and traffic control

9. Firefighting equipment

10. Safety equipment

11. Temporary fencing and barricades

12. Temporary ladders

13. Temporary toilets & wash stations

14. Safety railing & Nets

15. Operating and maintenance manual

16. Temporary stairs, bridges, access roads and protective walkways

17. Temporary lighting and heating

18. Power Cords

19. Traffic Control / Flagman

20. Dust Control

21. Temporary utilities, Services, and Supplies
    - Electric Power Installation and monthly charges
    - Electric Power Dist. Wiring
    - Water Service Installation and monthly charges
    - Telephone hookup and monthly charges (including cell phones)

*Costs for the following items (if required in the performance of the Work) may be included in the **__Contractor's Equipment__**:*

1. Hoisting, forklift, and miscellaneous drayage
    - Hoist & Tower Rental
    - Hoist Landings & Fronts
    - Hoist Operator
    - Hoist Safety Inspections
    - Hoist Material Skips/Hoppers
    - Erect & Dismantle Hoists
    - Crane Rental
    - Crane Operators
    - Crane Safety Inspections
    - Erect & Dismantle Crane
    - Fuel, Repairs, And Maintenance
    - Crane Raising / Jumping Costs
    - Temporary Elevator/Rental
    - Elevator Operation Costs
    - Elevator Repairs/Maintenance
    - Cage Rider at Elevator
    - Safety Inspections
    - Forklift Rental
    - Forklift Safety Inspections
    - Elevator Service Costs (including operators)

2. Generators

3. Small Tools Rental

4. Rental-Contractor Owner On Site Equipment at Owner approved rates
    - Flatbed Truck rental
    - Flatbed Truck/Fuel/Maint.
    - Water Truck
    - Air Compressor Equipment
    - Water Pumping Equipment
    - Fuel/Oil/Maint. for trucks/Equip
    - Equipment Rental- Construction
    - Equipment Rental Third Party

## <u>Schedule 4</u>

### <u>Description of Costs to be Paid Directly by Owner</u>

The following costs are Owner's responsibility and are not included in the Cost of the Work.

1.    Local or Regional "Impact" fees

2.    School fees (if required)

3.    Architecture, Engineering and Developer soft costs

4.    Building permits fees

5.    Encroachment permit fees

6.    Demolition permit fees

7.    Grading permit fees

8.    Traffic plan fees

9.    Materials testing and special inspection costs

10.   Owner's soft costs

11.   Permanent telephone service fees

12.   Fees for permanent gas, electric, and water service

13.   Plan check fees

14.   Sewer connection fees

15.   Soils observation and compaction testing

16.   Misc. Project Costs

- Premium – G.C. Bond
- Insurance – Builders Risk
- Warranty Bond
- Soils Investigation
- Maintenance After Occupancy
- Facility Operator/ Training

# Exhibit K

# OCIP Manual

# EXHIBIT K

## ALTA POTRERO HILL

PR III/Wood Potrero Hill, LLC

T.B. Penick and Sons, Inc.



### GENERAL LIABILITY
### OCIP MANUAL
**11/30/17**

**WillisTowers Watson**

**Jeff Cymny, OCIP Administrator, Willis of New York**
Brookfield Place, 200 Liberty Street, New York, NY 10281
Phone: 212-915-8634; Fax: 212-519-5445; E-mail: wpprojects@willistowerswatson.com

DocuSign Envelope ID: 7B996EE2-67AD-4506-931E-6065079B0A11

# INTRODUCTION

PR III/Wood Potrero Hill, LLC ("Owner") has elected to implement a General Liability Only Owner Controlled Insurance Program ("OCIP") for all Enrolled Contractors providing on-site work at the Project Site. **Participation is mandatory, except for those identified as Excluded Parties, BUT IT IS NOT AUTOMATIC.**

PR III/Wood Potrero Hill, LLC has elected to provide a Bid Net Program which requires Contractors to submit their bid price for the original scope of work and subsequent change orders excluding cost of Commercial General Liability, and Excess Liability.

This OCIP provides on-site General Liability and Excess Liability insurance for the designated Project Site only. It does not provide Worker's Compensation/Employer's Liability, Automobile Liability, Off-site General Liability, Excess Automobile Liability, or Property insurance of any kind. Contractors will be required to maintain all of the above insurance which is not provided under the OCIP, at Contractors expense, in accordance with your Contract.

The insurance coverage provided by the OCIP, as well as your rights and responsibilities under the program, is outlined in this OCIP Manual (the "Manual") and is as much a part of your Contract as the actual work specifications. All terms and conditions of this OCIP Manual are incorporated by reference into your Contract and you are required to bind all your lower-tiered subcontractors to the terms, conditions and requirements of this Manual.

Any questions regarding the particulars of this program can be discussed at pre-bid and pre-award meetings, or by contacting the OCIP Manager (see directory).

The OCIP Manual may only be updated during the course of the Project by the Owner and distributed by the OCIP Administrator and is subject to review and final approval by the Owner. Any revised versions shall replace and supersede any previous versions.

### Table of Contents

| | Page |
|---|---|
| Introduction | 1 |
| Directory | 2 |
| Definitions | 3 - 4 |
| General Provisions | 5 - 6 |
| Incident Reporting | 7 |
| Insurance Provided by the Owner | 8 - 9 |
| Contractor Required Insurance Coverage | 10 - 17 |
| Enrolling in the OCIP - Completing the Forms | 18 – 19 |
| Forms Section – Forms 1-4 | 20 - 23 |

DocuSign Envelope ID: ZB996EF267AD-4506-931E-6065B79B0A11

# DIRECTORY

| | |
|---|---|
| **Owner:** | **PR III/Wood Potrero Hill, LLC** |
| *Senior Project Manager* | **Tony Galbo**<br>Address: 20 Sunnyside Avenue, Suite B<br>Mill Valley, CA 94941<br>Phone: 317-446-4689<br>E-mail: tony.galbo@woodpartners.com |
| **General Contractor:** | **T.B. Penick and Sons, Inc.** |
| *Senior Project Manager* | **Tony Lee**<br>Address: 15435 Innovation Drive, Suite 100<br>San Diego, CA 92198<br>Phone: 858-558-1800 x183<br>E-mail: tonyl@tbpenick.com |
| **OCIP Manager:** | **Willis Towers Watson** |
| *OCIP Administrator* | Jeff Cymny<br>Phone: 212-915-8634<br>E-mail: wpprojects@willistowerswatson.com |
| *OCIP Claims* | claims@woodpartners.com |

# DEFINITIONS

**Bid Net Program:** Contractors to submit their bid price for the original scope of work and subsequent change orders excluding cost of Commercial General Liability and Excess Liability.

**Contract:** The written agreement between PR III/Wood Potrero Hill, LLC and T.B. Penick and Sons, Inc. or between T.B. Penick and Sons, Inc. and its Subcontractors and their Subcontractors of every tier.

**Contractors:** Includes General Contractor and Subcontractors of all tiers that perform work on the Project Site.

**General Contractor:** T.B. Penick and Sons, Inc.

**Eligible Contractor(s):** Subcontractors of all tiers performing labor or services at the project site are eligible to be enrolled in the OCIP. Suppliers that perform or subcontract installation, temporary labor services, employee leasing companies providing direct labor, joint ventures and all joint ventures partners are considered Eligible Contractors. The Owner may, at its discretion, include a Contractor who otherwise, by definition, would be an Excluded Contractor.

**Enrolled Contractor(s):** The General Contractor and Subcontractors of any tier who have been awarded work and have met the requirements to become enrolled in the OCIP as evidenced by a certificate of insurance issued by the OCIP Administrator. The Owner may, at its discretion, include a Subcontractor who, otherwise by definition, would be an Excluded Party.

**Excluded Parties:** Contract haulers or truckers (or others merely making deliveries or pickups from the project site), consultants, vendors, suppliers (who do not perform or subcontract installation), material dealers, manufacturing representatives and equipment rental companies who perform equipment maintenance (does not apply to those who provide operators); architects, surveyors, soil testing contractors, and their consultants; asbestos abatement, or other hazardous material contractors, contractors whose sole scope of work includes blasting and/or demolition; unless any of the above are enrolled in the OCIP by specific agreement with the Owner and insurer. The Owner may, at its discretion, exclude others from the OCIP.

**Insured:** PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc. and all Enrolled Contractors and any other party named as an Insured on the OCIP certificates of insurance.

**Insurer(s):** Houston Casualty Company, Ironshore Specialty Insurance Company, Starr Surplus Lines Insurance Company, Great American Assurance Company

**Major Trade:** Including but not limited to Abatement, Demolition, Sitework, Concrete/Masonry, Drywall/Stucco, Framing, Plumbing, Roofing, Mechanical, and Fire Protection.

**Jobsite (also referredto as Project Site): Alta Potrero Hill;** the premises owned by the Owner as described in the Contract between Owner and the General Contractor. This shall not include operations at the Enrolled Contractor's regularly established workplace, plant, factory, office, shop, warehouse, yard or other property, even if such operations are for fabrication of materials to be used at the jobsite.

DocuSign Envelope ID: 7B986EE2-67AD-450C-931E-6C65B79B0A11

# DEFINITIONS *(CONTINUED)*

***Offsite: Premises other than the Jobsite.***

***Onsite:*** See Jobsite definition.

***Owner:*** PR III/Wood Potrero Hill, LLC
The entity that determines which insurance coverages will be included in the OCIP procures the policies and controls the insurance program.

***Project:*** Alta Potrero Hill

***Project Manager:*** The individual assigned by the General Contractor with overall Project responsibility.

***Subcontractor(s):*** Any individual, firm, or corporation undertaking construction or other services under a Contract with the General Contractor or its Subcontractors to furnish labor, services, materials and/or equipment, and/or perform operations at the Project site.

***Sub-subcontractor(s):*** Any individual, firm, or corporation undertaking construction or other services under a Contract with a Subcontractor (or its Sub-subcontractor) to furnish labor, services, materials and/or equipment, and/or performed operations at the Project Site.

***OCIP:*** A program under which Commercial General Liability and Excess Liability insurance are procured by the Owner for all Enrolled Contractors of every tier while performing operations at the Jobsite.

***OCIP Administrator:*** The individual employed by the OCIP Manager who is responsible for the day-to-day administration of the OCIP.

***OCIP Manager:*** Willis Towers Watson

***OCIP Program Manager:*** The individual employed by the OCIP Manager who has overall program responsibility including oversight of administration and claims advisory provided by the OCIP Manager and the Insurer(s).

# GENERAL PROVISIONS

All Contractors shall comply with each of the provisions stated herein:

1. **Mandatory Compliance**
   Participation is mandatory, except for those identified as Excluded Parties. All Contractors are required to make this OCIP Manual a part of their Contracts with their Subcontractors of every tier. **Failure to submit the completed forms, as contained herein, and documentation to the OCIP Administrator within thirty (30) days of the initial request may result in a delay of your monthly progress payments and/or an insurance cost deduction to your contract based on a percentage of your contract value (as determined by the OCIP Administrator), whichever may apply**.

2. **Meeting Attendance**
   At the request of the Owner or the General Contractor, Subcontractors shall attend any meetings held to explain and discuss the OCIP.

3. **OCIP Manual Incorporated into Bid Specifications and Contract**
   This OCIP Manual will be incorporated by reference into the successful bidders awarding Contract and accordingly, all provisions require mandatory compliance. Each Contractor is expected to be familiar with the requirements stated in this Manual.

4. **Commencement of Work**
   Contractors shall not commence work at the Jobsite until:
   a) If enrolled under this OCIP, having received a certificate of insurance issued by the OCIP Administrator, or
   b) If excluded under this OCIP, having provided a certificate of insurance as required in this manual to OCIP Administrator.

5. **Notification**
   Notifying the OCIP Administrator of all subcontracts awarded and assuring that all eligible Subcontractor(s) of all tiers are enrolled

6. **In consideration of Owner's provision of OCIP coverage, each Enrolled Contractor agrees to:**
   o Identify and exclude all applicable insurance costs associated with their work at the Project Site for coverages provided under the Wrap-up and cooperate with the Wrap-up Administrator to verify the insurance cost if required by Owner

   o Irrevocably assign to, and for the benefit of, the Owner, all return premiums, premium refunds, premium discounts, dividends, retentions, credits and any other funds in connection with the OCIP. Contractors agree to evidence such assignment by executing and delivering the Enrollment Forms. Contractors further agree to require each lower tier subcontractor to execute the assignment on the Enrollment Form, for the benefit of the Owner.

   o Not attempt to exercise any right to cancel any of the policies without the express written consent of the Owner and any attempted cancellation without said express written consent shall be null and void.

   o Warrants that they have had the opportunity to read and analyze (and obtain professional assistance to read and analyze) a copy of the OCIP insurance policies.

# GENERAL PROVISIONS (CONTINUED)

7.  **Safety:**

    Contractors of all tiers shall be solely responsible for safety on the Project. Contractors of all tiers shall establish a safety program that, at a minimum complies with all Federal, state, and local safety standards, and the minimum safety standard established by Owner for the Project.

8.  **California Section 2782.96 (Amended by Stats. 2009, Ch. 140, Sec. 37.)**
    **Cite as: Cal. Civil Code §2782.96.**

    If an owner, builder, or general contractor obtains a wrap-up insurance policy or other consolidated insurance program for a public work as defined in Section 1720 of the Labor Code or any other project other than residential construction, as that term is used in Title 7 (commencing with Section 895) of Part 2 of Division 2, that is put out for bid after January 1, 2009, the following shall apply:

    (a)The total amount or method of calculation of any credit or compensation for premium required from a subcontractor or other participant for that policy shall be clearly delineated in the bid documents.

    (b)The named insured, to the extent known, shall disclose to the subcontractor or other participant in the contract documents the policy limits, known exclusions, and the length of time the policy is intended to remain in effect. In addition, upon written request, once available, the named insured shall provide copies of insurance policies to all those who are covered by the policy. Until such time as the policies are available, the named insured may also satisfy the disclosure requirements of this subdivision by providing the subcontractor or other participant with a copy of the insurance binder or declaration of coverage. Any party receiving a copy of the policy, binder, or declaration shall not disclose it to third parties other than the participant's insurance broker or attorney unless required to do so by law. The participant's insurance broker or attorney may not disclose the policy, binder, or declaration to any third party unless required to do so by law.

    (c)The disclosure requirements in subdivisions (a) and (b) do not apply to an insurance policy purchased by an owner, builder, or general contractor that provides additional coverage beyond what was contained in the original wrap-up policy or other consolidated insurance program if no credit or compensation for premium is required of the subcontractor for the additional insurance policy.

DocuSign Envelope ID: 7B996EE2-67AD-4506-931E-6C65679B0A11

# INCIDENT REPORTING

**All Jobsite incidents/accidents must be reported to the General Contractor and Owner.**

**The General Contractor will:**

- Work with the involved Subcontractor(s) to take necessary action to stop any unsafe act or condition in order to prevent further injury or damage.
- Coordinate the investigation surrounding the incident/accident and assure completion of required investigative reports.
- Report the incident/accident to claims@woodpartners.com and include the Investigation Report, Claim Form, Witness Statements, etc.

The Subcontractors will assist in the handling, investigation, and mitigation of all incidents regardless of whether the incident results in an injury or insurance claim.

DocuSign Envelope ID: 7B996EE2-97AD-4506-931E-6C65079B0A11

# INSURANCE PROVIDED BY THE OWNER

**Note:** This section provides a brief description of the coverages provided under the OCIP. The Enrolled Contractor shall refer to the actual policies for details concerning coverages, limits, exclusions, and limitations.   Policies (with sensitive and proprietary information redacted) are available for review upon request. In the event of any conflict between the description of coverages and terms provided under the OCIP manual and the actual policies, the actual policies shall govern and this manual shall be deemed to be amended to match the coverages and terms of the actual policies.

The Owner has procured, and will maintain at its own expense, the insurance coverages described below for the Enrolled Contractors.  The limits of liability purchased apply collectively to all Insureds. The Owner intends to maintain General Liability and Excess Liability coverages until substantial completion.  Products/Completed Operations Extension coverage is extended through the period of time allowed by any applicable state law for claims or suits, per policy terms and conditions. In addition, this policy includes an extension of coverage in the event an Enrolled Contractor returns to the project site to perform warranty or repair work.  Summaries of the insurance coverages to be provided by the Insurer(s) are:

1. **Commercial General Liability Insurance**
   Commercial General Liability insurance is provided for activities at the Jobsite with the following limits of liability:

   | | |
   |---|---|
   | $2,000,000 | Each Occurrence |
   | $4,000,000 | General/Policy Term Aggregate |
   | $4,000,000 | Products/Completed Operations Aggregate |
   | $1,000,000 | Personal Injury and Advertising Liability |

   General Liability Deductible Note: The Contractor is required to pay up to the first $25,000 per occurrence to the extent losses payable are attributable to Contractor's Work, or the acts or omissions of their tiers or any other party performing any of the Work for whom the Subcontractor may be contractually or legally responsible.  The Subcontractor has the right to seek reimbursement from the responsible Subcontractor(s).

2. **Excess Liability Insurance**
   Excess Liability will be provided with limits of $50,000,000 each occurrence and in the aggregate. Such limits can be achieved through multiple umbrella/excess liability policies. The limits are excess of the primary limits described in Item 1 above.

3. **Evidence of Coverage**
   The OCIP Manager will issue certificates of insurance for Commercial General Liability and Excess Liability to all Enrolled Contractors. Contractor agrees to be bound by the terms and conditions of the Wrap-up policies.

4. **Insurance Policies**
   The summary of coverages contained in this OCIP Manual is prepared for the convenience of those involved in the Project and should not be construed in any way as an exact and binding analysis of coverage.  In case of any claim or question with respect to coverage, the original policies will prevail as the sole binding documents. Specimen General Liability and Excess Liability policies (with sensitive and proprietary information redacted) are available upon request.

# INSURANCE PROVIDED BY THE OWNER (CONTINUED)

**Coverages Not Part of OCIP**

General Contractor and Subcontractors acknowledge that any loss not covered by Commercial General Liability and Excess shown in 1 and 2 above is the responsibility of the General Contractor and Subcontractors including but not limited to the following:

- Workers' Compensation/Employer's Liability
- Professional Liability
- Automobile Liability
- Automobile Physical Damage
- Property coverage, including but not limited to Contractors' Equipment, rented, leased or borrowed Equipment, Tools, or Personal Property
- General Liability/Excess Liability for Off-Site Activities
- Employment Practices Liability
- Contractor's Pollution
- Professional Liability/Errors and Omissions
- Jones Act Coverage (Crew Members) if applicable
- Protection and Indemnity (Operations of Vessels) if applicable
- Marine Liability if applicable
- Aircraft including Unmanned Aircraft/Drones
- Surety Bonds

5. **OCIP Insurance Premiums**
   The costs of premiums for the coverage provided by the OCIP shall be paid by Owner. Owner will receive or pay, as the case may be, all adjustments in such costs, whether by way of insurance dividends, return premiums, audits, or otherwise. Contractor, hereby assign to Owner all rights to receive such adjustments and agree to execute any further instruments of assignment as may be necessary to permit Owner to receive such adjustments.

6. **OCIP Cancellation, Termination or Modification**
   Notwithstanding any other provision in this Manual, it is the Owner's intent to keep the OCIP in force throughout the term of the Project. However, the Owner reserves the right to cancel, terminate or modify the OCIP. To exercise this option, the Owner will provide 45 calendar days advance, written notice to all Insureds covered under the OCIP. Enrolled Contractors will be required to immediately effect replacement insurance coverage, equivalent to what is currently required for Offsite and Excluded Parties. Written evidence of such insurance must be provided to the Owner prior to the actual cancellation or termination date of the OCIP.

7. **No Release**
   The Owner's procurement and provision of the Wrap-up shall in no way relieve the Contractor of any responsibility or liability under its contract, any applicable law, statute, regulation or order, except the responsibility of securing the Wrap-up coverages if, and commencing when, the Contractor becomes an Enrolled Contractor.

   NOTE: While the OCIP is intended to provide uniform coverages and reasonable limits, the OCIP is not intended to meet all the insurance needs of the Enrolled Contractors. Contractor shall discuss the OCIP with its insurance agent or consultant to assure that proper coverages are maintained. Contractor shall notify its agent that the work performed on-site will be insured under the OCIP. The intent of this notification is to inform the Contractor's standard program underwriters that the insurance coverages provided under the OCIP are primary on the project site.

DocuSign Envelope ID: ZB996EE2-67AD-4506-931E-6065079B0A11

# CONTRACTOR REQUIRED INSURANCE COVERAGE
## *For Non OCIP / Offsite work*

Enrolled Contractors and Excluded Parties will, at their own expense, carry and maintain at least the following insurance policies and minimum limits of liability on forms and with insurance companies acceptable to the Owner. The limits and coverages shown below are minimums only and nothing contained herein shall be construed to mean the required limits or coverages are adequate or appropriate to protect such parties. The obligation to procure and maintain any insurance required by the Agreement is a separate responsibility of such parties and independent of the duty to furnish evidence relating to such insurance policies. Named Insured shown on Certificates of Insurance MUST match Contractor's name as shown on the Contract Agreement. The Owner reserves the right to require Contractor to increase the insurance coverage limits set forth herein and/or to cause some or all of the Subcontractors to increase their limits. Additionally, the Owner reserves the right to waive any insurance coverage and/or reduce any minimum insurance limit requirement of any Contractor and/or Subcontractor.

**Additional Insured ENDORSEMENTS must name: PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns, herein referred to as "Additional Insured Entities".**

## A. AUTOMOBILE LIABILITY INSURANCE
Including "Any Auto" or "All Owned/Scheduled, Hired & Non-Owned vehicles":
Combined Single Limit each accident $1,000,000

1. If Contractor will not visit the site at any time, Auto insurance requirement may be waived at Owner's sole discretion.

2. If Contractor transports any hazardous materials, the Auto Liability policy shall include endorsement form MCS-90 or equivalent endorsement acceptable to Owner and General Contractor providing coverage for pollution claims.

3. Contractor shall provide an Additional Insured endorsement in favor of the **"Additional Insured Entities"** for operations performed both on-site and off-site.

4. Contractor shall provide a Waiver of Subrogation as permitted by law in favor of the **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns**.

## B. WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY
**All Contractors must have Workers' Compensation and Employer's Liability insurance covering for all operations relating to this Project.** The policy must contain a waiver of subrogation endorsement, as permitted by law, in favor of **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** and provide the following limits:

a. Workers' Compensation - Statutory Limits and Coverage is REQUIRED, even if it is not required by the State

b. Employer's Liability – Note Less Than:

| | |
|---|---|
| $1,000,000 | Bodily Injury by Accident - Each Accident |
| $1,000,000 | Bodily Injury by Disease - Each Employee |
| $1,000,000 | Bodily Injury by Disease - Policy Limit |

## CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
### For Non OCIP / Offsite work

If Contractor uses an Employee Leasing Firm or Temporary Labor Company, evidence of Workers' Compensation insurance with an Alternate Employer Endorsement in favor of **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** and Waiver of Subrogation endorsement, as permitted by law, from the Employee Leasing Firm in favor of **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** must be provided.

**C. COMMERCIAL GENERAL LIABILITY INSURANCE**

All Enrolled Contractors must have General Liability insurance covering third party losses that occur <u>away</u> from the Project or OCIP termination or cancellation (subject to policy terms and conditions). Excluded Parties must provide this coverage for <u>all</u> operations relating to this Project. Such minimum limits as declared can be achieved through the combination of primary and umbrella/excess liability policies. Coverage shall include, but not be limited to, Premises-Operations and Elevators, Personal Injury, Blanket Contractual Liability, Broad Form Property Damage, Damage to Rented Premises, Independent Contractors, and Products/Completed Operations. Policies of Commercial General Liability must be on an occurrence basis with the below minimum insurance limits required:

**General Liability Limits***

| | |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Completed Operations Aggregate |
| $1,000,000 | Personal Injury and Advertising Liability |
| $   50,000 | Damage to Rented Premises |

*Required limits shall be not less than limits above, or the full per occurrence limits of the policy, whichever is greater

1. Additional Insured endorsements must name **"Additional Insured Entities".** The additional insured endorsements shall be provided on ISO CG 20 10 11 85 or equivalent form, or both ISO CG 20 10 10 01 and ISO CG 20 37 10 01 or equivalent forms acceptable to General Contractor and Owner. The additional insured endorsements for Enrolled Contractor(s) is required for Offsite operations. The additional insured endorsements for Excluded Contractor(s) is required for all operations.

   IN THE EVENT THAT THE LAW OF THE STATE IN WHICH THE PROJECT IS LOCATED (OR APPLICABLE LAW) LIMITS THE ADDITIONAL INSURED COVERAGE THAT OWNER MAY REQUIRE FROM CONTRACTOR, THEN CONTRACTOR SHALL BE REQUIRED TO OBTAIN ADDITIONAL INSURED COVERAGE TO THE FULLEST EXTENT OF COVERAGE AND LIMITS ALLOWED BY APPLICABLE LAW AND THIS CONTRACT SHALL BE READ TO CONFORM TO SUCH LAW.

2. General Liability policy maintained by Contractor shall afford primary and non-contributory coverage. With respect to coverage afforded to an additional insured, the "other insurance" provisions are to be amended to include the following: "This insurance shall apply on a primary and non-contributory basis to any additional insured where

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

required by contract and any other insurance available to such additional insured shall apply on an excess and non-contributory basis.    This will apply only to offsite operations for Enrolled Contractor(s) and for all operations for Excluded Contractor(s)

3.  Waiver of subrogation in favor of **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** shall be provided by policy provision or an endorsement.

4.  The policies shall not contain any exclusion for or limitation applicable to residential construction, or to work or projects of the type contemplated by the agreement.

5.  The policies shall not contain any endorsement or limitation (such as endorsements CG 22 94 or 22 95) altering or eliminating coverage for work performed on your behalf by subcontractors.

6.  Excluded Contractors agree to continuously maintain products-completed operations coverage under its Commercial General Liability and Umbrella/Excess Liability Follow Form policies for not less than the period of time allowed by any applicable state law (where the project is located) for claims or "suits" to be brought against the insured, in effect at the inception date of the policy for liability arising out of work or the Project.

7.  Required limits may be satisfied by a combination of Commercial General Liability and umbrella/excess policies.

8.  Controlled Insurance Program/Wrap Up Exclusion Limitation - if any Contractor's, whether enrolled or excluded,  insurance includes an exclusion tied to a Controlled Insurance Programs (a.k.a. "wrap-ups" , "CCIP", "OCIP" or "CIPs") or other project-specific insurance, it may apply only to the extent of coverage available to that Contractor under this OCIP. Such exclusion may not be broader than what the OCIP insurance actually covers.

D.  EXCESS/UMBRELLA LIABILITY

**The General Contractor:** $25,000,000 Each Occurrence/Aggregate*
**Subcontractors:**    $1,000,000 Each Occurrence/Aggregate*

*Required limits shall be not less than limits above, or the full per occurrence limits of the policy, whichever is greater

Such Excess/Umbrella Liability shall follow form of the underlying insurance, including without limitation to additional insured, primary and noncontributory, and waiver of subrogation, as permitted by law.

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

**E.  AIRCRAFT/AVIATION LIABILITY (WHERE EXPOSURE EXISTS):**
Each Occurrence Limit and in the Aggregate (including passenger liability): $10,000,000

The operator of an aircraft of any kind, including without limitations drones, must maintain liability insurance covering bodily injury and property damage on a Combined Single Limit basis. If non-employee passengers are carried, there cannot be a per-passenger sublimit. Prior to commencing operations, the operator must provide the Owner with a certificate of insurance naming the Owner and other entities required by contract, as additional insureds on a primary and non-contributory basis. Operator and its insurer(s) must hold the Owner harmless and waive subrogation with respect to damage to the aircraft. If aircraft is to be used to perform lifts at the Project Site, a "slung cargo" endorsement must be included to cover the full replacement value of any equipment being lifted.

**F.  WATERCRAFT LIABILITY**
If required by the Owner, Watercraft Liability and/or Protection and Indemnity insurance covering all owned, non-owned, and hired watercraft, used, operated, or hired by the General Contractor or the applicable Contractor in connection with the Project, including bodily injury with a minimum limit of $10,000,000 each occurrence. The Owner may also require each Contractor to obtain, where applicable, endorsements or coverage forms to provide coverage for US Longshoreman, Harbor Workers Act, and Jones Act exposures.
Contractor shall provide an Additional Insured Endorsement in favor of the "Additional Insured Entities", as required by contract, on a primary and non-contributory basis.

**G.  PROFESSIONAL LIABILITY INSURANCE**
Professional Liability Insurance is mandatory for any Contractor of any tier that is performing any professional services and/or design/build work in connection with the Project. Contractor shall obtain and maintain professional liability insurance with limits of not less than $3,000,000 per claim and $3,000,000 annual aggregate, or the full per occurrence limits of the policy, whichever is greater.

1. The professional liability insurance shall include full prior acts coverage (or a retroactive date no later than the date of commencement of the Work or the services).

   The professional liability insurance shall include, but not be limited to, contractual liability coverage to the maximum extent commercially reasonably available for the indemnifications contained in this Agreement, and a waiver of subrogation, as permitted by law, in favor of the **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns.**

2. The professional liability insurance shall be maintained continuously in effect during the term of this agreement and until all claims and suits arising out of the work and the project are barred by the applicable state law (where the project is located).

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

**H. POLLUTION LIABILITY INSURANCE**

General Contractor and Major Trade Subcontractors shall procure and maintain Contractor's Pollution Liability insurance, including Mold, covering claims arising out of the Contractor's operations. In addition, any Subcontractor of any tier that is performing environmental work in connection with the Project shall procure and maintain Contractor's Pollution Liability insurance, including Mold, covering claims arising out of the Subcontractor's operations. The policy shall be maintained during the term of the development of the Project and for a period of at least three (3) years after Completion of the Project. Policy limit shall be not less than $3,000,000 Each Occurrence and $3,000,000 Aggregate, or the full per occurrence limits of the policy, whichever is greater. If policy is written on a claims made basis, insurance policy shall not have a retroactive date or, if a retroactive date is included, such retroactive date shall be prior to the date that construction on the project commences.

Policy shall name **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** as an Additional Insured. Waiver of subrogation, as permitted by law, in favor of **PR III/Wood Potrero Hill, LLC, T.B. Penick and Sons, Inc., and their respective affiliates, agents, members, managers, directors, officers, employees, successors and assigns** shall be provided by policy provision or an endorsement.

**I. CRANE LIABILITY AND RIGGERS LEGAL LIABILITY INSURANCE**

All contractors operating, hiring or contracting others to use operate or hire a crane will be required to supply an updated crane certification and adhere to all current OSHA Standards, including OSHA Standard # 1926.1427, and any subsequent revisions. The crane certification shall be kept on the job site at all times. Contractor will maintain property damage insurance for the Crane and Riggers Liability insurance with minimum limits of $5,000,000 per occurrence (claims made policies are not acceptable unless approved by Owner in writing and are subject to additional insurance requirements) covering loss or damage to all property, including not only property in operator's care, custody and control but also consequential damage to all other property arising from all Crane and/or Rigging operations. The insurance coverages will be the broadest form available including, Boom Overload and Collapse, Over-the Road Liability, Debris Removal, Preservation of Property and if applicable, Property in Transit.

**J. FURTHER INSURANCE PROVISIONS**

1. Prior to commencing the Work, Contractor shall deliver to General Contractor the Schedule of Forms and Endorsements, Additional Insured Endorsements and Waivers of Subrogation as well as certificates of insurance (form Acord 25) evidencing the coverages.  Each insurer's NAIC number must be listed on the certificate.

2. Upon request by Owner, Contractor shall deliver to Owner a true and correct copy of all of the insurance policies and other insurance documents required.

3. All policies, endorsements and certificates are subject to Owner's and General Contractor's review and approval.

4. In the case of policies expiring while work is in progress, a renewal certificate with all applicable endorsements must be received at the business office of General Contractor and OCIP Administrator prior to the expiration of the existing policy or policies.

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

5. Permitting Contractor to start Work, continue Work, or releasing any progress payment prior to or without compliance with any of these requirements shall not constitute a waiver of, or estoppel to assert, any such requirement.

6. If at any time Contractor's insurance fails to meet the requirements stated herein, all payments may be held until the non-compliance has been corrected to Owner's and General Contractor's satisfaction.

7. All required policies shall be endorsed to provide not less than 30 days' notice of cancellation or non-renewal (10 days for non-payment of premium) to General Contractor and Owner by insurance agent/broker/carrier, or if unavailable from agent/broker/carrier, Subcontractor must provide notice of same.

8. Contractor shall immediately notify Owner in writing upon receipt by Contractor, or its insurance broker or agent, of any notice of cancellation, non-renewal, rescission or material modification of any policy required to be maintained by Contractor pursuant to this exhibit. In the event of cancellation of Workers Compensation, all work performed by the affected contractor and/or subcontractor shall cease immediately until coverage is reinstated or replaced without any lapse in coverage.  Any delays to the project due to such cessation of work shall be at the cost of the responsible contractor and/or subcontractor.

9. Each certificate and endorsement must be executed by an authorized agent of the respective insurers.

10. All insurance referred to in this exhibit to be carried by Contractor shall be maintained by such party at its sole expense, with insurance carriers authorized to do business in the state(s) in which services are to be performed having an [A-, VIII] rating or higher] from A.M. Best, unless Owner, in writing, in its sole discretion, accepts a lower A.M. Best rating.

11. In the event Contractor fails to secure or maintain any policy of insurance required hereby, Owner at its sole discretion and election, may (i) secure such policy of insurance in the name of and for the account of Contractor and in such event, Contractor shall reimburse Owner upon demand for the cost thereof; or (ii) terminate this agreement, and Owner shall retain all remedies hereunder for breach of this agreement.  Owner shall have the right to offset the costs of any such insurance, including but not limited to premiums, against any sums payable to Contractor under this agreement or otherwise

12. None of the requirements contained herein as to types, limits and acceptability of insurance coverage to be maintained by Contractor are intended to, and shall not in any manner, limit or qualify the liabilities and obligations assumed by Contractor under this agreement or at law, including, without limitation, Contractor's indemnification obligations and liability in excess of the limits of the coverages required herein.   Neither receipt of certificates, endorsements or policies showing less or different coverage than requested, nor any other forbearance or omission by General Contractor or Owner, shall be deemed a waiver of, or estoppel to assert, any right or obligation regarding the insurance requirements herein.

13. No deductible or self-insured retention under the required policies shall exceed $25,000. Contractor shall be solely responsible to pay any amount that lies within the deductible(s) or self-insured retention(s) of its policies, regardless of the amount of the deductible(s) or self-insured retention(s) and regardless of the cause of the loss or damage.

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

**K. OTHER INSURANCE NEEDED AS DETERMINED BY ENROLLED CONTRACTORS**

The OCIP, as previously outlined, is intended to afford broad coverage and relatively high limits of liability, but may not provide all the insurance needed. Enrolled Contractors should have their insurance agent, broker or consultant review the coverages and limits outlined herein for adequacy against your existing program. In order to eliminate duplicate insurance premiums, Enrolled Contractors should amend their insurance program to recognize coverage provided to them under this OCIP. It is suggested that Enrolled Contractors' General Liability policies exclude coverage for this Jobsite <u>only to the extent coverage is provided for this Project by the OCIP</u>. In this manner, any broadened coverages or limits under the Enrolled Contractors' insurance program will still be available to them. Any insurance for higher limits or other coverages that are required by the Contract, by law, or needed for the Enrolled Contractors' protection must be purchased separately. Any premiums, deductibles or self-insured retentions under any additional coverages shall be borne by Enrolled Contractors.

There is no coverage provided under the OCIP or Owner's Builder's Risk for loss or damage for (a) Contractors' tools, Equipment, personal property, protective fencing, scaffolding, temporary structures, framework, forms and equipment owned or rented by Contractor, unless otherwise agreed upon by Owner and included in the declared values by the Owner or (b) materials and equipment in transit not yet owned by the Owner (subject to a $2,000,000 sublimit per any one domestic conveyance). Subcontractor must maintain insurance covering owned or leased machinery, watercraft, vehicles, tools, or equipment against physical loss or damage must include waiver of subrogation endorsements, as permitted by law, in favor of the Owner, the General Contractor, and any other entity as required by written contract.

**L. GENERAL PROVISIONS**

COOPERATION & COMPLIANCE: Contractors shall (i) cooperate fully with Owner, General Contractor, the OCIP Administrator, and the OCIP insurers, as applicable, and their respective consultants, agents and representatives, in its or their administration of the OCIP, and (ii) comply with the terms, conditions, warranties, and subjectivities of the insurance policies provided pursuant to the OCIP, including, without limitation, any and all recommendations and requirements of Owner's, General Contractor's, and the OCIP insurers' respective consultants, agents and representatives, including, without limitation, loss control and quality control guidelines, recommendations, and requirements, and the closure to Owner's and General Contractor's satisfaction of open items on any and all quality control checklists and inventories.

**M. RECORDS MAINTENANCE AND DISCLOSURE**

Contractors shall, and shall cause each of its Subcontractors to, keep and maintain accurate records and information in accordance with the requirements of the OCIP Insurer(s), the OCIP Administrator, the OCIP Manual, the OCIP Insurers, and any Contract Document, and to provide such records and information to Owner, General Contractor, the OCIP Administrator, and/or the OCIP Insurers upon request. Subcontractor shall, within **five (5)** business days, provide documents requested by Owner, General Contractor, the OCIP Administrator or any of the OCIP insurers, or its or their respective consultants, agents or representatives, as requested or required in connection with administration of the OCIP, or as required by the OCIP Manual. Contractor represent and warrant that all data and information provided to Owner, General Contractor, the OCIP Administrator, and the OCIP insurers is or shall be accurate and complete.

# CONTRACTOR REQUIRED INSURANCE COVERAGE (CONTINUED)
## *For Non OCIP / Offsite work*

**N.** DUTY OF CARE Nothing contained in the OCIP insurance policies, the Agreement, this Exhibit, any other Contract Document, or the OCIP Manual shall relieve Contractor or of its or their respective obligations to exercise due care in the performance of their duties in connection with the Work and to complete the Work in strict compliance with the Contract Documents.

**O.** <u>Survival</u>

The insurance requirements described in the Manual are not intended to, and shall not in any way, limit or quantify the liabilities and obligations each Contractor assumes pursuant to its contract. The insurance requirements are an independent contract provision and shall survive the termination or expiration of this contract or any subcontract.

**P.** <u>Severability of Interests / Cross Liability</u>

All insurance required herein (excluding only Workers Compensation Insurance and Professional Liability Insurance) shall include a provision or be endorsed to provide that, inasmuch as the policy is written to cover more than one insured, all terms, conditions, insuring agreements and endorsements, with the exception of limits of liability, shall operate in the same manner as if there were a separate policy covering each insured. No cross liability exclusions are permitted and there may not be any restrictions in any policies that limit coverage for a claim brought by an additional insured against a named insured, or vice versa. Also, there shall not be any provision in any insurance policy which excludes or conditions coverage on the existence of a contract or other agreement requiring insurance.

**Q.** <u>Claims Made Policies</u>

Except for Professional Liability and Pollution Liability, claims made policies are not acceptable.

**R.** <u>Waiver of Subrogation and Rights of Recovery</u>

Except for the amount of the General Liability Obligations or deductibles as described elsewhere, the Enrolled Contractors, each on their own behalf, whether by way of subrogation or otherwise, hereby waive any and all subrogation or other rights of recovery of any kind which they may now, or hereafter have, against the Owner, General Contractor, each other and their parent, related and affiliated companies, the successors and assigns of each other, in connection with the performance of the work and to the extent claims, loss or damages are covered under the OCIP. Each contractor shall require all subcontractor(s) to similarly waive their rights of subrogation and recovery in each of their respective construction contracts with respect to their work.

# ENROLLING IN THE OCIP – COMPLETING THE FORMS

## Step 1 – Contract Awarded

**Form 1 – Notice of Contract Award**

**All Contractors shall:**

    a.     Complete Notice of Contract Award **Form 1** for each Subcontractor hired.

    b.     Submit to:    Willis Towers Watson - OCIP Administrator

**Form 2 – Insurance Information Form**

    a.     Complete and sign the Insurance Information **Form 2**.

    b.     Submit to:    Willis Towers Watson - OCIP Administrator

**Form 3 – Certificate of Insurance**

    a.     Provide a Certificate of Insurance including coverages, limits, and wording as shown on Certificate of Insurance **Form 3** in addition to all required endorsements, including but not limited to additional insured, waiver of subrogation, and CIP/Wrap Up Exclusion Endorsements.  (See example in Forms Section.)  A current certificate of insurance must be provided for each policy period.

    b.     Submit to:    Willis Towers Watson - OCIP Administrator

---

**CONTRACTORS MAY NOT COMMENCE WORK ON THIS PROJECT UNTIL ENROLLMENT IS COMPLETE WHICH REQUIRES THAT ALL FORMS ARE RECEIVED, APPROVED, AND A CERTIFICATE OF INSURANCE IS PROVIDED BY THE OCIP ADMINISTRATOR TO THE ENROLLED CONTRACTOR.**

---

## ENROLLING IN THE OCIP – COMPLETING THE FORMS *(CONTINUED)*

### Step 2 – Enrolled Contractors Complete Work

**Form 4 – Notice of Completion**

a.   **All Enrolled Contractors shall:**

Complete a Notice of Completion **Form 4** for each Enrolled Contractor when the Enrolled Contractor has completed its work. Fax or email the signed form to Willis.

b.   **The OCIP Administrator shall:**

Compute final insurance cost for enrolled contractor and forward to the Owner.  Once the final insurance cost have been approved by Willis and Owner, no further adjustments, revisions or corrections to the insurance cost will be allowed.

| **Form 1** |
| --- |

## Notice of Contract Award

**Date:**

**Name of Project:**    Alta Potrero Hill

**This is to inform that we**    _____    (Hiring Contractor)

**have awarded a contract to the following Contractor:**

---

**Subcontractor Information:**

    **Subcontractor:**

    **Contact Name:**

    **Address:**

    **City, State Zip:**

    **Phone No:**

    **Fax No:**

    **Email Address:**

---

**Contract Information:**

    **Phase No:**

    (If Applicable)

    **Work Description:**

    **Date of Contract:**

    **Est. Contract Value:**

    **Est. Start Date:**

    **Est. Completion Date:**

**Other Insurance Required by Contract and Scope of Work:**

    **Professional Liability Required:** ☐ Yes    **Limit $**

    **Pollution Liability Required:** ☐ Yes    **Limit $**

    **Other Insurance Required:**    **Limit $**

    **Other Insurance Required:**    **Limit $**

    **Other Insurance Required:**    **Limit $**

---

**Note: A Notice of Contract Award, Form 1, must be completed for each of your subcontractors.**

**Signed By:**    **Title:**    **Date:**

**PLEASE SUBMIT TO:** Willis Towers Watson, Jeff Cymny
Phone: 212-915-8634; Fax: 212-519-5445; E-Mail Address: wpprojects@willistowerswatson.com

DocuSign Envelope ID: 7B996EE2-57AD-4506-931E-6065679B0A11

**PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc.**

<div style="text-align:right">

**Form 2**

</div>

## <u>Insurance Information</u>

**Date:** _____

**Name of Project:**     Alta Potrero Hill

---

**Your Company Name:** _____

**Your Awarding Contractor:** _____

**Your Contract Amount:** _____

---

**<u>Use of Subcontractors</u>**

**Do you intend to subcontract any of
your work?**       Yes _____       No _____

**If yes, list percentages:**    % Self-Performed _____    % Subcontracted _____

**If yes, list anticipated Subcontractors:** _____

_____

_____

**Note: Form 1 must be completed for each Subcontractor by the awarding entity.**

---

**<u>Use of Employee Leasing Companies</u>**

**Will you use a Leasing Company?**       Yes       No

**If yes, Leasing Company Name:** _____

**Contact Name:** _____

**Telephone No:** _____

---

It is the Enrolled Contractor's responsibility to notify its own insurance carrier that onsite work for this project will be covered by a General Liability Wrap-up program.

In consideration of PR III/Wood Potrero Hill, LLC paying the OCIP premiums, the undersigned hereby assigns all return premiums, premium refunds, dividends, and any other monies due or to become due in connection with such insurance to PR III/Wood Potrero Hill, LLC.

**SIGNED BY:** _____      **Title:** _____      **Date:** _____

**ATTACH CERTIFICATE OF INSURANCE**
**PLEASE SUBMIT TO:** Willis Towers Watson, Jeff Cymny
Phone: 212-915-8634; Fax: 212-519-5445; E-Mail Address: wpprojects@willistowerswatson.com

# CERTIFICATE OF LIABILITY INSURANCE  - FORM 3

DATE (MM/DD/YYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| | PHONE (A/C, No. Ext): | FAX (A/C, No): |
| | E-MAIL ADDRESS: | |
| | INSURER(S) AFFORDING COVERAGE | NAIC# |
| INSURED | INSURER A : | |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

COVERAGES                    CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN.  THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYY) | POLICY EXP (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | X | X | | | | EACH OCCURRENCE | $1,000,000 |
| X | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGES TO RENTED PREMISES(Ea occurrence) | $50,000 |
| | CLAIMS-MADE   X   OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS-COMP/OP AGG | $2,000,000 |
| | POLICY   X   PRO-JECT   LOC | | | | | | Stop-Gap Employer's Liability | |
| | AUTOMOBILE LIABILITY | X | X | | | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| X | ANY AUTO | | | | | | BODILY INJURY(Per person) | $ |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY(Per accident) | $ |
| X | HIRED AUTOS   X   NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| X | UMBRELLA LIAB   X   OCCUR | X | X | | | | EACH OCCURRENCE | $1,000,000 |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $1,000,000 |
| | DED   RETENTION $ | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS ' LIABILITY   Y/N | N/A | X | | | | X   WC STATU-TORY LIMITS   OT H-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | If yes, describe under | | | | | | E.L. DISEASE – EA EMPLOYEE | $1,000,000 |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE – POLICY LIMIT | $1,000,000 |
| | OTHER Professional Liability (if applicable) Pollution Liability (if applicable) | X | X X | | | | Each/Aggregate $3,000,000 Each/Aggregate $3,000,000 | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RE: Alta Potrero Hill
PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc. and any other entity as required by contract are added as Additional Insureds as respects to General Liability, Automobile, Umbrella, and Pollution.  General Liability does not include any residential exclusion.  Waiver of Subrogation is included for General Liability, Automobile, Umbrella, Professional, Pollution and Workers' Compensation in favor of PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc., and any other entity as required by contract. General Liability shall be primary and non-contributory, and any coverage maintained by or available to PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc. shall be excess.  Excess/Umbrella Follow Form. For enrolled contractors, General Liability requirements are for off-site operations only.  For excluded contractors, General Liability requirements are for all operations.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc. c/o  Willis of New York, Attn:   Attn: Jeff Cymny Brookfield Place, 200 Liberty Street New York, NY 10281 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

**PR III/Wood Potrero Hill, LLC & T.B. Penick and Sons, Inc.**

<div style="border: 2px solid black; background: gray; display: inline;">**Form 4**</div>

<u>**NOTICE OF COMPLETION**</u>

**Date:** _____

**From:** _____

                (Awarding Contractor)

**Contact Name:** _____

**Address:** _____

**City, State, Zip**

**Telephone No:** _____

**Fax No:** _____

**Email Address:** _____

**Please be advised that the following Enrolled Subcontractor is scheduled to complete work.**

| | | | |
|---|---|---|---|
| **Contractor:** | | **Project Name/Phase:** | |
| **Contact/Title:** | | **Work Description:** | |
| **Address:** | | **Contract Number:** | |
| **City, State** | | **Final Contract Amount:** | |
| **Zip:** | | **Final Payroll Amount:** | |
| **Telephone No:** | | **Date of Contract:** | |
| **Fax No:** | | **Est. Start Date:** | |
| **Email Address:** | | **Scheduled Completion Date:** | |

Name of lower-tiered Subcontractors, if any, which are included in this work:

_____

_____

Is this the only contract for this subcontractor at this project?        Yes _____ No _____

If no, please list: _____

_____

**Signed By:** _____ **Title:** _____ **Date:** _____

**PLEASE SUBMIT TO:**
Willis Towers Watson, Jeff Cymny
Phone: 212-915-8634; Fax: 212-519-5445; E-Mail Address: wpprojects@willistowerswatson.com

23

# EXHIBIT L

# Lien Release and Waiver Forms

## CONDITIONAL WAIVER AND RELEASE ON
## PROGRESS PAYMENT
### (CA CIVIL CODE §8132)

**NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.**

Identifying Information:

Name of Claimant: _____

Name of Customer: _____

Job Location: _____

Owner: _____

Through Date: _____

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

Maker of Check: _____

Amount of Check: $ _____

Check Payable to: _____

### Exceptions

This document does not affect any of the following:

(1)      Retentions.

(2)      Extras for which the claimant has not received payment.

(3)      The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
Date(s) of waiver and release: _____

Amount(s) of unpaid progress payment(s):  $ _____

(4)      Contract rights, including:
(A) a right based on rescission, abandonment, or breach of contract, and

(B) the right to recover compensation for work not compensated by the payment.

### SIGNATURE

Claimant's Signature:        _____

Claimant's Title:             _____

Date of Signature:           _____

© Porter Law Group, Inc. 2012

## UNCONDITIONAL WAIVER AND RELEASE ON
## PROGRESS PAYMENT
(CA CIVIL CODE §8134)

**NOTICE TO CLAIMANT: THIS DOCUMENT WAIVES AND RELEASES LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL WAIVER AND RELEASE FORM.**

### Identifying Information:

Name of Claimant: _____

Name of Customer: _____

Job Location: _____

Owner: _____

Through Date: _____


### Unconditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. The claimant has received the following progress payment:

$ _____

### Exceptions

This document does not affect any of the following:

    (1)       Retentions.

    (2)       Extras for which the claimant has not received payment.

    (3)       Contract rights, including:
               (A) a right based on rescission, abandonment, or breach of contract, and

               (B) the right to recover compensation for work not compensated by the payment.


### SIGNATURE

Claimant's Signature: _____

Claimant's Title: _____

Date of Signature: _____


© Porter Law Group, Inc. 2012

## CONDITIONAL WAIVER AND RELEASE ON
## FINAL PAYMENT
(CA CIVIL CODE §8136)

**NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT.**

### Identifying Information:

Name of Claimant: _____

Name of Customer: _____

Job Location: _____

Owner: _____

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn:

Maker of Check: _____

Amount of Check: $ _____

Check Payable to: _____

### Exceptions

This document does not affect any of the following:

        Disputed claims for extras in the amount of: $_____

### SIGNATURE

Claimant's Signature:       _____

Claimant's Title:       _____

Date of Signature:       _____

© Porter Law Group, Inc. 2012

# UNCONDITIONAL WAIVER AND RELEASE ON
# FINAL PAYMENT
## (CA CIVIL CODE §8138)

**NOTICE TO CLAIMANT: THIS DOCUMENT WAIVES AND RELEASES LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL WAIVER AND RELEASE FORM.**

Identifying Information:

Name of Claimant: _____

Name of Customer: _____

Job Location: _____

Owner: _____

### Unconditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for all labor and service provided, and equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. The claimant has been paid in full.

### Exceptions

This document does not affect the following:

       Disputed claims for extras in the amount of: $_____

## SIGNATURE

Claimant's Signature:      _____

Claimant's Title:         _____

Date of Signature:       _____

© Porter Law Group, Inc. 2012

# EXHIBIT M
# Key
# Personnel

**EXHIBIT M**

1301 16TH STREET APARTMENTS, SAN FRANCISCO, CA

SCHEDULE OF KEY PERSONNEL

TB PENICK & SONS INC.

TB Penick and Sons staffing plan for 1301 16th Street Apartments includes:

| | |
|---|---|
| Marc Penick: | Chief Executive Officer |
| Jess Couch: | Project Consultant (part time) |
| Sal Ruffino: | Project Executive |
| To Be Named: | Project Manager, Construction Administration |
| **Tony Lee:** | **Project Manager 2 (offsite/part time)** |
| To Be Named: | General Superintendent |
| Craig Martin: | Project Superintendent 1 |
| To Be Named: | Project Superintendent 2 |
| Allen Hancock: | Project Engineer |
| To be named: | Foreman |
| **Amanda Sebastian:** | **Project Administrator** |
| Judy Deese: | Senior Project Administrator |

Contractor staff labor costs shall be calculated and reimbursed at the following agreed hourly rates:

| | |
|---|---|
| Project Executive | $47/hr (burden) + $120/hr = $167/hr rate |
| Project Consultant | $34/hr (burden) + $86/hr = $120/hr rate  (part time) |
| Project Manager | $43/hr (burden) + $111/hr = $154/hr rate |
| General Superintendent | $47/hr (burden) + $121/hr = $168/hr rate |
| Superintendent 1 | $39/hr (burden) + $101/hr = $140/hr rate |
| Superintendent 2 | $39/hr (burden) + $101/hr = $140/hr rate |
| Project Engineer | $39/hr (burden) + $101/hr = $140/hr rate |
| Scheduler | $24/hr (burden) + $63/hr = $87/hr rate |
| Project Administrator | $22/hr (burden) + $58/hr = $80/hr rate |
| Safety Technician: | $13/hr (burden) + $25/hr = $48/hr rate |
| Carpenter | $34/hr (burden) + $85/hr = $120/hour rate |

The weekly/hourly rates include all taxes, employee benefits, paid vacation and employee insurance.  The weekly rates do not include project manager, superintendent and project engineer vehicles provided for service to the project.

Monthly costs for Project Manager and Superintendents' vehicles shall be $850 per month, per vehicle. There will be a total of five-(5) vehicles charged over the course of the project.

1

Contractor's dedicated project staff shall be authorized to charge the project and work from the jobsite, from Contractor' s main office and from other agreed locations as needed to accomplish the work.  **It is anticipated that the Project Consultant, Project Executive, Project Manager 2 (part time) and one Project Administrator staff may operate remotely as part of the project staff team with labor costs reimbursed.**  Dedicated project staff shall apply for the duration of the project.  No home office, marketing, or corporate executive officer staff shall be charged to the project.

# EXHIBIT 2

**Owner Change Order**

| | |
|---|---|
| Owner | |
| Architect | |
| Contractor | |
| Field | |
| Other | |

| | |
|---|---|
| **Project:** | **Change Order Number:** 25 |
| Alta Potrero Hill | **Change Order Date:** 2/15/2020 |
| 1301 16th Street | |
| San Francisco, CA | |
| | |
| **To Contractor:** (*Name and address*): | **Owner's Project No:** 31091 |
| T.B. Penick and Sons, Inc. | **Architect's Project No:** |
| 15435 Innovation Drive | **Contract Date:** 12/05/2017 |
| San Diego, CA 92128 | |

**The Contract is changed as follows:**

| OCO No. | Description | Approved Total |
|---|---|---|
| 25 | Payment-General Conditions Payment, Assignment and Construction Management Agreement | $350,781.05 |

Owner and Contractor (collectively, the "Parties") agree to change the Contract to reflect the agreement between Owner and Contractor as follows:

1. Owner and Contractor agree that as of the February 29, 2020 ("Project Assignment Date") Contractor will assign the Contract and its subcontracts to WP West Builders California and will assist in management of the construction process as described below.

2. Owner and Contractor agree that the Guaranteed Maximum Price under the Contract is hereby increased by the sum of Three Hundred Thousand Dollars and Zero Cents ($300,000), $175,000 of which has already been paid to Contractor.

3. Owner shall pay Contractor $24,570.50 (less retainage) for December 2019 and $31,852.89 (less retainage) for January 2020 for items 190007 of the pay application 703, Support Foreman (the "December/January Payment").

4. Owner shall pay Contractor the remainder of the February General Conditions Payment and a portion of the December 2019/January 2020 Payment, together totaling $175,781.05, within three (3) business days following the full execution by both Parties of this Change Order.

5. Subject to receipt of all lien waivers for the applicable pay period, Owner shall joint check payment for all subcontractors and vendors from the December 2019 and January 2020 pay applications, with the exception of expenses related to Contractor's General Conditions Schedule of Values line items. Owner will directly pay all subcontractors and vendors from the execution of this Change Order.

6. Owner's agreement to pay or subsequent payment to Contractor pursuant to this Change Order shall not be an admission of liability by Owner or an admission by Owner of Contractor's entitlement to the February General Conditions Payment, the December/January Payment, or any other payment under the Contract. All amounts, at the time when they are fully paid by Owner to Contractor pursuant to this Change Order, shall constitute settlement of disputed claims.

7. Contractor is authorized to bill for the GC fee ("Mark-Up" Acct No 161200), Contractor Insurance (Acct No 160000) and SF GRT (Acct No 157000), based on the contract percentages related to the cost of work billed through Project Assignment Date. These amounts will be shown in the "Total Bill This Application" column "E" of the February, 2020 Schedule of Values for each of the three billable items

110500235.1

(GC fee, Contractor Insurance and SF GRT). Owner will pay these amounts on the Project Assignment Date.

8. On the Project Assignment Date, Contractor shall assign the Contract to WP West Builders California (the "Assignment Contractor") the "Project pursuant to the terms of the attached Assignment and Assumption Agreement "). Contractor shall continue to staff the Project and diligently prosecute the Work through the Project Assignment Date, and shall cooperate fully with Owner and Assignment Contractor through the Project Assignment Date to facilitate successful transition of general contracting services for the Project.

9. Attached to this Changed Order as Exhibit A is the form of Assignment and Assumption Agreement that will be executed if Owner elects to proceed to transition the Project to WP West Builders California.

10. Conditions to Assignment:
    o Owner's due diligence and review of the status of all subcontractors to include a meeting with the remaining major subcontractors on or before February 26, 2020 to discuss transition of the Project.

    o Identification by Contractor of all subcontractor back charges, and delivery of documentation establishing subcontractors' agreement to such back charges.

    o Identification by Contractor of all scope/buyout gaps in the current budget/GMP.

    o Delivery of unconditional lien releases for all billings up to November 30, 2019 the time of Project Assignment and unconditional final lien releases for any payments and final payments made to Contractor.

    o Consent and approval of Owner's construction lender.

11. Owner agrees to issue Letter of Acknowledgment as shown as Attachment "A" so long as Contractor complies with the Assignment and Assumption Agreement.

12. Except as expressly revised by this Change Order, the Contract remains in full force and effect.

| BDE Architecture | T.B. Penick & Sons, Inc. | Wood Partners |
|---|---|---|
| ARCHITECT | CONTRACTOR | OWNER |
| 934 Howard Street | 15435 Innovation Drive, Suite 200 | 11849 Olympic Blvd., Suite 204 |
| San Francisco, CA 94103 | San Diego, CA 92128 | Los Angeles, CA 90064 |
| Address | Address | Address |
| BY   Jon Ennis | BY  Tim Penick | BY  Brian Hansen |
| SIGNATURE | SIGNATURE | SIGNATURE |
| DATE   02/24/2020 | DATE | DATE 2/24/2020 |

110500235.1

# EXHIBIT A

## ASSIGNMENT AND ASSUMPTION OF PROJECT DOCUMENTS

THIS ASSIGNMENT AND ASSUMPTION OF PROJECT DOCUMENTS (this "**Assignment**") is entered into to be effective as of February 29, 2020 (the "**Effective Date**"), by and among TB PENICK & SONS, INC., a California corporation ("**Assignor**"), WP WEST BUILDERS CALIFORNIA, L.P. a Georgia limited partnership ("**Assignee**"), and PRIII/WOOD POTRERO HILL, LLC,  a Delaware limited liability company ("**Owner**").

## RECITALS

A.     Assignor and Owner are parties to that certain Standard Form of Agreement between Owner and Contractor and related General Conditions dated December 5, 2017 (the "**Construction Contract**") with respect to the construction of the project known as Alta Potrero Hill located at 1301 16th Street in San Francisco, California (the "**Project**").

B.     Assignor has entered into various agreements relating to the construction of the project and Assignor desires to assign its interest in such agreements to Assignee, and Assignee desires to accept such assignment, as more particularly set forth below.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, the parties agree as follows:

**1.     Assignment**.  Other than the Retained Obligations, Assignor assigns to Assignee all of Assignor's right, title and interest in and to (i) the Construction Contract, (ii) all subcontracts (including any bonds issued in connection therewith) entered into or received by Assignor and related to the Construction Contract or Project (the "**Subcontracts**"),  (iii) all other agreements or contracts for construction, project management, design, engineering or architectural services relating to the Project, and all plans, specifications, drawings, submittals, as-builts, RFIs, surveys, renderings, guarantees, warranties, and all building permits, governmental permits, licenses, consents, approvals and authorizations required by law or otherwise for the Project, including, without limitation, the agreements set forth on Exhibit A attached hereto (such agreements set forth on Exhibit A, the Subcontracts and the Construction Contract collectively herein referred to as the "**Project Documents**") and (iv) all rights to adjust, settle and receive proceeds from any claim made or arising under the builders risk policy for the Project on or prior to the Effective Date, except as reserved by Assignor in Section 7 (d) below.  The "Retained Obligations" consist of (i) any bonuses, profit sharing or any other incentive compensation payable to any employees of Assignor or any affiliate of Assignor, including but not limited to such payments contemplated by Section 7.2.5 of the Agreement, (ii) any agreement with a labor union which is not a Subcontract for specific Work at the Project or any obligation of Assignor not expressly required or provided by the Construction Contract with any labor union, including attorneys' fees, related to or arising in connection with an alleged failure to comply therewith, (iii) any indemnification obligations for third party injury claims under Section 3.18.1 of the General Conditions for any Work (as defined in the Construction Contract) performed through the Effective Date, (iv) any taxes, fines or

penalties related to the Work performed through the Effective Date, (v) all  quality of Work warranties (including but not limited to those contained in Section 3.5 of the General Conditions) for all Work performed by Assignor prior to the Effective Date, (vi) preparation and delivery of as-built drawings as required by Section 9.10.4 of the General Conditions for all Work performed prior to the Effective Date, (vii) any known payment obligation to any subcontractor under any Subcontract for any Work performed on or prior to the Effective Date other than Work performed subsequent to the December 31, 2019 for which Owner has already paid Assignor in amounts shown in specific pay applications (Assignor being deemed to have knowledge with respect to any amount listed on any prior pay applications), and (viii) any covenant or obligation of Assignor under this Assignment, including, without limitation, any obligation of Assignor under Section 4 or 5 hereunder.

2.    **Assumption**.  Assignee accepts such assignment of Assignor's right, title and interest in and to the Project Documents with respect to the Project and assumes all obligations of Assignor under the Project Documents with respect to the Project arising on or after the Effective Date.  For the avoidance of doubt, Assignee does not accept assignment of or assume any obligations related to the Retained Obligations.

3.    **Assignor Representations**.  Assignor represents and warrants to Assignee that Assignor has title to the Construction Contract and all Subcontracts, free and clear of all liens and encumbrances regarding the Construction Contract and all Subcontract documents themselves and not related to the Project work, and that Assignor is transferring such title to Assignee pursuant hereto, without the requirement of any consent or approval which has not been obtained.

4.    **Warranty**.  Assignor hereby reaffirms the warranty for all Work performed through the Effective Date and its continuing obligations under Section 3.5 of the General Conditions of the Construction Contract with respect to such Work notwithstanding the assignment of the Construction Contract hereunder and as if the Construction Contract was not assigned hereunder.  For the avoidance of doubt, Assignor shall have no warranty obligations with respect to Work first performed on or after the Effective Date.

5.    **Assignor Staff**.  Assignor shall retain and make available through Substantial Completion (as defined in the Construction Contract), subject to reasonable notice, Superintendent Craig Martin, Foreman Farhood Madani and Superintendent Gerardo Bernal.  Assignor shall not be in breach of this Section 5 if any of such individuals are unavailable due to illness or leave the employ of Assignor.  Assignor agrees to make its best efforts to employ these individuals and will not deploy them on another Assignor project prior to Substantial Completion.  Tim or Marc Penick shall have access to these employees on the site.  If Assignee no longer wishes to employ the services of any one of these individuals, Assignee shall provide three weeks' notice to Assignor. Such individuals shall be the employees of Assignor and not Assignee and Assignor shall be responsible for all such individuals, any compensation, taxes or withholdings payable to or to be withheld from payments due to such individuals and any other amount payable as a result of such individuals performing services with respect to the Project with the exception of subsistence and travel (see amounts below).  Assignee shall reimburse individuals directly for subsistence and travel.  Payments for these services shall be made on a monthly basis for actual time spent on site at the following hourly rates (together with any subsistence and travel noted below):

- Craig Martin        $180.00/hr (includes auto/fuel, cell, IT)  Plus Assignee direct pay subsistence of $3,850/mo plus weekly travel.
- Farhood Madani     $145.00/hr (includes auto, cell, IT)
- Gerardo Bernal     $150.00/hr (includes auto, cell, IT)  Plus Assignee direct pay subsistence of $3,850/mo

**6.**    Retainage.

Retainage due Assignor shall be paid out upon Substantial Completion.  Retainage due Assignor shall consist of the amounts shown in the "Total Retainage" column "K" on the February 29, 2020 Schedule of Values for Account Numbers  limited to, the following items:

- All General Conditions Acct No's (001000 through 049000)

- 157000, 160000, 161200

- 044001, 046001, 065001, 066001, 080001, 088001, 148001,

- 190001 through 190015

All other Retention withheld shall be paid by Assignee directly to vendors

**7.**    **Release**.

(a) Except as provided in 7(d) below, and subject to and conditioned upon Assignee's performance of all obligations under this Assignment, Assignor, on behalf of itself and its officers, parents, affiliate, and directors, hereby releases, remises, acquits and forever discharges Owner and Owner's members, parents, affiliates, officers, directors and managers from any and all claims, liabilities costs or expenses related to the Construction Contract or the Project, including claims for increases in the Contract Sum (as defined in the Construction Contract), Contract Time (as defined in the Construction Contract), or both. Nothing in the foregoing sentence shall release any liability, responsibility, covenant or obligation of Assignee or Owner under this Assignment.

(b) Subject to and conditioned upon Assignor's performance of all obligations under this Assignment, Assignee and Owner, each on behalf of itself and its respective officers, parents, affiliates, officers, directors, managers, members and partners, hereby releases, remises, acquits and forever discharges Assignor and Assignor's officers, parents, affiliate, and directors from any and all claims, liabilities costs or expenses related to the performance of the Construction Contract and Project, including any and all claims for credits, reductions or back-charges in the Contract Sum related to claimed or unclaimed Liquidated Damages (as defined in the Construction Contract) due to delayed completion of the Work for any portion of the Project before or after the Effective Date.  Nothing in

the foregoing sentence shall release any liability, responsibility, covenant or obligation of Assignor under this Assignment, including, without limitation the Retained Obligations.

(c)    Waiver of California Civil Code Section 1542. It is the intention of the parties that except as specifically reserved the releases specified above shall be effective to bar all claims, damages, controversies, actions, causes of action, obligations, liabilities, costs, expenses, attorneys' fees and damages of any character, nature and kind, whether known or unknown, suspected or unsuspected. In furtherance of this intention, the parties expressly waive and relinquish any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code.

The parties understand that California Civil Code Section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(d)    Releases in Sections (a) and (b) do not include, and Assignor expressly reserves the right recover from Assignee and Owner the following:

- All obligations of Assignee and Owner created by this Assignment;

- Unpaid Assignor incurred and paid, non General Conditions Project expenses limited to the following Schedule of Values Account Numbers:

  - 044001, 046001, 065001, 066001, 080001, 088001, 148001
  - 190001 through 190015, excluding 190007. Expenses related to Acct. No 190007 are already included in January and February payments to Assignor.

- Builders Risk Damage payroll and accounts payable expenses paid by Assignor through February 2020 to the extent approved and paid by the insurer. These amounts exclude subcontractors which are to be paid directly by Assignee. This represents an estimate and shall not be construed as Assignee agreeing to this amount, and all amounts have to be properly submitted and proved up by Assignor.

- Claims for unpaid Assignor Staff incurred per Section 5 of this Assignment above; and

- Unpaid retention as specified in Section 6 of this Assignment above.

**8.    Indemnification**.  Excluding all contract claims, delays, Liquidated Damages and all other matters in which Assignor is intended to be released from in this Assignment ("non-covered indemnification items"), Assignor hereby agrees to indemnify, protect, defend and hold Assignee and Owner harmless from and against any and all claims, demands, damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees) arising (i) in connection with the Project Documents and accruing during the period prior to the Effective Date but only to the extent as included in Section 3 above (and not including non-covered indemnification items), (ii) from the Retained Obligations or (iii) from any action or inaction of any employee or agent of Assignor that is not taken at the specific direction of Assignee only as to third party injury claims resulting from the Work and Retained Obligations up to the Effective Date of this Assignment (but not including non-covered indemnification items).   For the avoidance of doubt, Assignor acknowledges that Assignee shall have a claim under Section 4 for any warranty claims referenced therein.  Assignee hereby accepts the foregoing assignment and agrees to assume any executory obligations of Assignor in connection with the Project Documents which accrue during the period on and after the Effective Date excluding any Retained Obligations.   Assignee shall not be liable for those obligations defined and limited above, if any, which have accrued during the period prior to the Effective Date or which accrue or have accrued because of any Retained Obligation but not including all non-covered indemnification items.

**9.    Further Instruments**.  Assignor and Assignee each hereby covenant that, at any time and from time to time upon written request therefor, the parties will execute and deliver to the other party and their successors and assigns, any new or confirmatory instruments and take such further acts as may reasonably be requested to fully evidence the assignment contained herein and to enable the other party, and its successors and assigns, to fully realize and enjoy the rights and interests assigned hereby.

**10.    Binding on Successors and Assigns**.  The provisions of this Assignment shall be binding upon, and shall inure to the benefit of, the successors and assigns of Assignor and Assignee, respectively.

**11.    Written Notice**.  Assignor hereby covenants that it will provide written notice and an executed copy of this Assignment to all parties to the Project Documents within ten (10) days of the Effective Date.

**12.    Miscellaneous**.  This Assignment may be executed in multiple counterparts, each of which shall be an original and all of which, taken together, shall be one instrument.  To facilitate execution of this Assignment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" or similar form.

**13.    Attorneys' Fees.**  Should either party initiate any action at law or in equity to enforce or interpret the terms of this Assignment, the prevailing party shall be entitled to recover its reasonable attorneys' fees, costs and necessary disbursements against the non-prevailing party, in addition to any other appropriate relief.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption of Project Documents as of the Effective Date.

ASSIGNOR:

**TB PENICK & SONS, INC.**, a ___Cal_____ corporation

By: _____
Name: ___Tim Penick_____
Its: ___President_____

ASSIGNEE:

**WP WEST BUILDERS CALIFORNIA**, L.P. a Georgia limited partnership

By: _____
Name: _ROBERT MUELLER_____
Its: _VICE President_____

[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION OF PROJECT DOCUMENTS]

**JOINDER**

The undersigned hereby joins in this Assignment solely for the purpose of consenting to the assignment of the Project Documents pursuant to and in accordance with the Construction Contract. Notwithstanding the foregoing, (i) the undersigned shall be deemed to be a third party beneficiary of the Assignment, and (ii) the indemnity of Assignor under Section 8 of the Assignment shall include Owner.

<div align="right">

**PRIII/WOOD POTRERO HILL, LLC**, a
Delaware limited liability company


By: _____
Name: _____
Its: _____

</div>

**EXHIBIT A**

**PROJECT DOCUMENTS**

# EXHIBIT 3

**City and County of San Francisco**
**Carmen Chu, Assessor-Recorder**

| | | | |
|---|---|---|---|
| Doc # | **2020023610** | Fees | $17.00 |
| 9/29/2020 | 2:37:33 PM | Taxes | $0.00 |
| DS | Electronic | Other | $0.00 |
| Pages 2 | Title 023 | SB2 Fees | $75.00 |
| Customer 2293 | | Paid | $92.00 |

**RECORDING REQUESTED BY:**

TB Penick & Sons, Inc.

**AND WHEN RECORDED MAIL TO:**

TB Penick & Sons, Inc.

15435 Innovation Drive, #200
San Diego, CA 92128

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANICS LIEN

The undersigned claimant, TB Penick & Sons, Inc., 15435 Innovation Drive, #200, San Diego, CA 92128, claims a lien for labor, services, equipment, and/or materials under California Civil Code Section 8416 et seq., upon the premises hereinafter described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein.

The labor, services, equipment, and/or materials, were furnished for the construction of those buildings, improvements, or structures, now upon that certain parcel of land situated in the County of San Francisco, State of California, said land described as follows: 1301 16th Street, APN: 3954-016, San Francisco, CA.

The sum of $1,053,174.90 together with interest thereon at the rate of 10.00 percent per annum from September 28, 2020, is due claimant (after deducting all just credits and offsets) for the following work and/or material furnished by claimant: General construction, multi-use buildings.

Claimant furnished the work and/or materials at the request of, or under contract with: PRIII/Wood Potrero Hill, LLC, 20 Sunnyside Avenue, #B, Mill Valley, CA 94941.

The owner(s) or reputed owner(s) of the property are: PRIII/Wood Potrero Hill, LLC, 3715 Northside Parkway NW, Atlanta, GA 30327.

Firm Name: TB Penick & Sons, Inc.

By:

Naomi Samuela / Authorized Agent

## VERIFICATION

I, the undersigned, say: I am the Authorized Agent of the claimant of the foregoing mechanics lien: I have read said claim of mechanics lien and know the contents thereof: the same is true of my own knowledge. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2020, at San Diego, California.

Firm Name: TB Penick & Sons, Inc.

Naomi Samuela / Authorized Agent

Construction Notice Services, Inc. (73040)

**PROOF OF SERVICE AFFIDAVIT**
**DECLARATION OF SERVICE BY MAIL**
California Civil Code Section 8416 (a)(7) & (c)(1)

I, Naomi Samuela, as Lien Preparer, declare that we, Construction Notice Services, Inc., served copies of this Mechanics Lien and Notice of Mechanics Lien on 1301 16th Street, APN: 3954-016, San Francisco, CA by first class certified mail, postage prepaid, on September 29, 2020, at the San Diego/Mira Mesa California Post Office.

Copies of this Mechanics Lien and Notice of Mechanics Lien were mailed to the Property Owner(s) or Reputed Owner(s), PRIII/Wood Potrero Hill, LLC, 3715 Northside Parkway NW, Atlanta, GA  30327.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on September 29, 2020, at San Diego, California.

Firm Name:  TB Penick & Sons, Inc.

Naomi Samuela / Authorized Agent
(73040)

**NOTICE OF MECHANICS LIEN**
**ATTENTION!**

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded.  The legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.

The party identified in the mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items.  You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property.  The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property.  This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.

# Invoice 992216

**Customer 558188**

**Construction Notice Services, Inc.**
9520 Padgett Street
Suite 208
San Diego, CA 92126-4447
Telephone: 800/366-5660

Bill To:

TB PENICK & SONS, INC.
ATTN: LINDA
15435 INNOVATION DR #200
SAN DIEGO, CA 92128

Ship To:

TB PENICK & SONS, INC.
ATTN: LINDA
15435 INNOVATION DR #200
SAN DIEGO, CA 92128

| Date | Ship Via | | F.O.B. | | Terms | |
|---|---|---|---|---|---|---|
| 09/29/20 | | | | | Net 30 Days | |

| Purchase Order Number | | Order Date | | Salesperson | | Our Order Number |
|---|---|---|---|---|---|---|
| 73040 | | 09/29/20 | | DJ | | None |

| Quantity | | | Item Number | Description | Tax | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| Req. | Ship | B.O. | | | | | |
| 1 | 1 | 0 | CAML | California Mechanics' Lien | N | 285.00 | 285.00 |
| 1 | 1 | 0 | CAREC | California Recorder Fees (INCLUDED) | N | 0.00 | 0.00 |
| 1 | 1 | 0 | CAAFF | Affidavit to Owner (INCLUDED) | N | 0.00 | 0.00 |
| 1 | 1 | 0 | CFEE | Courier Fee | N | 40.00 | 40.00 |
| 2 | 2 | 0 | CACRT | Certified Mail for Affidavit (INCLUDED) | N | 0.00 | 0.00 |

Requested By: Amber Pendergrass
Jobsite: 1301 16th Street, San Francisco, CA
Work done for: PRIII / Wood Potrero Hill, LLC



| | |
|---|---|
| NonTaxable Subtotal | 325.00 |
| Taxable Subtotal | 0.00 |
| Tax | 0.00 |
| Total Invoice | 325.00 |

Customer Original                                                    Page    1

```
        CONSTRUCTION NOTICE SERVICES
             9520 PADGETT STREET
                  STE 208
            SAN DIEGO, CA 92126
               858-693-8871


      CONSTRUCTION NOTICE SERVICES

    Date: 09/29/2020      10:21:37 AM

          CREDIT CARD SALE


AMERICAN EXPRESS
CARD NUMBER:      **********1659 F

TOTAL AMOUNT:       $325.00

APPROVAL CD:      146811
RECORD #:         000
CLERK ID:         CNSNAOMI
CUST CODE:        558188
SALES TAX:        $0.00
INVOICE #:        PPO A 558188 Log 145



          Customer Copy
```

**EXHIBIT 4**

First American Title –NCS-821053-SF
**RECORDING REQUESTED BY AND WHEN
RECORDED MAIL TO:**

Wood Partners
Attn: Robert Mueller
5262 Vickie Drive
San Diego, CA 92109

**City and County of San Francisco**
**Carmen Chu, Assessor-Recorder**

| | | | | |
|---|---|---|---|---|
| Doc # | **2020043855** | Fees | $26.00 |
| 11/4/2020 | 2:26:11 PM | Taxes | $0.00 |
| GS | Electronic | Other | $0.00 |
| Pages 5 | Title 033 | SB2 Fees | $75.00 |
| Customer | 2016 | Paid | $101.00 |

_____ Space Above This Line for Recorder's Use Only _____

**Block 3954 Lot 016**
**Street: 1301 16th Street**

# DISCHARGE OF MECHANIC'S LIEN

First American Title –NCS-821053-SF
**RECORDING REQUESTED BY AND WHEN**
**RECORDED MAIL TO:**

Wood Partners
Attn: Robert Mueller
5262 Vickie Drive
San Diego, CA 92109

**E-RECORDED**   simplifile'

ID: 2020043855

County: SAN FRANCISCO

Date: 11/4/20  Time: 2:26:11 PM

_____ Space Above This Line for Recorder's Use Only _____

**Block 3954 Lot 016**
**Street: 1301 16th Street**

## DISCHARGE OF MECHANIC'S LIEN

Premium: $13,165.00

**Bond** CMS0339810

IN THE MATTER
OF THE
APPLICATION OF

WP West Builders California LP,

for an order discharging the Mechanic's filed by

TB Penick & Sons, Inc.

　　　　　　　　　　Lienor

}

DISCHARGE OF MECHANIC'S LIEN

KNOW ALL BY THESE PRESENTS, That we  WP West Builders California LP,

7700 Irvine Center Drive, Ste. 600, Irvine, CA  92618 _____ as Principal and  RLI Insurance Company _____

_____ , a corporation organized under the laws of the

State of _____ IL _____ , having an office and place of business at 9025 N. Lindbergh Drive

Peoria, IL  61615 _____ , and duly authorized to

transact business under the laws of the State of _____ CA _____ , as Surety, are

held and firmly bound unto the  TB Penick & Sons, Inc.

15435 Innovation Drive, #200,  San Diego, CA  92128 _____ as Obligee,

in the sum of  One Million Three Hundred Sixteen Thousand Four Hundred Sixty Eight Dollars and 63/100

$1,316,468.63 _____ DOLLARS, lawful money of the United States,

for payment of which well and truly to be made, to said Obligee, his successors or assigns, jointly and severally, firmly by these

presents.

SEALED WITH OUR SEALS, and dated this ____ 27th ____ day of ____ October ____ , ____ 2020 ____ .

WHEREAS  TB Penick & Sons, Inc. _____ filed notice of

Mechanic's Lien in the sum of  One Million Fifty Three Thousand One Hundred Seventy Four Dollars and 90/100

$1,053,174.90    (DOC# 2020023610)    DOLLARS on the ____ 28th ____ day of ____ September ____ ,

2020 ____ against PRIII/Wood Potrero Hill, LLC

WHEREAS, an order was made and entered by the  San Francisco Assessor-Recorder Carmen Chu;

Assessor-Recorder _____ on the ____ 29th ____ day of ____ September ____ , 2020

fixing the sum of  One Million Three Hundred Sixteen Thousand Four Hundred Sixty Eight Dollars and 63/100

$1,316,468.63

DOLLARS as the amount of bond to be executed for the purpose of discharging said lien.

NOW, THEREFORE, the condition of this obligation is such that if the above bounden WP West Builders California LP,

_____ its successors and assigns shall well and truly pay any judgment which

may be rendered against said property for the enforcement of said lien not exceeding the sum of One Million Three Hundred Sixteen Thousand

Four Hundred Sixty Eight & 63/100    $1,316,468.63 _____ DOLLARS, then this obligation shall be void; otherwise to remain in

full force and effect.

WP West Builders California LP, _____

a Delaware limited liability company

　　　　　　　　　　　　　　　Principal

BY: _____

　Robert Mueller,　　　　Vice President

RLI Insurance Company _____

　　　　　　　　　　　　　　　Surety

BY: _____

　David H. Carr　　　　Attorney-in-Fact

Inquiries: (813) 210-4412

All-Purpose Acknowledgement

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy of validity of that document.

State of _____**Florida**_____                    )
                                                   ) ss
County of **Hillsborough**                         )

On _October 27, 2020_____, before me, _____Margaret A. Ginem_____, personally appeared

_David H. Carr_____, who is personally known to me and who proved to me on the

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or

the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _Margaret A. Ginem_

(Seal)                                      _Margaret A. Ginem_, Notary Public
                                                   (Print Name)



MARGARET A. GINEM
Commission # GG 257049
Expires January 8, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Orange _____ )

On ____ October 30th, 2020 ____ before me, ____ Kori plejdrup, notary public ____
(insert name and title of the officer)

personally appeared ____ Robert Mueller _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

KORI PLEJDRUP
Notary Public - California
Orange County
Commission # 2241660
My Comm. Expires Jun 6, 2022

Signature _____     **(Seal)**

# POWER OF ATTORNEY

### RLI Insurance Company
### Contractors Bonding and Insurance Company
9025 N. Lindbergh Dr. Peoria, IL 61615
Phone: 800-645-2402

*Know All Men by These Presents:*

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That **RLI Insurance Company** and/or **Contractors Bonding and Insurance Company**, each an Illinois corporation, (separately and together, the "Company") do hereby make, constitute and appoint:

David H. Carr, Anett Cardinale, Margaret A. Ginem, jointly or severally

in the City of _____ Tampa _____ , State of _____ Florida _____ its true and lawful Agent(s) and Attorney(s) in Fact, with full power and authority hereby conferred, to sign, execute, acknowledge and deliver for and on its behalf as Surety, in general, any and all bonds and undertakings in an amount not to exceed _____ **Twenty Five Million** _____ Dollars ( **$25,000,000.00** ) for any single obligation.

The acknowledgement and execution of such bond by the said Attorney in Fact shall be as binding upon the Company as if such bond had been executed and acknowledged by the regularly elected officers of the Company.

**RLI Insurance Company** and/or **Contractors Bonding and Insurance Company**, as applicable, have each further certified that the following is a true and exact copy of a Resolution adopted by the Board of Directors of each such corporation, and is now in force, to-wit:

"All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the **RLI Insurance Company** and/or **Contractors Bonding and Insurance Company**, as applicable, have caused these presents to be executed by its respective _____ Vice President _____ with its corporate seal affixed this __19th__ day of __May__ , __2020__ .

RLI Insurance Company
Contractors Bonding and Insurance Company

By: *B.W. D.*

Barton W. Davis                                    Vice President

State of Illinois
County of Peoria } SS

On this __19th__ day of __May__ , __2020__ , before me, a Notary Public, personally appeared __Barton W. Davis__ , who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the **RLI Insurance Company** and/or **Contractors Bonding and Insurance Company** and acknowledged said instrument to be the voluntary act and deed of said corporation.

By: *Catherine D. Glover*

Catherine D. Glover                                    Notary Public

CATHERINE D. GLOVER
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
March 24, 2024

### CERTIFICATE

I, the undersigned officer of **RLI Insurance Company** and/or **Contractors Bonding and Insurance Company**, do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the RLI Insurance Company and/or Contractors Bonding and Insurance Company this __27th__ day of __October , 2020__ .

RLI Insurance Company
Contractors Bonding and Insurance Company

By: *Jeffrey D Fick*

Jeffrey D. Fick                                    Corporate Secretary

*09C8234020212*

A0058D19